**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| |
|---|
| **IN RE GSE BONDS ANTITRUST LITIGATION** |
| **This document relates to:**<br><br>**ALL ACTIONS** |

Case No. 1:19-cv-01704 (JSR)

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO APPOINT**
**SCOTT+SCOTT ATTORNEYS AT LAW LLP AND LOWEY DANNENBERG, P.C.**
**<u>AS INTERIM CO-LEAD CLASS COUNSEL</u>**

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ........................................................................................................ 1

II.   BACKGROUND ......................................................................................................... 3

III.  SCOTT/LOWEY ARE BEST ABLE TO REPRESENT THE INTERESTS
      OF THE CLASS .......................................................................................................... 4

   A.  Legal Standard ....................................................................................................... 4

   B.  Scott/Lowey Filed First with a Superior Pleading that the Other Actions Imitated ........... 5

      1.  The First Filed Complaint Is the Best Pleading .............................................. 5

      2.  Subsequently Filed Complaints Largely Emulate the Scott/Lowey Complaints ............ 6

      3.  Scott/Lowey's Superior Market Data and Economic Analysis Provides a
          Crucial Head Start for the Class ...................................................................... 7

   C.  Scott/Lowey Are Uniquely Poised to Make This Class Action Trial-Ready in
       Twelve Months .................................................................................................... 10

   D.  Scott/Lowey Meet the Remaining Requirements of Rule 23(g) as They Have
       Experienced Litigators with Specific Knowledge of Financial Antitrust Class
       Actions and Have the Resources Necessary to Effectively Litigate This Case ............... 13

IV.   BIRMINGHAM, IBEW 103, AND PA TREASURY WILL CARRY OUT THE
      FIDUCIARY RESPONSIBILITIES OF LEAD PLAINTIFFS ........................................... 18

V.    CONCLUSION ......................................................................................................... 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Elec. Books Antitrust Litig.*,
No. 11 MD 2293 DLC, 2014 WL 1282293 (S.D.N.Y. Mar. 28, 2014).................................. 7

*In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*,
256 F.R.D. 82 (D. Conn. 2009) .................................................................................................. 7

*In re HSBC Bank USA, N.A., Debit Card Overdraft Fee Litig.*,
No. 12-CV-5696 ADS AKT, 2013 WL 3816597 (E.D.N.Y. July 22, 2013) ....................... 5

*In re Interest Rate Swaps Antitrust Litig.*,
No. 16-MD-2704 (PAE), 2016 WL 4131846 (S.D.N.Y. Aug. 3, 2016) ............................... 4

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
No. 11 MD 2262 NRB, 2011 WL 5980198 (S.D.N.Y. Nov. 29, 2011) .............................. 18

*In re London Silver Fixing, Ltd., Antitrust Litig.*,
213 F. Supp. 3d 530 (S.D.N.Y. 2016) ................................................................................. 7, 16

**Statutes, Rules, and Regulations**

Federal Rules of Civil Procedure
Rule 23(g)........................................................................................................................... 13
Rule 23(g)(1)(A)................................................................................................................... 5
Rule 23(g)(1)(A)(ii) & (iii)................................................................................................ 13
Rule 23(g)(1)(B)................................................................................................................... 5
Rule 23(g)(2)......................................................................................................................... 5
Rule 23(g)(3)..................................................................................................................... 1, 4

**Other Authorities**

Federal Judicial Center, *Reference Manual on Scientific Evidence*
(3d ed. 2011)......................................................................................................................... 7

Larry Harris, *Transaction Costs, Trade Thoughts, and Riskless Principal Trading in
Corporate Bond Markets*
(USC Marshall School of Business) (Oct. 22, 2015). .................................................... 8

MANUAL FOR COMPLEX LITIGATION (Fourth)
(2004) .................................................................................................................................. 5

Plaintiffs, City of Birmingham Retirement and Relief System ("Birmingham") and Joseph M. Torsella, in his official capacity as the Treasurer of the Commonwealth of Pennsylvania ("PA Treasury") (collectively, "First Filed Plaintiffs"), respectfully submit this memorandum in support of their motion for an Order appointing Scott+Scott Attorneys at Law LLP ("Scott+Scott") and Lowey Dannenberg, P.C. ("Lowey") (collectively, "Scott/Lowey") as Interim Co-Lead Class Counsel pursuant to Rule 23(g)(3) of the Federal Rules of Civil Procedure. The vast majority of the other named plaintiffs and their law firms in this matter support the appointment of Scott+Scott and Lowey. Those firms' declarations detailing their support are submitted with this application.

## I.    INTRODUCTION

The appointment of Scott/Lowey as interim co-lead class counsel will provide the greatest benefit to the class. The Scott/Lowey team invested substantial pre-complaint resources in the case and, as a result, their complaints are of superior quality. Scott/Lowey already has command of the facts underlying Defendants' conduct in the market for bonds issued by Government Sponsored Entities ("GSEs"), which affords the class a crucial head start in this economics-driven action.

Scott/Lowey filed the first GSE bond antitrust complaint in the nation.[1] It was original work that correctly identified the Defendants, which was no simple task. In June 2018, *Bloomberg* reported that the U.S. Department of Justice ("DOJ") was investigating a group of anonymous dealers for fixing the prices of bonds issued by Federal National Mortgage Association ("Fannie Mae") and Federal Home Loan Mortgage Corporation ("Freddie Mac") (collectively, "FFBs"). The report contained scant details and did not identify which of the dozens of dealers active in the FFBs market were under investigation. The immediate challenge presented by this announcement

---

[1]    *City of Birmingham Ret. and Relief Sys. v. Bank of America, N.A.*, No. 19-cv-1704 JSR, ECF No. 1 (referred to herein as "First Filed Complaint" or "Compl.").

was to identify the misconduct, the likely duration of the conspiracy, and the dealers responsible for restraining competition in the FFB market.  The Scott/Lowey team built upon the limited information released in the *Bloomberg* report with original work to pinpoint the banks and brokers involved in this conspiracy.  To do so, the Scott/Lowey team drew upon its decades of specialized experience prosecuting financial products antitrust cases and developed the data to support its claims.

