UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/2/19
```

```
r----------------------------
|
| IN RE GSE BONDS ANTITRUST
| LITIGATION
|
|
L----------------------------
```

19-cv-1704  (JSR)

MEMORANDUM ORDER

JED S. RAKOFF, U.S.D.J.

This consolidated putative class action alleges that defendant banks worked together to manipulate the market in bonds issued by government-sponsored entities ("GSEs"). The plaintiffs are a variety of retirement and investment accounts who have traded in GSE bonds with the defendants. At the initial conference, the Court ordered the parties to submit applications and briefing for the appointment of interim lead counsel. The Court received four proposals: on behalf of Scott+Scott and Lowey Dannenberg, jointly ("Scott/Lowey"); on behalf of Quinn Emanuel Urquhart & Sullivan and Robbins Geller Rudman & Dowd, jointly ("Quinn/Robbins"); on behalf of Susman Godfrey, alone ("Susman"); and on behalf of Cohen Milstein Sellers & Toll, proposing a tripartite appointment of itself, Quinn Emanuel, and Robbins Geller ("Cohen"). The Court then held a hearing on April 26, 2019.

"When appointing interim class counsel, courts generally look to the same factors used in determining the adequacy of class counsel under Rule 23(g) of the Federal Rules of Civil Procedure." In re Amla Litig., 320 F.R.D. 120, 121 (S.D.N.Y. 2017) (quoting Buonasera v. Honest Co., Inc., 318 F.R.D. 17, 18 (S.D.N.Y. 2016)).

Those factors include "the work counsel has done in identifying or investigating potential claims in the action; counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; counsel's knowledge of the applicable law; and the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). The court also "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

At the outset, the Court notes that all of the firms seeking appointment are exceedingly well-qualified, with ample experience in the field of antitrust and financial class actions, as well as lengthy rosters of skilled attorneys. The Court has no doubt that any of these firms could ably represent a certified class and prepare this complicated case for trial within the deadline set by the Court.

Accordingly, the Court's decision to appoint lead counsel was guided by considerations other than the capability and resources of counsel. In particular, in the Court's experience, it is desirable for the lead plaintiff to itself be engaged and to take a guiding role in the litigation independent of its counsel.

With that and other relevant factors in mind, the Court concludes that Scott+Scott and Lowey Dannenberg have presented the most compelling case, for several reasons. First, Scott/Lowey

represent the plaintiffs who filed the first of these consolidated actions: the City of Birmingham Retirement and Relief System, Electrical Workers Pension Fund Local 103, I.B.E.W., and Local 103, I.B.E.W. Health Benefit Plan. In preparing that complaint, Scott/Lowey did substantial investigative work and invested significant resources. Indeed, the Scott/Lowey complaint is clearly the template for the great majority of the cases filed since and here consolidated. Scott/Lowey's "work . . . in identifying or investigating potential claims in the action," Fed. R. Civ. P. 23(g)(1)(A)(i), weighs in favor of appointment.

The Court notes that the complaint filed by Quinn/Robbins differs substantially from the Scott/Lowey complaint, and that Quinn/Robbins also engaged in a lengthy and expensive investigation prior to filing. However, Scott/Lowey additionally represents a client, the Treasury of Pennsylvania, with the single greatest financial interest in this case. It is true that this case is not governed by the Private Securities Litigation Reform Act, which creates a rebuttable presumption that "the most adequate plaintiff" in any action covered by its provisions is the person or group with "the largest financial interest in the relief sought by the class." 15 U.S.C. 78u-4(a)(3)(B)(iii)(I)(bb). Congress's judgment was that financial interest in such cases is a useful proxy for determining which plaintiff would be most engaged and likely to produce client-driven representation. That judgment,

while not binding on the Court here, is nonetheless highly persuasive.

Additionally, Christopher Craig, the general counsel for the Pennsylvania Treasury, was present and testified at the April 26, 2019 hearing. Mr. Craig testified that, while he himself was not personally experienced with antitrust matters, he was able to consult with other attorneys in the Pennsylvania State Employees Retirement System, as well as approximately five different law firms that the Treasury maintains on retainer. Based on Mr. Craig's testimony, the Court is confident that the Treasury will be able to consult with Scott/Lowey on an informed basis and maintain an active role in these proceedings.

Moreover, while the Court has no doubt that any of the firms here could manage the discovery required in this complex case, Lowey Dannenberg represents that it maintains its own e-discovery infrastructure. Again, this is not a dispositive factor, but it weighs slightly in Scott/Lowey's favor.

As acknowledged above, Quinn/Robbins also did substantial investigative and preliminary work to develop a theory before filing. Additionally, Quinn/Robbins has a significant size advantage over the competitor firms. However, the Court has doubts, based on its review of the retainer agreements, whether Quinn/Robbins' client, the Alaska Electrical Pension Fund, is capable of exercising genuine oversight over this action. The

Fund's retainer agreement with Robbins Geller does not guarantee continued representation if the class is not certified, or even if it is but Robbins Geller is not designated as lead counsel. The Court is concerned whether the Fund would be a truly active lead plaintiff, since it apparently accepted this extremely one-sided provision without hesitation.

Finally, the Court is not persuaded that either of the other contender firms are better options for lead counsel. Cohen Milstein seeks appointment for itself alongside Quinn Emanuel and Robbins Geller – an arrangement that Quinn Emanuel and Robbins Geller expressly do not support. The Court's concerns about appointing Quinn/Robbins apply equally to Cohen's proposal, which would also add the complication of a third firm. Susman Godfrey, meanwhile, acknowledges that it did less pre-filing investigation than either Scott/Lowey or Quinn/Robbins, and does not point to any other compelling factor that would justify its appointment.

Accordingly, the Court concludes that Scott/Lowey are best suited to represent the interests of the class. The Court's only concern is whether Scott/Lowey possesses the resources to litigate this case without excessive delegation to other firms. In their papers, Scott/Lowey obliquely suggested that they might "draw upon the resources of" seven other firms "if necessary." Scott/Lowey Mem. 11, ECF No. 95. That is not acceptable to the Court. No lead counsel work should be delegated to any firm that has not been

investigated and approved by the Court. The Court therefore appoints Scott+Scott and Lowey Dannenberg as interim co-lead class counsel, on the condition that no lead counsel work be delegated to any other firm without first obtaining the Court's prior written approval.

The Clerk of the Court is directed to close entries 92, 94, 98, and 101 on the docket of this case.

SO ORDERED.

Dated:    New York, NY

May 2, 2019                          JED S. RAKOFF, U.S.D.J.