That the Scott/Lowey team was responsible for the First Filed Complaint is no small matter, as Birmingham and IBEW 103[2] chose to initiate this action without a model to base their complaint upon and without the comfort of knowing whether any other plaintiffs would file.  The First Filed Complaint was based on over eight months of analysis by two expert groups using three different data sets.  The First Filed Complaint's GSE transactions also have breadth and depth, which is important both at the motion-to-dismiss and class-certification stages.  Collectively, they entered into GSE transactions directly with each Defendant.  Among plaintiffs supporting the Scott/Lowey team's leadership application is PA Treasury.  The only state agency to file a complaint here, the Commonwealth entered into 1,900 transactions valued at more than $15 billion in GSEs directly with Defendants during the Class Period – more than all other named plaintiffs combined. Collectively, these plaintiffs represent the largest financial interest in this case.

The Scott/Lowey team's First Filed Complaint demonstrates that Scott/Lowey are the best choice for lead counsel.  Readying this case for trial by May 2020 will involve careful planning, efficient lawyering, and a tremendous amount of work.  The specialized experience of the Scott/Lowey team in financial services litigation and the depth of analysis already conducted provides the class with the representation it needs to achieve this goal.

---

[2]     "IBEW 103" refers to named plaintiffs on the First Filed Complaint, Electrical Workers Pension Fund Local 103, I.B.E.W. and Local 103, I.B.E.W. Health Benefit Plan.

## II.    BACKGROUND

This case is about the Defendant banks' conspiracy to fix prices in the secondary market for GSE bonds after their issuance.  The secondary market is a massive over-the-counter market of over $1.5 trillion, with more than $550 billion in outstanding GSE bonds that trade among buyers and sellers.  On June 1, 2018, *Bloomberg* reported that the DOJ, Antitrust Division was conducting a criminal investigation into collusion among dealers to fix GSE bond prices.  The Scott/Lowey team began its investigation of the GSE bond market shortly thereafter.[3]  The firms acquired three complementary datasets, engaged three sets of economic experts, and interviewed former GSE bond traders, including one high-level insider.  This pre-complaint work permitted Scott/Lowey to expand on the minimal information in the *Bloomberg* report to identify the most likely means by which price fixing could have succeeded in this market, and – crucially – to identify the dealers involved in the conspiracy.  This proprietary analysis resulted in the filing of the First Filed Complaint on February 22, 2019.  PA Treasury joined this action in support of the Scott/Lowey team by filing a matching complaint on March 19, 2019.

The First Filed Complaint is the only complaint to present a comprehensive view of the misconduct in the FFB market.  It was the first to identify the Defendants involved in the unlawful agreement to charge inflated, supracompetitive bid-ask spreads for GSEs – something virtually every other subsequent action has copied.  It was also the only complaint to address the full scope of the misconduct at issue in this case, *viz*: (1) inflating the prices of newly issued FFBs that Defendants sold to investors after the banks acquired them from Fannie Mae or Freddie Mac in the issuance processes; (2) coordinating inflation of the prices of older FFBs in the days prior to

---

[3]      Scott/Lowey worked with the firms Berman Tabacco and Korein Tillery, both of which support the appointment of Scott/Lowey.  *See* Declarations of Todd A. Seaver (Berman Tabacco) and George Zelcs (Korein Tillery), which detail the firms' respective contributions to the pre-complaint investigation and the First Filed Complaint, filed herewith.

each new FFB issuance which served to drive the market price of new FFBs artificially higher; and (3) agreeing to inflate the prices at which they sold FFBs to investors (the "ask" price), deflate the price at which they purchased FFBs from investors (the "bid" price), or both. Plaintiffs allege this conduct occurred from January 1, 2009 to April 27, 2014. This Class Period is supported by the data analyzed by the Scott/Lowey team, and by the fact that by 2014, as a result of the LIBOR and foreign currency investigations, government regulators worldwide had intensified their oversight of price-fixing activity by banks, particularly conduct in electronic chat rooms.

After filing the first complaint, Scott/Lowey have advanced the litigation. The firms worked collaboratively to effectuate service (or a stipulation of service) on all Defendants. Scott/Lowey also worked with other Plaintiffs' Counsel, including Supporting Counsel and counsel for Defendants, to negotiate a proposed Case Management Order that was submitted to this Court on March 27, 2019. Subsequently, Scott/Lowey and Supporting Counsel developed a plan to present a unified voice at the April 3, 2019 conference before this Court. Finally, Scott/Lowey have continued to analyze GSE bond transaction data and investigate the conduct of traders at the various Defendants. *See* Declaration of Amanda F. Lawrence filed herewith ("Lawrence Decl."), ¶¶7-11.

## III.   SCOTT/LOWEY ARE BEST ABLE TO REPRESENT THE INTERESTS OF THE CLASS

### A.   Legal Standard

The Court may designate interim counsel to act on behalf of a putative class before a class certification decision. Fed. R. Civ. P. 23(g)(3). Designation of interim counsel "'clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement.'" *In re Interest Rate Swaps Antitrust Litig.*, No. 16-MD-

2704 (PAE), 2016 WL 4131846, at *4 (S.D.N.Y. Aug. 3, 2016) (quoting MANUAL FOR COMPLEX LITIGATION (Fourth) sec. 21.11 (2004)).

In doing so, the Court considers: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A). The Court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). Where there are competing applicants, "the court must appoint the applicant best able to represent the interests of the class." Fed. R. Civ. P. 23(g)(2).

Here, Scott/Lowey meet the requisite factors and are best suited to efficiently litigate this case on behalf of a supportive and diverse group of plaintiffs.

## B. Scott/Lowey Filed First with a Superior Pleading that the Other Actions Imitated

An initial complaint manifests the quality of the pre-complaint investigation. Accordingly, the "quality of the pleadings" is a factor to be considered when selecting from among competing applicants for interim class counsel. *In re HSBC Bank USA, N.A., Debit Card Overdraft Fee Litig.*, No. 12-CV-5696 ADS AKT, 2013 WL 3816597, at *10 (E.D.N.Y. July 22, 2013).

Pre-complaint work takes on heightened importance here because the 12-month pretrial schedule leaves little breathing room.

### 1. The First Filed Complaint Is the Best Pleading

Scott/Lowey filed the first complaint in this matter on February 22, 2019. Being first to file a civil complaint sometimes is less meaningful, such as when there are guilty pleas or consent orders to consult. Here, in the absence of such specific "smoking gun" evidence, the fact that

Scott/Lowey filed first shows that Scott/Lowey have devoted considerable resources to develop wholly original work, without the benefit of prior complaints.

Scott/Lowey and two other firms devoted themselves to undertake a thorough investigation of price-fixing in the GSE bond market following the June 1, 2018 *Bloomberg* report. This team dedicated the efforts of experienced antitrust attorneys, investigators, and professional staff to this endeavor. The team also outlaid significant expense to obtain data and employ consulting experts.

The Scott/Lowey pre-complaint investigation involved: (1) analyzing three distinct transaction datasets, including close to 100 million individually identifiable FFB price quotes; (2) analyzing thousands of client transactions to confirm the actual harm caused by the alleged conspiracy; (3) leveraging separate groups of economists with complementary areas of expertise to identify the Defendants in this action and present the only comprehensive picture of manipulation in the FFB market; (4) consulting with a high-ranking insider and former FFB trader intimately familiar with Defendants' activity in the FFB market during the Class Period, in addition to speaking with dozens of market participants and industry insiders to grasp the market's intricacies and structure; and (5) using a Washington DC-based consulting firm with a vast knowledge of Fannie Mae and Freddie Mac operations to provide insight into the relationship between Fannie Mae and Freddie Mac and underwriting banks, and to ensure that no regulatory issues or issues concerning the Fannie Mae conservatorship affect the Plaintiffs' rights here. *See* Lawrence Decl., ¶¶4-11; Seaver Decl., ¶¶8-21, attached as Ex. 5 to the Lawrence Decl.

## 2. Subsequently Filed Complaints Largely Emulate the Scott/Lowey Complaints

Often, the first filed antitrust complaint is an armature to which subsequent complaints append additional facts. In this case, by contrast, the First Filed Complaint remains the most accurate, substantial, and detailed pleading. Among its virtues, the *Birmingham* complaint

correctly identified the Defendants, in part, because Plaintiffs were able to confirm their identity using "unmasked" FFB pricing data rather than the readily available anonymous trading data.  *See* ¶180.[4]

Most of the subsequently filed complaints mimicked the mix of defendants named by Scott/Lowey.  Counsel who filed the *Alaska* complaint[5] did not initially name the same Defendants that were named by Scott/Lowey, but subsequently amended their complaint to conform, dropping one third of their originally named Defendants and adding others.  This amendment brought the defendants named in the *Alaska* complaint in line with the First Filed Complaint.[6]

### 3. Scott/Lowey's Superior Market Data and Economic Analysis Provides a Crucial Head Start for the Class

Scott/Lowey have done the most comprehensive economic investigation of any applicant. In antitrust litigation, economic and legal analyses are interwoven.[7]  Scott/Lowey's pre-complaint economic work puts them in the best position to ready class claims for trial in May 2020.

---

[4]     Unless otherwise noted, ¶ and ¶¶ references are to the *Birmingham* Complaint.

[5]     *Compare Alaska Electrical Pension Fund v. Bank of America, N.A.*, No. 19-cv-1796 (S.D.N.Y.), ECF No. 1, *with id.* ECF No. 53.

[6]     The majority of subsequently filed complaints also adopted the Class Period named in the First Filed Complaint.

[7]     "Statistical assessments are prominent in many kinds of legal cases, including antitrust . . . ." Federal Judicial Center, *Reference Manual on Scientific Evidence* 213 (3d ed. 2011).  Justice Breyer has described the "great weight" the Supreme Court has placed on statistical analysis in recent cases.  *Id.* at 239.  "The economic expert has become a central figure in virtually every antitrust litigation or merger matter, and the importance of econometrics has increased significantly."  ABA Section of Antitrust Law, *Econometrics* xv (2005).  Courts have relied on econometric evidence to determine the existence of an antitrust conspiracy, the existence of antitrust injury, and the amount of antitrust damages.  *Id.* at 2-3 & nn.9, 12, 13; *see also, e.g.*, *In re Elec. Books Antitrust Litig.*, No. 11 MD 2293 DLC, 2014 WL 1282293, at *31 (S.D.N.Y. Mar. 28, 2014) (class-wide impact of antitrust conspiracy); *In re London Silver Fixing, Ltd., Antitrust Litig.*, 213 F. Supp. 3d 530, 561 (S.D.N.Y. 2016) (plausibility of alleged conspiracy); *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 256 F.R.D. 82, 102–03 (D. Conn. 2009) (class-wide injury and damages).

***Superior datasets.***  Scott/Lowey have invested in and already analyzed a comprehensive set of data of actually completed FFB transactions.  The data includes: (1) non-public, enhanced historical TRACE data; (2) intraday trading data from MarketAxess; and (3) a proprietary dataset that, crucially, enables identification of GSE bond transaction counterparties.

Broker-dealers must report GSE bond trades within 15 minutes to TRACE, a system maintained by the Financial Industry Regulatory Authority ("FINRA"), a private organization that regulates broker-dealers.  FINRA maintains a public version of TRACE containing limited data fields.  The First Filed Complaint, however, uses "enhanced, historical TRACE data," which is not public and which can only be obtained at significant cost.  Seaver Decl., ¶¶15, 16, attached as Ex. 5 to the Lawrence Decl.  The enhanced TRACE data contains more data fields than the public version, including the identification of primary market transactions versus secondary market transactions, precise trade sizes, precise time stamps, and fields that enable the identification of "riskless principal" transactions (detailed further below).  The First Filed Complaint used the enhanced, historical TRACE data to analyze over 14,000 bonds issued by Fannie Mae and Freddie Mac and over 5.9 million total transactions.  *Id.*[8]

The second dataset purchased by Scott/Lowey is FFB transaction data from the electronic trading platform, MarketAxess.  The data includes intraday price quotes and transaction prices spanning numerous years.  Scott/Lowey then invested additional resources to independently "clean" this data to isolate ***transaction prices***.  Lawrence Decl., ¶¶6-7.  This step eliminates the "noise" of millions of data observations consisting of posted bids and posted quotes which never

---

[8]     For a description of TRACE data and its role in bond markets, *see generally* Larry Harris, *Transaction Costs, Trade Thoughts, and Riskless Principal Trading in Corporate Bond Markets*, at section 4 (USC Marshall School of Business) (Oct. 22, 2015).

resulted in an actual transaction.  Scott/Lowey have an independent data analyst who has worked extensively with this dataset and is prepared to continue such work.  *Id.*, ¶7.

The third dataset used by Scott/Lowey permits the identification of the actual parties to GSE transactions.  Briganti Decl., ¶8, attached as Ex. 4 to the Lawrence Decl.  Because the datasets are typically anonymous as to counterparties and the DOJ did not provide the names of those being investigated, it is this third, "unmasked" dataset that permitted the First Filed Complaint to have the most complete information possible to properly identify which dealer banks to name as Defendants.  *Id.*  Counsel obtained access to data containing almost one hundred million individually identifiable bid and ask price quotes reflecting the prices that GSE dealers, including Defendants, bought and sold over the last 19 years.  This data allowed Scott/Lowey to do what no other firm in this action had done:  specifically, link dealers to the artificial prices observed in the FFB market using their actual pricing behavior.  *See id.*

***Most comprehensive economic fact analyses.***  All of the filed complaints can point to the public report of a criminal DOJ probe into secondary market trading of FFBs and new public information that corroborates that report.[9]  But what is different here is the economic analyses done by Scott/Lowey on price action in the GSE bond market that permitted the identification of the proper scope of the Class Period, the nature of the claims, and identity of the Defendants.

The First Filed Complaint simply has more, and better, economic facts than any other complaint, which evidences counsel's specific expertise in prosecuting antitrust class actions in financial markets.  In addition to observing bid-ask spreads, the First Filed Complaint has the

---

[9]   On March 5, 2019, defendant BNP Paribas disclosed that "US regulatory and law enforcement authorities are currently investigating or requesting information in relation to certain activities as reported in the international financial press in relation to . . . US Agency bonds.  The Bank, which has received some requests for information, is cooperating with investigations and is responding to requests for information."  BNP Paribas, *Registration Document and Annual Financial Report 2018* at 249 (2019).

following unique economic fact allegations that were developed by counsel in consultation with a

number of economic experts, including an NYU professor cited in the *Alaska* complaint for his

knowledge of the subject:

- **Off-the-run / On-the-run**. Allegations, substantiated by the three datasets, that prices of Fannie Mae and Freddie Mac bonds increased in the 1–2 days prior to going "off-the-run," which had the direct effect of raising the secondary market prices of newly issued ("on-the-run") bonds. ¶¶162-69.

- **Offer Day**. Allegations showing that there was a significant gap between prices and yields between the primary market and secondary market on the offer day for new Fannie Mae and Freddie Mac bonds, and that the higher secondary market prices persisted for at least a week following offer day. *See* ¶¶139-54.

- **Riskless Principal Transactions**. Allegations confirming GSE bid-ask spread inflation were pled by analyzing "riskless principal" trades. As the label implies, these transactions present no risk to the dealer, who matches a seller and buyer of a bond on the secondary market without ever taking that bond into inventory. Typically, a dealer's return on a trade – whether markup, commission, or both – reflects the dealer's risk in that transaction, with higher-risk trades generating larger returns. Yet, pre-complaint work reflected in the First Filed Complaint shows that during the Class Period, markups associated with riskless principal trades were significantly higher than after. In other words, during the Class Period, the dealer bank defendants inflated bid-ask spreads in the secondary market that presented no risk. ¶¶178-85.

- **Spread to Treasuries**. The Scott/Lowey complaints allege a sophisticated observation of the spreads between FFB yields to those of U.S. Treasury bonds matched for relevant attributes. ¶¶155-61.

This pre-complaint work, at significant investment, can readily form the basis for a

classwide impact and damages model.

These fact allegations are unique to the First Filed Complaint. They are the economic

footprints left by Defendants' conduct in the GSE bond market. These allegations will help sustain

a consolidated complaint and further analysis will assist at class certification and trial.

## C.  Scott/Lowey Are Uniquely Poised to Make This Class Action Trial-Ready in Twelve Months

Scott/Lowey have lawyers and professional staff to match the resources of Defendants'

counsel. Counsel who will be primarily handling this case for Scott+Scott (Amanda Lawrence,

Kristen Anderson, and Christopher Burke), each currently have only one other matter which they are handling day to day.  Likewise, the attorneys at Lowey responsible for this matter, Margaret MacLean, Vincent Briganti, and Christian Levis, have just finished wrapping up a major class action against many of the same Defendants here and will be able to devote their full attention to this case.

The Class will also benefit from Scott/Lowey's ability to draw upon the resources of Supporting Counsel, if necessary.  The vast majority of the other named plaintiffs in the other separate complaints in this matter support the appointment of Scott/Lowey.  Their declarations detailing their support are submitted with this application.[10]  These counsel have been lead counsel in numerous antitrust cases and add a wealth of talent and experience that could be employed by interim lead counsel when it is most efficient to do so.  *See* Supporting Counsel declarations filed concurrently with this motion.

With regard to managing the litigation on a succinct schedule, Scott/Lowey will not be outdone by any firm or combination of firms.  The class will benefit from Scott/Lowey's in-house infrastructure of professional staff and hardware/software that can process and review documents and data on an expedited schedule.  The firms have a proven ability to work closely with economists and industry professionals to properly handle this kind of data.  In *FX*, defined below, Scott+Scott created and maintains a secure environment for hosting and analyzing transaction data.

---

[10]    Those Plaintiffs are: Electrical Workers Pension Fund Local 103, I.B.E.W., Local 103, I.B.E.W. Health Benefit Plan, Deerfield Beach Municipal Firefighters' Pension Trust Fund, Lincolnshire Police Pension Fund, International Association of Heat and Frost Insulators and Allied Workers No. 14 Pension and Health and Welfare Funds, UCFW Local 1776 and Participating Employers Pension Fund, and Oklahoma Police Pension and Retirement System. The firms are Berman Tabacco, Korein Tillery, Nussbaum Law Group PC, Freed Kanner London & Millen LLC, Berger Montague PC, Radice Law Firm PC, and Labaton Sucharow LLP (collectively, the "Supporting Firms").  Declarations from the Supporting Firms are filed simultaneously.

Off-the-shelf software solutions could not handle the needs of the case, given the sheer amount of computing power needed by experts spread across the globe, as well as the rigorous data security requirements of the financial industry. The *FX* database was extraordinarily large, consisting of data from over 7,000 files from 30 different trading systems, amounting to 10 billion rows and 6.5 terabytes. Lawrence Decl., ¶20. The firm made a sizable and ultimately successful investment in *FX*, and it is prepared to make the same kind of investment here. The class will also benefit from Lowey's in-house e-discovery capabilities. Unlike most firms, Lowey maintains its own e-discovery infrastructure. Scott/Lowey also have a team of industry experts, economists, and dedicated data analysts that have worked extensively on this case and stand ready to continue to pursue the claims against the Defendants.[11]

Scott/Lowey have developed a plan to leverage these resources to get this case trial-ready by May 2020. ***First***, the Defendants should be required to immediately produce the materials they turned over to the DOJ. This will aid in the framing of the amended complaint and reduce the need for any further amendments. There is no automatic stay in antitrust matters; producing what has already been produced poses no burden for the Defendants; and proportionality does not justify delaying discovery. Immediate production is particularly appropriate here where discovery must be completed within a 12-month pretrial schedule, there is dual enforcement of the antitrust laws, and the Defendants are recidivists in the financial services sector. The DOJ production will also inform Plaintiffs' discovery requests by supplying search terms and identifying key custodians. ***Second***, Scott/Lowey are willing to agree to Defendants' proposed 14-day motion to dismiss interval so long as the briefing is consolidated. ***Third***, Scott/Lowey suggest a simultaneous

---

[11] For example, while discovery costs in large antitrust trust cases can run into the millions of dollars, Lowey requested just $155,362.11 to cover those expenses in *Sullivan v. Barclays PLC*, 13-cv-2811 (PKC) (S.D.N.Y.), ECF Nos. 411, 483, where it recovered more than $491 million for the class.

exchange of expert disclosures.  Those reports, in turn, could be used for class certification and summary judgment motions which should be briefed simultaneously.  This sequencing of expert disclosures and briefing class certification and summary judgment will shave two months from the routine way of doing things.

### D. Scott/Lowey Meet the Remaining Requirements of Rule 23(g) as They Have Experienced Litigators with Specific Knowledge of Financial Antitrust Class Actions and Have the Resources Necessary to Effectively Litigate This Case

Selection of interim counsel involves consideration of "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action" and "counsel's knowledge of the applicable law."  Fed. R. Civ. P. 23(g)(1)(A)(ii) & (iii). Scott/Lowey's considerable experience is detailed below.

Scott/Lowey have a deep roster of experienced and knowledgeable antitrust class action attorneys and possess the financial and human resources needed to properly litigate this case.

### Scott+Scott

Scott+Scott is an international plaintiffs' litigation law firm with over 68 attorneys in offices spanning from London to San Diego, with its largest office in New York City.  The firm specializes in complex litigation, including an emphasis on antitrust class actions.  *See* Ex. A to Lawrence Decl. (Scott+Scott's firm profile).

The firm's recent successes include the following large financial antitrust class actions:

- ***In re Foreign Exchange Benchmark Rates Antitrust Litig.***, No 13-cv-7789 (LGS) (S.D.N.Y) ("*FX*").  Scott+Scott serves as co-lead counsel in an antitrust action that alleges the major banks conspired to fix the price of foreign exchange.  The firm has obtained final approval of settlements with 15 of the 16 defendants, totaling over $2.3 billion and continues to litigate against the remaining defendant.

- ***Alaska Electrical Pension Fund v. Bank of America, N.A.***, No. 14-cv-7126 (JMF) (S.D.N.Y.) ("*ISDAfix*").  Scott+Scott served as co-lead counsel in an antitrust class action that alleges 14 major banks and a broker conspired to manipulate the ISDAfix rate, a key benchmark interest rate for a broad range of interest rate

13

derivatives and other financial instruments.  The Court approved the $504 million class settlement on November 13, 2018.

- ***Dahl v. Bain Capital Partners, LLC***, No. 07-cv-12388 (WGY) (D. Mass.) ("*Dahl*").  Scott+Scott served as co-lead counsel in an antitrust class action that alleged the nation's largest private equity firms colluded to restrain competition and suppress prices paid to shareholders of public companies in connection with leveraged buyouts.  Although the DOJ declined to prosecute, the case recovered $590.5 million for the class.

Scott+Scott has a track record of success in cases of this scale.  Earlier this year, renowned mediator, Kenneth R. Feinberg, concluded that the *FX* settlements "represent[] some of the finest lawyering toward a negotiated resolution that I have witnessed in my career" and that Scott+Scott were "superlative, sophisticated, and determined plaintiff's lawyers."  *See FX*, ECF No. 925 at 2; *FX*, ECF No. 926, ¶29.  The New York Supreme Court described Scott+Scott's representation of New York University concerning Bernie Madoff's Ponzi scheme as "superlative."  *New York Univ. v. Ariel Fund Ltd*., No. 603803/08, slip. op. at 9-10 (N.Y. Sup. Ct. Mar. 1, 2010).

If appointed interim lead counsel, the following attorneys will primarily handle the litigation at Scott+Scott:

- **Amanda F. Lawrence** is a partner engaged in complex antitrust, securities, corporate governance, consumer, and antitrust litigation matters.  Ms. Lawrence, who worked extensively on the First Filed Complaint and has been involved with every aspect of the case, will be assigned to the case virtually full time.  Ms. Lawrence was intricately involved in *ISDAfix*, taking depositions and working through expert discovery, including numerous *Daubert* motions and responses.  Ms. Lawrence helped achieve a settlement in *Vulcan Society, Inc. v. The City of New York*, 07-CV-2067 (E.D.N.Y.), that brought both monetary and injunctive relief to a class of African American and Hispanic firefighters in New York City, as well as a settlement in *In re Prudential Insurance Company of America SGLI/VGLI Contract Litigation*, 3:11-md-02208-MAP (D. Mass.) that brought both forms of relief to relatives of deceased servicemen and women.  Ms. Lawrence is a graduate of Dartmouth College and Yale Law School and is involved in numerous panels for women in the law.

- **Kristen M. Anderson** currently represents the class plaintiffs in *FX* ($2.3 billion settlement) and *Axiom Investment Advisors, LLC, by and through its Trustee Gildor Management LLC v. Barclays Bank PLC*, No. 15-cv-9323 (S.D.N.Y.) ($50 million settlement).  Ms. Anderson was also a key member of the team that prosecuted the

*Dahl* action to a $590.5 million recovery, leading the briefing team on all major motions. Ms. Anderson served on the trial team representing certified classes of cardholders in antitrust cases challenging class action-banning arbitration clauses in credit card agreements as restraints of trade in *Ross v. Bank of Am., N.A.*, No. 05-cv-7116, MDL No. 1409 (S.D.N.Y.) and *Ross v. Am. Express Co.*, No. 04-cv-5723, MDL No. 1409 (S.D.N.Y.). Ms. Anderson has been named a Super Lawyer Rising Star numerous times and is a frequent speaker on antitrust and women in the law panels for the ABA and other organizations.

- **Christopher M. Burke** chairs Scott+Scott's competition practice and serves as co-lead counsel in *FX*. He served as co-lead counsel in, *inter alia*, *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, MDL No. 1720 (MKB) (JO) (E.D.N.Y.) (and subsequently on the executive committee after joining Scott+Scott) (over $5 billion settlement), *ISDAfix*, *Dahl*, and *In re Currency Conversion Antitrust Litig.*, No. 01-md-1409, MDL No. 1409 (S.D.N.Y.) ($336 million settlement). Prior to joining the class action bar, Mr. Burke was an Assistant Attorney General at the Wisconsin Department of Justice. He has twice been honored by the American Antitrust Institute for Outstanding Antitrust Litigation Achievement in Private Law Practice.

Scott+Scott's core leadership team will be supported by a diverse group of talented staff attorneys with experience in financial services litigation. These lawyers will be dedicated to reviewing documents and preparing for depositions during the pretrial phase. *See* Lawrence Decl., Ex. A. Scott+Scott will commit the necessary experienced attorneys, professional staff, and substantial resources to effectively and efficiently prosecute the action. Scott+Scott is willing and able to front large costs to make sure the class is properly represented. For example, in *FX*, Scott+Scott has, to date, advanced over $10 million in costs. In *ISDAfix*, Scott+Scott advanced over $4.1 million in costs. Lawrence Decl., ¶21.

### Lowey

Founded in 1967 by Stephen Lowey, Lowey has represented clients in complex antitrust and market manipulation cases for more than 50 years, successfully prosecuting class actions against some of the world's largest financial institutions and corporations and achieving substantial recoveries for investors. In this specialized area of the law, Lowey is a leader in the class action

bar.  Lowey has developed a demonstrated ability to guide complex actions past the pleadings

stage and successfully certify classes of investors injured by market manipulation.[12]

Equally important for the class in this litigation, Lowey has a proven ability to achieve

results under significant time pressure.  The results in these cases show that Lowey has the requisite

level of expertise to handle the complexities of this litigation.  For example:

- **Sullivan v. Barclays PLC**, No. 13-cv-02811 (PKC) (S.D.N.Y.), ECF No. 424. Lowey recently announced settlements with five defendants for allegedly manipulating the Euro Interbank Offered Rate ("Euribor"), for a total recovery for investors in the Euribor case to more than $491 million.  In *Sullivan*, Lowey demonstrated an ability to work with complex data and adhere to an expedited discovery schedule that provided for less than eight months of fact discovery;[13]

- **Laydon v. Mizuho Bank, Ltd.**, Case No. 12-cv-03419 (GBD) (S.D.N.Y.) ("*Euroyen Litigation*").  Lowey is the Court-appointed sole lead counsel of this proposed class action alleging the intentional and systematic manipulation (through false reporting and other unlawful means) of Yen LIBOR and the Euroyen TIBOR by, among others, Barclays, Rabobank, Deutsche Bank, RBS, and UBS.  Judge Daniels has granted final approval for settlement agreements  totaling $236 million.

- **In re London Silver Fixing, Ltd., Antitrust Litigation**, Case No. 14-md-2573 (VEC) (S.D.N.Y.) ("*Silver Fixing*").  After Lowey was appointed co-lead counsel in a contested lead counsel application involving several prominent class action firms, Lowey used econometric models to craft a complaint alleging antitrust claims that was sustained by Judge Valerie E. Caproni on October 3, 2016.[14] Lowey secured a $38 million settlement from Deutsche Bank and valuable cooperation that it is using in the ongoing prosecution of the case against the remaining defendants.

---

[12]    *See, e.g.*, *In re Natural Gas Commodity Litigation*, Master File No. 03 CV 6186 (S.D.N.Y.) (Marrero, J.) (certifying class action alleging false reporting of physical natural gas price and volume information by more than 20 large energy companies); *In re Amaranth Natural Gas Commodities Litigation*, Master File No. 07 Civ. 6377 (S.D.N.Y) (Scheindlin, J.) (certifying class action alleging manipulation of NYMEX natural gas futures and options contracts); *Hershey v. Pacific Investment Management Corp.*, Case No. 05-C-4681 (RAG) (N.D. Ill.) (certifying class action alleging manipulation of Chicago Board of Trade U.S. 10-Year Treasury Note futures contracts).

[13]    *See* ECF No. 337.

[14]    *In re London Silver Fixing, Ltd., Antitrust Litig.*, 213 F. Supp. 3d 530, 542 (S.D.N.Y. 2016).

Lowey attorneys have developed significant experience litigating cases involving bond markets specifically. Lowey serves as Court-appointed sole Lead Counsel in *In re Mexican Government Bonds Antitrust Litig.*, 18-cv-02830 (JPO) (S.D.N.Y.), an antitrust class action by eight institutional investors prosecuting 10 global financial institutions for colluding to fix the prices of debt securities issued by the Mexican Government between 2006 and 2017.

Lowey has over 45 attorneys and the firm specializes in antitrust and financial services class actions. If appointed, the team below will be specifically responsible for managing this case:

- **Margaret MacLean** gained substantial experience in all aspects of complex litigation over more than a decade in preeminent national law firms. At Lowey, she plays a key role in litigating the firm's financial products antitrust cases, including *Laydon v. Mizuho Bank, Ltd.*, No. 12-cv-03419 (S.D.N.Y.) (Daniels, J.); *Sonterra Capital Master Fund Ltd. v. Barclays Bank PLC*, No. 15-cv-03538 (S.D.N.Y.) (Broderick, J.); and *Frontpoint Asian Event Driven Fund v. Citibank N.A.*, No. 16-cv-05263 (S.D.N.Y.) (Hellerstein, J.). Ms. MacLean earned her undergraduate degree *summa cum laude* from Dartmouth College and her J.D. from Columbia Law School, where she was a Managing Editor of the *Columbia Law Review*.

- **Vincent Briganti** leads the firm's financial services antitrust practice. He has more than 20 years of experience with price-fixing cases in financial markets and has achieved some of the most significant recoveries in this area. Mr. Briganti currently serves as court-appointed sole lead counsel in *In re Mexican Government Bonds Antitrust Litigation*, and also serves as court-appointed lead counsel in numerous class actions against global banking institutions involving antitrust, commodities fraud, and RICO claims relating to alleged manipulation of financial benchmarks worldwide. Recognized as a leader of the class action bar, he has guided Lowey to its position as one of the top plaintiffs' financial services antitrust class action firms in the world.

- **Christian Levis** has focused his career on litigating complex class actions involving manipulation in the world's largest financial markets. A key member of the firm's financial products antitrust team, he was directly involved in achieving the outstanding results in *Sullivan*, *Laydon*, and *London Silver Fixing*, described above. Mr. Levis also leads the firm's e-discovery group, where he often applies his experience as an avid computer programmer to the collection and manipulation of data from large financial institutions, including several of the Defendants here. This technological expertise also proved invaluable in the development of this case, where Mr. Levis worked closely with experts to develop allegations about the econometrics at the heart of the Scott/Lowey complaints.

This team will be supported by a similarly talented group of attorneys with significant experience prosecuting antitrust cases against many of the same Defendants named in this action, including Barclays, Citigroup, JPMorgan, Deutsche Bank, and UBS.  This will help to expedite discovery, as Lowey is well-versed in the specific issues, including those related to individual the Defendants' specific document and data systems, that are likely to be involved in this litigation. *See* Briganti Decl., ¶18, attached as Ex. 4 to the Lawrence Decl.

Resources will not be a problem here.  Lowey has advanced millions of dollars on behalf of the classes it has represented in the past and is prepared to advance similar substantial sums to ensure the successful prosecution of this case.

Not only are Scott/Lowey eminently qualified to serve as lead counsel here based upon their own experience, but the experience of Supporting Counsel and their decision to support Scott/Lowey for Interim Class Counsel also weighs in their favor.[15]

## IV.    BIRMINGHAM, IBEW 103, AND PA TREASURY WILL CARRY OUT THE FIDUCIARY RESPONSIBILITIES OF LEAD PLAINTIFFS

The Federal Judicial Center encourages district courts to borrow from the empowered-plaintiff model of the PSLRA in selecting class counsel in other types of complex cases.  *See* Manual for Complex Litigation §21.272, at 281 ('[The PSLRA] provides a useful analogy for similar class actions brought by sophisticated plaintiffs with large losses or sizeable claims.'); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MD 2262 NRB, 2011 WL 5980198, at *3 (S.D.N.Y. Nov. 29, 2011) (finding it "highly relevant" that an applicant for appointment as class counsel "has the support of a plaintiff with by far the greatest economic interest").

---

[15]    These firms (as well as Scott/Lowey) have not engaged with outside litigation funding firms.

Transactions in FFBs, with their high credit quality, have been an integral part of both Birmingham's and the PA Treasury's investment portfolios for years. PA Treasury alone entered into transactions in FFBs during the Class Period with a total notional value in excess of *$21 billion*.  Of those transactions, over 1,900 were made directly with Defendants or their subsidiaries, with a total value over $15 billion.  Combined, Birmingham's and the PA Treasury's financial interest in the outcome of this case dwarf that of any other plaintiff.[16]  *See* Declarations of Birmingham and PA Treasury filed concurrently.

Birmingham and PA Treasury have the resources, the sophistication, and above all, the motivation[17] to litigate this action aggressively on behalf of the Class.  Birmingham was willing to be the first name on the First Filed Complaint in this action and is committed to pursuing it.  PA Treasury employs 360 people and is charged with the responsibility to safeguard over $100 billion in public funds.

Furthermore, Birmingham and PA Treasury have been heavily involved in the filing of this action by being in close contact with counsel to provide feedback, monitor developments, and ultimately make decisions crucial to the prosecution of this case.

---

[16]     Plaintiff IBEW 103, which supports this application, by itself transacted $81.2 million of 89 unique Fannie/Freddie bonds directly with all but one defendant, and furthermore transacted the total mix of various bond types:  long term, medium term, short term, bullets, callables, fixed coupon and floating coupon.  Donovan Decl., ¶11, attached as Ex. 3 to the Lawrence Decl.

[17]     *Id*., ¶9 ("[A]s an investor, market risk is acceptable, but the risk that counterparties are (allegedly) price-fixing terms of the investments such as GSE Bonds is unacceptable.").

## V.      CONCLUSION

For the foregoing reasons, Plaintiffs, City of Birmingham Retirement and Relief System and PA Treasury, respectfully request that the Court appoint Scott/Lowey as Interim Co-Lead Counsel.

DATED:  April 9, 2019                        Respectfully submitted,

                                                          SCOTT+SCOTT ATTORNEYS AT LAW LLP

                                                           s/ Amanda F. Lawrence
                                                          Amanda F. Lawrence
                                                          156 South Main Street
                                                          P.O. Box 192
                                                          Colchester, CT 06415
                                                          Telephone: 860-537-5537
                                                          Email: alawrence@scott-scott.com

                                                          CHRISTOPHER M. BURKE
                                                          SCOTT+SCOTT ATTORNEYS AT LAW LLP
                                                          600 W. Broadway, Suite 3300
                                                          San Diego, CA 92101
                                                          Telephone: 619-233-4565
                                                          Email: cburke@scott-scott.com

                                                          KRISTEN M. ANDERSON
                                                          THOMAS K. BOARDMAN
                                                          SCOTT+SCOTT ATTORNEYS AT LAW LLP
                                                          The Helmsley Building
                                                          230 Park Avenue, 17th Floor
                                                          New York, NY 10169
                                                          Telephone: 212-223-6444
                                                          Email: kanderson@scott-scott.com
                                                                   tboardman@scott-scott.com

                                                          *Attorneys for Plaintiff the City of Birmingham*
                                                          *Retirement and Relief System*

VINCENT BRIGANTI
CHRISTIAN LEVIS
ROLAND R. ST. LOUIS, III
LOWEY DANNENBERG, P.C.
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: 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
Email: vbriganti@lowey.com
      clevis@lowey.com
      rstlouis@lowey.com

JULIA R. MCGRATH
LOWEY DANNENBERG, P.C.
One Tower Bridge
100 Front Street, Suite 520
West Conshohocken, PA 19428
Telephone: 215-399-4770
Email: jmcgrath@lowey.com

*Attorneys for Plaintiff Joseph M. Torsella, in His Official Capacity as the Treasurer of the Commonwealth of Pennsylvania*

## CERTIFICATE OF SERVICE

I hereby certify that on April 9, 2019, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.


   s/ Amanda F. Lawrence
Amanda F. Lawrence