**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE GSE BONDS ANTITRUST LITIGATION | Case No. 1:19-cv-01704 (JSR) |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR**
**PRELIMINARY APPROVAL OF STIPULATION AND AGREEMENT OF**
<u>**SETTLEMENT WITH DEUTSCHE BANK SECURITIES INC.**</u>

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

PROCEDURAL BACKGROUND ................................................................................... 2

ARGUMENT ................................................................................................................... 3

I.     THE COURT IS LIKELY TO GRANT FINAL APPROVAL TO THE PROPOSED
SETTLEMENT ..................................................................................................... 3

    A.    The Settlement Is Procedurally Fair Because It Was Achieved Through
Extensive Arm's-Length Negotiation with the Assistance of a Respected
and Experienced Mediator (Rule 23(e)(2)(B)) .......................................... 4

    B.    The Settlement Is Substantively Fair ........................................................ 5

        1.    The Complexity, Expense, and Likely Duration of the Litigation
(*Grinnell* Factor #1) ..................................................................... 5

        2.    The Reaction of the Settlement Class (*Grinnell* Factor #2) ........ 7

        3.    The Stage of the Proceedings and the Amount of Discovery
Completed (*Grinnell* Factor #3) ................................................. 7

        4.    The Risks of Establishing Liability and Damages
(*Grinnell* Factors #4, 5) .............................................................. 9

        5.    The Risks of Maintaining a Class Through Trial
(*Grinnell* Factor #6) ................................................................. 10

        6.    Deutsche Bank's Ability to Withstand a Greater Judgment
(*Grinnell* Factor #7) ................................................................. 10

        7.    The Range of Reasonableness of the Settlement Fund in Light
of the Best Possible Recovery and Attendant Risks of Litigation
(*Grinnell* Factors #8, 9) ............................................................ 10

    C.    The Remaining Rule 23(e)(2) Factors Support Preliminary Approval
of the Settlement ..................................................................................... 13

        1.    Rule 23(e)(2)(A) – Plaintiffs and Co-Lead Counsel Have
Adequately Represented the Settlement Class ........................... 13

        2.    Rule 23(e)(2)(C) – the Monetary Relief, Cooperation, and
Remediation Measures Provided by Deutsche Bank Are Adequate,
Taking into Account the Costs and Risks of Further Litigation and
All Other Relevant Factors ........................................................ 14

            a.    Rule 23(e)(2)(C)(ii) – Effectiveness of Any Proposed
Method of Distributing Relief to the Class .................... 14

            b.    Rule 23(e)(2)(C)(iii) – the Terms of Any Proposed Award
of Attorneys' Fees ........................................................ 17

            c.    Rule 23(e)(2)(C)(iv) – Any Agreement Required to Be
Identified Under Rule 23(e)(3) ..................................... 18

i

3.      Rule 23(e)(2)(D) – the Settlement Treats Class Members Equitably Relative to Each Other ........................................................................ 18

II.     CERTIFICATION OF THE SETTLEMENT CLASS IS WARRANTED ...................... 18

A.      The Settlement Class Meets the Requirements of Rule 23(a) ..............................18

1.      Settlement Class Members Are so Numerous that Joinder Is Impracticable........................................................................................... 19

2.      There Are Questions of Law and Fact Common to All Settlement Class Members...................................................................................... 19

3.      Plaintiffs' Claims Are Typical of Those of the Settlement Class............ 20

4.      The Settlement Class Is Fairly and Adequately Represented ................. 20

B.      The Settlement Class Meets the Requirements of Rule 23(b)(3) ........................21

1.      Common Questions of Law and Fact Predominate ................................. 21

2.      A Class Action Is the Superior Method for Resolving This Case ........... 22

C.      The Court Should Appoint Co-Lead Counsel as Counsel for the Settlement Class....................................................................................................23

III.    THE PROPOSED MANNER OF NOTICE IS THE BEST NOTICE PRACTICABLE UNDER THE CIRCUMSTANCES ...................................................... 24

IV.     THE FORMS OF NOTICE ARE REASONABLE ........................................................ 25

CONCLUSION................................................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)..............................................................................................21, 23

*Amgen Inc v. Connecticut Ret. Plans and Trust Funds*,
  568 U.S. 455 (2013)......................................................................................................21

*Beckman v. KeyBank, N.A.*,
  293 F.R.D. 467 (S.D.N.Y. 2013) ..................................................................................7

*Brown v. Kelly*,
  609 F.3d 467 (2d Cir. 2010)........................................................................................20

*Cardiology Assocs., P.C. v. Nat'l Intergroup, Inc.*,
  No. 85 CIV. 3048 (JMW), 1987 WL 7030 (S.D.N.Y. Feb. 13, 1987) ......................9

*Carnegie v. Household Int'l, Inc.*,
  376 F.3d 656 (7th Cir. 2004) ......................................................................................23

*Chhab v. Darden Rests., Inc.*,
  No. 11 Civ. 8345 (NRB), 2016 WL 3004511 (S.D.N.Y. May 20, 2016)................22

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberger v.
  Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) ................................................4, 11

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013).......................................................................................................10

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
  502 F.3d 91 (2d Cir. 2007)..........................................................................................21

*Denney v. Deutsche Bank AG*,
  443 F.3d 253 (2d Cir. 2006)........................................................................................13

*Dial Corp. v. News Corp.*,
  314 F.R.D. 108 (S.D.N.Y. 2015) ................................................................................20

*Garland v. Cohen & Krassner*,
  No. 08-CV-4626 (KAM), 2011 WL 6010211 (E.D.N.Y. Nov. 29, 2011)...............10

*Gonqueh v. Leros Point to Point, Inc.*,
  No. 14-CV-5883 (GHW), 2015 WL 9256932 (S.D.N.Y. Sept. 2, 2015) ................23

*Guippone v. BH S&B Holdings LLC*,
No. 09-CV-1029, 2016 WL 5811888(CM), (S.D.N.Y. Sept. 23, 2016)..................................10

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
689 F.3d 229 (2d Cir. 2012)................................................................................19, 23

*In re Amaranth Nat. Gas Commodities Litig.*,
269 F.R.D. 366 (S.D.N.Y. 2010) ...........................................................................20

*In re AOL Time Warner, Inc.*,
No. 02 CIV. 5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ...............................7, 8

*In re Austrian and German Bank Holocaust Litig.*,
80 F. Supp. 2d 164 (S.D.N.Y. 2000), *aff'd sub nom.*, *D'Amato v. Deutsche
Bank*, 236 F.3d 78 (2d Cir. 2001) ............................................................................4

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
No. 14-cv-2058, 2015 WL 9266493 (N.D. Cal. Dec. 17, 2015)..............................................12

*In re Credit Default Swaps Antitrust Litig.*,
No. 13MD2476 (DLC), 2016 WL 2731524 (S.D.N.Y. April 26, 2016) .........................15, 17

*In re Crude Oil Commodity Futures Litig.*,
No. 11-cv-3600 (S.D.N.Y.)...........................................................................................15

*In re Currency Conversion Fee Antitrust Litig.*,
01-MD-1409, 2006 WL 3247396 (S.D.N.Y. Nov. 8, 2006)................................................5, 11

*In re Currency Conversion Fee Antitrust Litig.*,
224 F.R.D. 555 (S.D.N.Y. 2004) .............................................................................23

*In re Currency Conversion Fee Antitrust Litig.*,
264 F.R.D. 100 (S.D.N.Y. 2010) .............................................................................20

*In re DDAVP Direct Purchaser Antitrust Litig.*,
No. 05-2237, 2011 WL 12627961 (S.D.N.Y. Nov. 28, 2011)..................................................17

*In re Elec. Books Antitrust Litig.*,
No. 11 MD 2293 (DLC), 2014 WL 1282293 (S.D.N.Y. Mar. 28, 2014) ...................20, 21, 23

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
No. 05-CV-10240 (CM), 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ...............................15

*In re Gilat Satellite Networks, Ltd.*,
No. 02-cv-1510, 2007 WL 1191048 (E.D.N.Y. Apr. 19, 2007)..............................................17

*In re Global Crossing Sec. and ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) .........................................................................7, 17

iv

*In re High-Tech Empl. Antitrust Litig.*,
No. 11-CV-2509, 2013 WL 6328811 (N.D. Cal. Oct. 30, 2013) ...........................................9

*In re Initial Pub. Offering Sec. Litig.*,
671 F. Supp. 2d 467 (S.D.N.Y. 2009)....................................................................................17

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
299 F. Supp. 3d 430 (S.D.N.Y. 2018)....................................................................................19

*In re Libor-Based Fin. Instruments Antitrust Litig.*,
No. 11-md-2262 (NRB) ..........................................................................................................15

*In re Linerboard Antitrust Litig.*,
292 F. Supp. 2d 631 (E.D. Pa. 2003) .........................................................................9, 12, 13

*In re Nasdaq Market-Makers Antitrust Litig.*,
187 F.R.D. 465 (S.D.N.Y. 1998) ..................................................................................7, 9, 22

*In re Nasdaq Mkt.-Makers Antitrust Litig.*,
176 F.R.D. 99 (S.D.N.Y. 1997) ...............................................................................................5

*In re Nasdaq Mkt.-Makers Antitrust Litig.*,
No. 94 CIV. 3996 RWS, 2000 WL 37992 (S.D.N.Y. Jan. 18, 2000) .....................................17

*In re Nissan Radiator/Transmission Cooler Litig.*,
10 CV 7493 (VB), 2013 WL 4080946 (S.D.N.Y. May 30, 2013)............................................8

*In re Oxycontin Antitrust Litig.*,
No. 04-md-1603-SHS (S.D.N.Y. Jan. 25, 2011) ...................................................................17

*In re Packaged Ice Antitrust Litig.*,
No. 08-MD-01952, 2011 WL 717519 (E.D. Mich. Feb. 22, 2011)...................................12, 13

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
986 F. Supp. 2d 207 (E.D.N.Y. 2013), *reversed and vacated on other grounds*,
827 F.3d 223 (2d Cir. 2016)..............................................................................................6, 9

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
330 F.R.D. 11 (S.D.N.Y. 2019) ...................................................................... *passim*

*In re Petrobras Sec.*,
862 F.3d 250 (2d Cir. 2017)...........................................................................................21, 23

*In re Playmobil Antitrust Litig.*,
35 F. Supp. 2d 231 (E.D.N.Y. 1998) ....................................................................................20

*In re Pressure Sensitive Labelstock Antitrust Litig.*,
584 F. Supp. 2d 697 (M.D. Pa. 2008)..............................................................................10, 12

*In re: SSA Bonds Antitrust Litig.*,
    No. 1:16-cv-3711(ER) (S.D.N.Y. Mar. 5, 2018) ...................................................11

*In re Sumitomo Copper Litig.*,
    182 F.R.D. 85 (S.D.N.Y. 1998) ..........................................................................20

*In re U.S. Foodservice Inc. Pricing Litig.*,
    729 F.3d 108 (2d Cir. 2013)................................................................................21

*In re Vitamin C Antitrust Litig.*,
    279 F.R.D. 90 (E.D.N.Y. 2012) ..........................................................................22

*In re Vitamin C Antitrust Litig.*,
    No. 06-MD-1738 (BMC), 2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012) .........................6, 10

*In re Vitamins Antitrust Litig.*,
    209 F.R.D. 251 (D.D.C. 2002).............................................................................22

*In re Warfarin Sodium Antitrust Litig.*,
    212 F.R.D. 231 (D. Del. 2002) ............................................................................11

*In re Warner Chilcott Ltd. Sec. Litig.*,
    No. 06 Civ. 11515 (WHP), 2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008)..........................7

*In re Warner Commc'ns Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985) ........................................................................9

*In re WorldCom, Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005)....................................................................15

*Laydon v. Mizuho Bank, Ltd.*,
    No. 12-cv-3419 (S.D.N.Y)..................................................................................15

*Maley v. Del Glob. Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002)......................................................................2

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
    237 F.R.D. 26 (E.D.N.Y. 2006) ............................................................................4

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.*,
    659 F.3d 234 (2d Cir. 2011).................................................................................19

*Sonterra Capital Master Fund Ltd. v. Credit Suisse Group AG*,
    No. 1:15-cv-00871 (S.D.N.Y. Aug. 16, 2017)........................................................11

*Sonterra Capital Master Fund, Ltd. v. UBS AG*,
    No. 15-cv-5844 (S.D.N.Y.)..................................................................................15

*Sullivan v. Barclays plc*,
 No. 13-cv-2811 .....................................................................................................15

*Tyson Foods, Inc. v. Bouaphakeo*,
 136 S. Ct. 1036 (2016) ........................................................................................21

*Virgin Atl. Airways Ltd. v. British Airways PLC*,
 257 F.3d 256 (2d Cir. 2001) ..................................................................................6

*Wal-Mart Stores, Inc. v. Dukes*,
 564 U.S. 338 (2011) .......................................................................................13, 19

*Wal-Mart Stores Inc. v. Visa U.S.A., Inc.*,
 396 F.3d 96 (2d Cir. 2005) .....................................................................6, 9, 24, 25

*Wallace v. IntraLinks*,
 302 F.R.D. 310 (S.D.N.Y. 2014) ..........................................................................19

**Statutes, Rules, and Regulations**

15 U.S.C.
 §1 ............................................................................................................................1

Federal Rules of Civil Procedure
 Rule 23 .........................................................................................................4, 14, 18
 Rule 23(a) ........................................................................................................18, 19
 Rule 23(a)(2) .........................................................................................................19
 Rule 23(a)(3) .........................................................................................................20
 Rule 23(b) ........................................................................................................19, 23
 Rule 23(b)(3) ...................................................................................................21, 24
 Rule 23(c)(1)(B) ....................................................................................................23
 Rule 23(c)(2)(B) ..............................................................................................24, 25
 Rule 23(e) ................................................................................................................3
 Rule 23(e)(1)(B) ....................................................................................................24
 Rule 23(e)(2) ........................................................................................3, 4, 13, 18
 Rule 23(e)(2)(A) ..............................................................................................13, 20
 Rule 23(e)(2)(B) ......................................................................................................4
 Rule 23(e)(2)(C) ....................................................................................................14
 Rule 23(e)(2)(C)(i-iv) ......................................................................................14, 18
 Rule 23(e)(2)(D) ....................................................................................................18
 Rule 23(e)(3) .....................................................................................................3, 18
 Rule 23(f) .................................................................................................................6
 Rule 23(g) ..............................................................................................................23
 Rule 23(g)(1)(A)(i)-(iv) .........................................................................................23

Local Civil Rule
 Rule 23.1 ................................................................................................................18

**Other Authorities**

2 W. Rubenstein, NEWBERG ON CLASS ACTIONS
   §4:49 (5th ed. 2012) ............................................................................................................21

Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their
   Fee Awards* (2010) ............................................................................................................17

Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees and Expenses in Class
   Action Settlements: 1993-2008* .........................................................................................17

## INTRODUCTION

If approved, the Deutsche Bank Settlement[1] will create a Settlement Fund of $15 million (plus interest earned between preliminary approval and distribution) and obligate Deutsche Bank to provide substantial cooperation to Plaintiffs in pursuing their case against the remaining Defendants. The Settlement Fund recovers approximately 13% to 17% of estimated damages attainable from Deutsche Bank, assuming total success on the merits and not discounting for substantial litigation risk. This first-in settlement is an excellent recovery for the Settlement Class, especially when considering the limited scope of damages Plaintiffs may seek from Deutsche Bank under the Antitrust Criminal Penalty Enhancement and Reform Act of 2004 ("ACPERA").[2]

Deutsche Bank's cooperation at this early stage is extremely valuable because as the ACPERA applicant, the bank is motivated to assist Plaintiffs, has cooperation materials readily available, and is uniquely knowledgeable about the claims and defenses at issue in the Action. The value of Deutsche Bank's cooperation is also amplified because it is being provided at an early stage, as Plaintiffs litigate their claims under the pressure of a May 4, 2020 trial date and a partial six-month discovery stay. The Settlement also provides for antitrust compliance-remediation measures, which Plaintiffs believe are critical to preventing and detecting future anticompetitive conduct in the GSE Bond market.

---

[1]     Unless otherwise defined herein, all capitalized terms have the same meaning as set out in the Stipulation and Agreement of Settlement with Deutsche Bank Securities Inc. (the "Stipulation"), attached as Ex. 1 to the Declaration of Christopher M. Burke ("Burke Decl."), filed concurrently herewith.

[2]     Pub. L. No. 108-237, §213(a)-(b), 118 Stat. 661, 666-668 (June 22, 2004), *as amended by* Pub. L. No. 111-190, 124 Stat. 1275 (June 9, 2010), *codified as amended at* 15 U.S.C. §1 note.

Based on their experience and knowledge of the claims and defenses at issue in this Action, Co-Lead Counsel believe that the Settlement is in the best interests of the Settlement Class. *See Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 366 (S.D.N.Y. 2002) (stating that "'great weight' is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation").[3]  Each of the Plaintiffs also wholly supports the Settlement.

## PROCEDURAL BACKGROUND

On February 22, 2019, following an eight-month investigation triggered by a June 1, 2018 *Bloomberg* report that DOJ was investigating a group of banks for fixing the prices in the GSE Bond market, Plaintiffs filed their initial complaint.  The Court appointed Scott+Scott and Lowey Dannenberg as Co-Lead Counsel on May 2, 2019.  ECF No. 159.

Shortly thereafter, Deutsche Bank's Counsel contacted Co-Lead Counsel to communicate the bank's interest in providing Plaintiffs with cooperation pursuant to ACPERA.  On May 9, 2019, the Parties executed an Agreement Concerning Confidentiality and Cooperation Processes pursuant to which Deutsche Bank shared certain cooperation materials with Plaintiffs.  On May 16, 2019, Plaintiffs and Deutsche Bank executed a Tolling and Standstill Agreement pursuant to which Deutsche Bank agreed to provide certain additional cooperation in exchange for not being named in the First Amended Complaint.

On May 23, 2019, Plaintiffs filed the First Amended Complaint, which incorporated certain of the cooperation materials provided by Deutsche Bank but did not name Deutsche Bank as a defendant.  ECF No. 171.  On June 18, 2019, the Court entered a partial six-month discovery stay.  ECF No. 224.  On July 12, 2019, Plaintiffs filed the Second Amended Complaint naming

---

[3]     Unless otherwise noted, citations are omitted and emphasis is added.

Deutsche Bank as a defendant.  On July 22, 2019, the Court entered an order staying Deutsche Bank's discovery deadlines for thirty (30) days while the Parties negotiated a settlement.  ECF No. 246.  On August 21, 2019, the Parties executed the Stipulation.  On September 3, 2019, the Court granted in part and denied in part the motion to dismiss and granted Plaintiffs leave to amend as to the dismissed defendants.  ECF No. 253.  Plaintiffs filed the Third Consolidated Amended Class Action Complaint on September 10, 2019.  Trial is set to begin on May 4, 2020.

## ARGUMENT

### I.  THE COURT IS LIKELY TO GRANT FINAL APPROVAL TO THE PROPOSED SETTLEMENT

Rule 23(e) requires court approval of a proposed class action settlement upon finding that the proposal "is fair, reasonable, and adequate."  FED. R. CIV. P. 23(e)(2).  The preliminary approval process is governed by a "likelihood standard" – requiring the Court to assess whether the parties have shown that "the court will *likely* be able to grant final approval and certify the class."  *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 28 n.21 (S.D.N.Y. 2019) (emphasis in original).  Under the December 1, 2018 amendments to Rule 23(e), in weighing preliminary approval, the Court must consider whether:

(A)  the class representatives and class counsel have adequately represented the class;

(B)  the proposal was negotiated at arm's length;

(C)  the relief provided for the class is adequate, taking into account:

   (i)  the costs, risks, and delay of trial and appeal;

   (ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required;

   (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

   (iv) any agreement required to be identified under Rule 23(e)(3); and

(D)  the proposal treats class members equitably relative to each other.

FED. R. CIV. P. 23(e)(2).  The Advisory Committee Notes to the 2018 Amendments indicate that the amendments were meant to codify the existing preliminary approval process that is customary in class action settlements in each circuit.  *Id.*  Therefore, "the new Rule 23 factors add to, rather than displace, the *Grinnell* factors" traditionally considered in the Second Circuit to evaluate the substantive fairness of a settlement during the preliminary approval process. *Payment Card*, 330 F.R.D. at 29.

*Grinnell* requires the Court to weigh the following factors to determine whether a proposed settlement is fair, reasonable, and adequate:

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).  In undertaking this review, "a full fairness analysis is unnecessary at this stage; preliminary approval is appropriate where a proposed settlement is merely within the range of possible approval."  *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 34 (E.D.N.Y. 2006).

### A.  The Settlement Is Procedurally Fair Because It Was Achieved Through Extensive Arm's-Length Negotiation with the Assistance of a Respected and Experienced Mediator (Rule 23(e)(2)(B))

To determine whether a settlement is procedurally fair, courts evaluate the process undertaken to achieve it.  The Deutsche Bank Settlement is entitled to a presumption of fairness because it was reached by capable counsel with the assistance of an experienced mediator, the Honorable Jan M. Adler (ret.).  *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d

164, 173-74 (S.D.N.Y. 2000), *aff'd sub nom.*, *D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) (stating that where a settlement is the "product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation," the settlement enjoys a "presumption of fairness").

On July 1 and 2, 2019, the Parties engaged in mediation before Judge Adler who confirms that the negotiation process was *bona fide*, at times extremely contentious, and advocated by sophisticated and capable counsel on both sides.  Burke Decl., Ex. 2, ¶¶3, 6.  After two full days of mediation, the Parties remained far apart, and the mediation was suspended.  *Id.*, ¶4.  Following the mediation, the Parties remained in contact with each other and the mediator and continued to explore the possibility of resolving this Action.  *Id.*, ¶5.  On July 9, 2019, the Parties reached an agreement in principle to settle this Action for $15 million, subject to agreement on other material terms.  *Id.*

### B.  The Settlement Is Substantively Fair

At preliminary approval, the Court "must make 'a preliminary evaluation' as to whether the settlement is fair, reasonable and adequate." *In re Currency Conversion Fee Antitrust Litig.*, 01-MD-1409, 2006 WL 3247396, at \*5 (S.D.N.Y. Nov. 8, 2006).  Where, as here, the Settlement is achieved through a fair process and the Settlement's terms are within the "range of possible approval," preliminary approval is warranted.  *See In re Nasdaq Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997).

### 1.    The Complexity, Expense, and Likely Duration of the Litigation (*Grinnell* Factor #1)

This Action involves complex issues of law and fact.  Defendants' motion to dismiss (ECF No. 221), which Deutsche Bank joined (ECF No. 247), illustrates the complexity of the Action.  Defendants argued that Plaintiffs failed to allege a plausible overarching conspiracy to

fix prices of GSE Bond Transactions in the secondary market because:  (i) chat room transcripts quoted in the First Amended Complaint allegedly do not involve all Defendants; (ii) the chats occurred during the syndication phase, and therefore, Defendants allegedly had safe harbor to communicate with one another about prices; (iii) no viable "plus factors" support the conspiracy Plaintiffs alleged; and (iv) the economic analysis is unreliable.  Further, Defendants contended that the rule of reason applies to Plaintiffs' allegations.  ECF No. 221 at 41-46.  Complex issues of law and fact are also likely to be raised at the class certification stage, and the losing party will likely seek interlocutory review pursuant to Rule 23(f), which will cause delay in resolving the litigation.  *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207, 212 n.13 (E.D.N.Y. 2013), *reversed and vacated on other grounds*, 827 F.3d 223 (2d Cir. 2016) (noting that "[i]n the *Wal-Mart* case, twenty months elapsed between the order certifying the class and the Second Circuit's divided opinion affirming that decision.").  Finally, the trial of this action after completion of discovery is likely to be lengthy, and "[t]he losing parties would likely appeal any adverse jury verdicts, thereby extending the duration of litigation."  *Payment Card*, 986 F. Supp. 2d at 212.

As a result, numerous courts have recognized that "'[f]ederal antitrust cases are complicated, lengthy . . . bitterly fought,' as well as costly."  *In re Vitamin C Antitrust Litig.*, No. 06-MD-1738 (BMC), 2012 WL 5289514, at *4 (E.D.N.Y. Oct. 23, 2012); *see also Virgin Atl. Airways Ltd. v. British Airways PLC*, 257 F.3d 256, 263 (2d Cir. 2001) (noting the "factual complexities of antitrust cases"); *Wal-Mart Stores Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 118 (2d Cir. 2005) (stating that "[f]ederal antitrust cases are complicated, lengthy, and bitterly fought.").  This case is no different.  In sum, "[t]here can be no doubt that this class action would be

enormously expensive to continue, extraordinarily complex to try, and ultimately uncertain of result." *In re Nasdaq Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 477 (S.D.N.Y. 1998).

### 2.    The Reaction of the Settlement Class (*Grinnell* Factor #2)

This *Grinnell* factor is generally inapplicable prior to disseminating notice.  *See Payment Card*, 330 F.R.D. at 29 (declining to address "the reaction of the class to the settlement"); *see also In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 Civ. 11515 (WHP), 2008 WL 5110904, at *2 (S.D.N.Y. Nov. 20, 2008) ("Since no notice has been sent, consideration of this factor is premature.").  At this time, the reaction of the Settlement Class comes from the Plaintiffs who either attended the mediation in person or were available and updated by phone or other means. Plaintiffs each believe the Settlement is in the best interests of the Settlement Class.

### 3.    The Stage of the Proceedings and the Amount of Discovery Completed (*Grinnell* Factor #3)

In assessing the fairness of a settlement at preliminary approval, the Court inquires as to "whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement." *In re AOL Time Warner, Inc.*, No. 02 CIV. 5575 (SWK), 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006); *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004) ("[T]he question is whether the parties had adequate information about their claims.").  Further, "[c]ourts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 474-75 (S.D.N.Y. 2013).

Co-Lead Counsel's knowledge of the merits and potential weaknesses of Plaintiffs' claims supports preliminary approval of the Settlement.  Co-Lead Counsel undertook an eight-month investigation, which included engaging two sets of experts who analyzed three datasets,

interviewing former GSE Bond traders, and reviewing publicly available information.  Further, before the July 1 and 2, 2019 mediation sessions, Co-Lead Counsel participated in two initial proffer sessions, as well as numerous follow-up proffers, with Deutsche Bank's Counsel during which the bank proffered key factual allegations that Plaintiffs incorporated in the First Amended Complaint.  This included illustrative examples of conspiratorial communications in Bloomberg chat messages; information about the scope, duration, participants in, and effect of the conspiracy; and seven years' worth of Deutsche Bank's trading data for GSE Bonds.  *See*, *e.g.*, *In re Nissan Radiator/Transmission Cooler Litig.*, 10 CV 7493 (VB), 2013 WL 4080946, at *7 (S.D.N.Y. May 30, 2013) (stating "[a]lthough the parties have not engaged in extensive discovery, . . . the plaintiffs conducted an investigation prior to commencing the action, retained experts, and engaged in confirmatory discovery in support of the proposed settlement").

Also, in advance of the mediation, the Parties exchanged mediation statements in which they discussed, among other things, the litigation risks Plaintiffs face in pursuing their claims against Deutsche Bank and Defendants, as well as potential damages.  By the time the mediation occurred, Plaintiffs had also filed their opposition to Defendants' motion to dismiss in which Plaintiffs responded to Defendants' arguments, including each of the defenses highlighted in Section I.B.1, *supra*.  It is fair to say that Defendants did not hold back on the defenses asserted in their motion and that Plaintiffs vigorously opposed them.

Co-Lead Counsel '"have engaged in sufficient investigation of the facts to enable the Court to "intelligently make . . . an appraisal" of the Settlement.'"  *AOL Time Warner*, 2006 WL 903236, at *10.  Indeed, if extensive discovery was required for settlement approval, class action plaintiffs would be deprived of the "ice breaker" settlement strategy, which is often used in multi-party cases, as it was here, to "'break the ice' and bring other defendants to the point of

serious negotiations." *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003); *see also In re High-Tech Empl. Antitrust Litig.*, No. 11-CV-2509, 2013 WL 6328811, at *1 (N.D. Cal. Oct. 30, 2013).  Accordingly, this factor weighs in favor of preliminary approval.

**4.    The Risks of Establishing Liability and Damages (*Grinnell* Factors #4, 5)**

To assess this factor, "the Court should balance the benefits afforded the Class, including the ***immediacy*** and ***certainty*** of a recovery, against the continuing risks of litigation.'" *Payment Card*, 986 F. Supp. 2d at 224.  Regarding liability, Plaintiffs expect Defendants to continue to vigorously contest all elements of Plaintiffs' claims during each stage of the case.  If liability is established, Plaintiffs will still face the difficulties inherent in proving damages.  Plaintiffs' theory of damages will be hotly contested, and there is no doubt that at trial the issue will involve a "battle of the experts." *Nasdaq*, 187 F.R.D. at 476. "In this 'battle of experts,' it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors . . . ." *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985).  Thus, there is a substantial risk that a jury might accept one or more of Defendants' damages arguments, or award far less than the Settlement Amount, or nothing at all.  Indeed, "'the history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible damages, at trial, or on appeal.'" *Wal-Mart Stores*, 396 F.3d at 118.

In short, "[t]here is a substantial risk that the plaintiff might not be able to establish liability at all and, even assuming a favorable jury verdict, if the matter is fully litigated and appealed, any recovery would be years away." *Cardiology Assocs., P.C. v. Nat'l Intergroup, Inc.*, No. 85 CIV. 3048 (JMW), 1987 WL 7030, at *3 (S.D.N.Y. Feb. 13, 1987).

**5.   The Risks of Maintaining a Class Through Trial (*Grinnell* Factor #6)**

Although the "risk of maintaining a class through trial is present in [every] class action," *Guippone v. BH S&B Holdings LLC*, No. 09-CV-1029, 2016 WL 5811888(CM), at *7 (S.D.N.Y. Sept. 23, 2016), "this factor [nevertheless] weighs in favor of . . . settlement" where "it is likely that defendants would oppose class certification" if the case were to be litigated, *Garland v. Cohen & Krassner*, No. 08-CV-4626 (KAM), 2011 WL 6010211, at *8 (E.D.N.Y. Nov. 29, 2011).  Plaintiffs believe they will ultimately persuade the Court to certify a litigation class, but Defendants will advance substantial arguments in opposition.  Thus, there is a risk that this litigation might not be maintained as a class through trial.  *See, e.g.*, *Comcast Corp. v. Behrend*, 569 U.S. 27, 29 (2013) (reversing class certification in an antitrust case).

**6.   Deutsche Bank's Ability to Withstand a Greater Judgment (*Grinnell* Factor #7)**

"'[I]n any class action against a large corporation, the defendant entity is likely to be able to withstand a more substantial judgment, and, against the weight of the remaining factors, this fact alone does not undermine the reasonableness of the instant settlement.'"  *Vitamin C*, 2012 WL 5289514, at *6.   However, "the benefit of obtaining the cooperation of the Settling Defendants tends to offset the fact that they would be able to withstand a larger judgment."  *In re Pressure Sensitive Labelstock Antitrust Litig.*, 584 F. Supp. 2d 697, 702 (M.D. Pa. 2008).  Here, Deutsche Bank's ability to withstand a greater judgment is offset by the value of the cooperation it has agreed to in the Stipulation.  Burke Decl., Ex. 1, ¶¶17-18.

**7.   The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and Attendant Risks of Litigation (*Grinnell* Factors #8, 9)**

In recommending that the Court preliminarily approve the Settlement, Plaintiffs have taken into account estimated damages, Deutsche Bank's ACPERA status, the benefits and risks

of continuing litigation against Deutsche Bank in light of the cooperation the bank has agreed to provide, and the range of possible outcomes in the absence of a settlement.

Using the seven years of data that Deutsche Bank provided as pre-settlement cooperation, Plaintiffs developed a preliminary damages model that estimated a range of single damages between $90 million to $113 million for Deutsche Bank only.[4]  The $15 million Settlement Amount therefore represents 13% to 17% of estimated damages.  Plaintiffs respectfully submit that the recovery is within the range of reasonableness.[5]

Further, ACPERA provides that a civil defendant that has received leniency from DOJ in a criminal matter may, in a related civil antitrust action, limit its liability to "actual damages . . . which [are] attributable to the commerce done by the [defendant] in the goods or services affected by the violation" but only if the defendant "has provided satisfactory cooperation to" the civil plaintiffs.   ACPERA §213(a)-(b).   Accordingly, assuming satisfactory cooperation, damages from Deutsche Bank would be limited to single damages arising from only Deutsche Bank's commerce, without joint and several liability.   While this is a significant liability limitation with respect to a recovery against Deutsche Bank, the Settlement does not alter the

---

[4]      "'[T]he standard for evaluating settlement involves a comparison of the settlement amount with the estimated single damages,' not treble damages."  *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 257-58 (D. Del. 2002).

[5]      *See, e.g.*, *In re: SSA Bonds Antitrust Litig.*, No. 1:16-cv-3711(ER), ECF No. 431, at 2 (S.D.N.Y. Mar. 5, 2018) (preliminarily approving first-in settlement with Bank of America for $17,000,000 and cooperation); *Sonterra Capital Master Fund Ltd. v. Credit Suisse Group AG*, No. 1:15-cv-00871, ECF No. 159 (S.D.N.Y. Aug. 16, 2017) (preliminarily approving first-in settlement with JPMorgan for $22,000,000 and cooperation); *In re Currency Conversion Fee Antitrust Litig.*, No. 01 MDL 1409, 2006 WL 3247396, at *6 (S.D.N.Y. Nov. 8, 2006) (preliminarily approving settlements "representing roughly 10-15% of the credit transaction fees collected by Defendants"); *Payment Card*, 330 F.R.D. at 49 (stating that the Second Circuit did not take issue with original settlement recovery of "2.5% of the largest possible estimate of actual damage to merchants"); *Grinnell Corp.*, 495 F.2d at 455 n.2 (stating that "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery").

maximum recoverable damages if Plaintiffs prevail at trial against the other Defendants.  Burke

Decl., Ex. 1, ¶10; *see also In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 14-cv-2058, 2015

WL 9266493, at *6 (N.D. Cal. Dec. 17, 2015) (noting the right to seek entire damages from non-

settling defendants "provides increased value . . . by creating added incentive for the remaining

defendants to settle or allowing greater recovery for the Plaintiffs at trial").

   The Settlement provides a significant and immediate cash payment to the Settlement

Class, and delivers Deutsche Bank's cooperation to Plaintiffs in pursuing their claims against the

other Defendants.  *See In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2011 WL 717519,

at *10 (E.D. Mich. Feb. 22, 2011) (recognizing value of early cooperation); *Pressure Sensitive*

*Labelstock*, 584 F. Supp. 2d at 702 (same); *Linerboard*, 292 F. Supp. 2d at 643 (same).  Deutsche

Bank's cooperation obligations include attorney proffers, witness interviews, production of data

and documents, deposition and trial testimony, evidentiary declarations, and further cooperation

that the Parties agree to.  Burke Decl., Ex. 1, ¶¶17-18.  Deutsche Bank is obligated to provide

this cooperation until judgment is final against all Defendants.

   Deutsche Bank's cooperation has already been of great value to Plaintiffs in drafting the

First and Second Amended Complaints, which relied extensively on Bloomberg chats and other

materials Deutsche Bank provided.  Deutsche Bank's cooperation assisted Plaintiffs in naming

additional Defendants and providing additional and specific factual allegations regarding the

conspiratorial conduct and impacted GSE Bonds.  Given this Action's condensed pre-trial

schedule, the hurdle occasioned by the partial six-month DOJ discovery stay, and the May 4,

2020 trial date, Deutsche Bank's cooperation will be an extraordinarily valuable resource to

Plaintiffs in pursuing their claims.

Deutsche Bank has also agreed to antitrust-compliance remediation measures for a period of two years.  Burke Decl., Ex. 1, ¶21.  These measures include Deutsche Bank's agreement to maintain an antitrust-compliance policy meeting criteria in the Stipulation, meet periodically with Pennsylvania Treasury to discuss its policies, and provide cooperation relating to antitrust-compliance best practices in the GSE Bond market.  *Id*.  Plaintiffs believe these measures are critical to preventing and detecting future anticompetitive conduct in the GSE Bond market.

Finally, this Settlement has added value as an "ice-breaker" settlement in a multi-party antitrust case.  *Packaged Ice*, 2011 WL 717519, at *10.  Such settlements add value because they can "'break the ice' and bring other defendants to the point of serious negotiations." *Linerboard*, 292 F. Supp. 2d at 643.  Plaintiffs respectfully submit that the Settlement confers substantial benefits while eliminating risks attendant to continued litigation against Deutsche Bank, which is a well-financed and well-represented party with unique liability limits.

### C.  The Remaining Rule 23(e)(2) Factors Support Preliminary Approval of the Settlement

#### 1.  Rule 23(e)(2)(A) – Plaintiffs and Co-Lead Counsel Have Adequately Represented the Settlement Class

Plaintiffs each share the same interest as the Settlement Class in prosecuting this Action to ensure the greatest recovery from Deutsche Bank and Defendants.  Plaintiffs are part of the Settlement Class and suffered the same injuries as other Settlement Class Members – monetary losses when they were overcharged or underpaid in their transactions with Defendants in GSE Bond Transactions.  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348-49 (2011) ("'class representative must be part of the class and "possess the same interest and suffer the same injury" as the class members'").  Plaintiffs have played an active role in this case's development, prosecution, and settlement.  *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 n.25 (2d Cir. 2006) (stating that a class representative "must have an interest in vigorously pursuing the claims

13

of the class, and must have no interests antagonistic to the interests of other class members"). Thus, the Plaintiffs are adequate representatives of the Settlement Class and should be appointed as class representatives for Settlement purposes.  Further, Co-Lead Counsel have demonstrated they are qualified, experienced, and able to conduct the litigation.  *See* Section II.C., *infra*.

> **2.    Rule 23(e)(2)(C) – the Monetary Relief, Cooperation, and Remediation Measures Provided by Deutsche Bank Are Adequate, Taking into Account the Costs and Risks of Further Litigation and All Other Relevant Factors**

To assess whether this relief is adequate, Rule 23(e)(2)(C) requires the Court to consider:

> (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

FED. R. CIV. P. 23(e)(2)(C)(i-iv).  Plaintiffs previously discussed Rule 23(e)(2)(C)(i) in Sections I.B.1, I.B.4, and I.B.5,[6] *supra*.  The remaining Rule 23(e)(2)(C) factors support preliminarily approving the Settlement.

> **a.    Rule 23(e)(2)(C)(ii) – Effectiveness of Any Proposed Method of Distributing Relief to the Class**

This factor requires the Court to look at "the method of processing class-member claims." FED. R. CIV. P. 23(e)(2)(C)(ii). "A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." FED. R. CIV. P. 23 advisory committee's note to 2018 amendment.  "'To warrant approval, the plan of

---

[6]    *Grinnell* factors 1, 4, 5, and 6 are subsumed by the new Rule 23(e)(2)(C)(i), which analyzes the costs, risks, and delay of trial and appeal. *Payment Card*, 330 F.R.D. at 36 (noting that this assessment implicates several *Grinnell* factors, including: (i) the complexity, expense and likely duration of the litigation; (ii) the risks of establishing liability; (iii) the risks of establishing damages; and (iv) the risks of maintaining the class through the trial, and considering each *Grinnell* factor in its analysis).

allocation must also meet the standards by which the settlement was scrutinized – namely, it must be fair and adequate' . . . . 'An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel.'" *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005). "[N]umerous courts have held . . . [that] a plan of allocation need not be perfect." *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05-CV-10240 (CM), 2007 WL 2230177, at *11 (S.D.N.Y. July 27, 2007) (collecting cases).

Co-Lead Counsel, having consulted with Plaintiffs' industry and economic consultants, as well as the Claims Administrator,[7] respectfully submit that the proposed Plan of Distribution is a fair, reasonable, and adequate method of equitably allocating the Net Settlement Fund to Claimants based on the estimated price impact of Defendants' alleged conduct, and giving due consideration to the objectives of preserving the Fund through administrative efficiency and incentivizing claims by Settlement Class Members. *See In re Credit Default Swaps Antitrust Litig.* ("*CDS*"), No. 13MD2476 (DLC), 2016 WL 2731524, at *9 (S.D.N.Y. April 26, 2016).

The key feature that the Plan of Distribution uses to allocate the Fund is the tenor of the GSE Transaction. This is because bonds that have longer maturities have a greater change in value per basis point move in yield, as the following example illustrates. For a bond with a 1.50% interest rate that matures in six months, a one basis point move in yield changes the value

---

[7]     Plaintiffs propose that the Court authorize A.B. Data, Ltd. ("A.B. Data") to be the Claims Administrator. Plaintiffs selected A.B. Data following a multi-party RFP process. A.B. Data was the lowest cost provider and has experience in administering class action settlements involving non-standard securities in over-the-counter and exchange markets (*e.g.*, *Laydon v. Mizuho Bank, Ltd.*, No. 12-cv-3419 (S.D.N.Y) and *Sonterra Capital Master Fund, Ltd. v. UBS AG*, No. 15-cv-5844 (S.D.N.Y.) (Euroyen-based derivatives); *Sullivan v. Barclays plc*, No. 13-cv-2811 (S.D.N.Y.) (Euribor products); *In re Libor-Based Fin. Instruments Antitrust Litig.*, No. 11-md-2262 (NRB) (exchange-based products); *In re Crude Oil Commodity Futures Litig.*, No. 11-cv-3600 (S.D.N.Y.) (exchange-traded products)).

by $45 per $1,000,000 traded.  The same one basis point yield change in a 3.50% bond that has a maturity of 30 years changes the value by approximately $1,850 per $1,000,000 traded.

For purposes of distributing the Settlement Fund, the Plan of Distribution categorizes GSE Bond Transactions into 31 categories based on the remaining years until maturity when purchased or sold.  For each maturity category, a "Risk Number," which is a widely accepted measure of the sensitivity of a bond's price to changes in yield, and a Multiplier based on the Risk Number has been preliminarily assigned.  *See* Preliminary Multiplier Table, attached hereto as Appendix A.  To illustrate, the first category includes bonds that have less than one year until maturity, and they have a Risk Number of approximately 0.5 and a Multiplier of 1.  The last category includes bonds that have over 30 years until maturity, and they have a Risk Number of approximately 18.5 and a Multiplier of 37.  The longer-dated bond in this example has 37 times more risk (0.5*37=18.5) than the short-dated bond – hence, the assignment of Multipliers 37 and 1.  Callable bonds will be assigned a Multiplier of 5.  Based on a detailed sampling of callable issuances during the Settlement Class Period, the average weighted maturity profile was consistent with a comparable 2- to 3-year non-callable bond.

The Preliminary Multiplier Table in Appendix A is provided for illustration purposes.  A Multiplier Table will be posted to the Settlement Website at least 30 days prior to the objection and opt-out deadlines.  Changes, if any, to the Multiplier Table based on newly available data or information will be posted promptly to the Settlement Website, and Settlement Class Members will be encouraged to check the website for updates.

The Claims Administrator will multiply each Authorized Claimant's notional volume for each category by the relevant Multiplier.  Payments will be calculated based on each Authorized Claimant's fraction of the total.   In consultation with Co-Lead Counsel, the Claims

16

Administrator will implement a reasonable minimum payment threshold to ensure that administrative costs of issuing small payments do not deplete the Fund.[8]

The procedures for processing claims and distributing the Net Settlement Fund on a *pro rata* basis are well-established, effective methods that have been widely used in antitrust class actions and other cases involving financial instruments. *See, e.g.*, *CDS*, 2016 WL 2731524, at *4 (approving plan that estimated price inflation caused by the defendants' conduct and calculated "each claimant's recovery based on its *pro rata* share of the available Settlement Funds in relation to the recoveries to which all claimants who have submitted a valid claim are entitled").

### b.     Rule 23(e)(2)(C)(iii) – the Terms of Any Proposed Award of Attorneys' Fees

Co-Lead Counsel will apply for an award of attorneys' fees not to exceed 26% of the Settlement Fund plus payment of Litigation Expenses, as well as interest on the attorneys' fees and Litigation Expenses. An attorneys' fee award of 26% is reasonable in comparison to other common fund settlements of similar size and complexity.[9] Pursuant to this Court's prior practice

---

[8]     *See, e.g.*, *In re Gilat Satellite Networks, Ltd.*, No. 02-cv-1510, 2007 WL 1191048, at *9-*10 (E.D.N.Y. Apr. 19, 2007) (approving a *de minimis* threshold in order to "save the settlement fund from being depleted by the administrative costs associated with claims unlikely to exceed those costs"); *In re Glob. Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 463 (S.D.N.Y. 2004) (same); *In re Nasdaq Mkt.-Makers Antitrust Litig.*, No. 94 CIV. 3996 RWS, 2000 WL 37992, at *2 (S.D.N.Y. Jan. 18, 2000) (approving $25 minimum payment); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 497-98 (S.D.N.Y. 2009) (approving $10 minimum payment).

[9]     *See, e.g.*, *In re DDAVP Direct Purchaser Antitrust Litig.*, No. 05-2237, 2011 WL 12627961 (S.D.N.Y. Nov. 28, 2011) (awarding 33 1/3% attorneys' fees from $20.25 million fund); *In re Oxycontin Antitrust Litig.*, No. 04-md-1603-SHS, ECF No. 60 (S.D.N.Y. Jan. 25, 2011) (awarding 33 1/3% attorneys' fees from $16 million fund); *see also* Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees and Expenses in Class Action Settlements: 1993-2008*, 7 J. EMPIRICAL LEGAL STUD. 248, tbl. 7 (2010) (finding mean fee of 22.7% and median fee of 23.5% (with a standard deviation of 7.5%) for recoveries between $14.3 million and $22.8 million); Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. EMPIRICAL LEGAL STUD. 811, tbl. 10 (2010) (finding mean fee of 24.8% and median fee of 25% (with a standard deviation of 6.4%) for recoveries between $10 million and $15.2 million).

and subject to the Court's approval, the Stipulation provides that the Court will authorize payment to Co-Lead Counsel of 50% of the attorneys' fees awarded upon entry of an order approving attorneys' fees and reimbursement of expenses, with payment of the balance of the award to be made to Co-Lead Counsel when distribution of the proceeds of the Net Settlement Fund to claimants has been very substantially completed.  Burke Decl., Ex. 1, ¶29.[10]

> **c.      Rule 23(e)(2)(C)(iv) – Any Agreement Required to Be Identified Under Rule 23(e)(3)**

There are no agreements to be identified pursuant to Rule 23(e)(3).

> **3.      Rule 23(e)(2)(D) – the Settlement Treats Class Members Equitably Relative to Each Other**

This Rule 23(e)(2) factor "could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." FED. R. CIV. P. 23 advisory committee's note to 2018 amendment.   Under the Plan of Distribution, Authorized Claimants will receive a *pro rata* share of the recovery based on the estimated price impact of Defendants' conduct on their GSE Bond Transactions.  Further, the Releases also treat all Settlement Class Members equitably relative to one another.  Subject to Court approval, all Settlement Class Members will be giving Deutsche Bank an identical release running to the identical factual predicate of the Action.  Burke Decl., Ex. 1, ¶¶3-10.

## II.     CERTIFICATION OF THE SETTLEMENT CLASS IS WARRANTED

### A.  The Settlement Class Meets the Requirements of Rule 23(a)

A court may certify a class for settlement purposes where the proposed settlement class meets the requirements for Rule 23(a) class certification, as well as one of the three subsections

---

[10]     There are no fee-sharing agreements to disclose pursuant to Local Civil Rule 23.1.

of Rule 23(b).  *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 242 (2d Cir. 2012).  Rule

23(a) provides that a class may be certified if the plaintiff demonstrates numerosity,

commonality, typicality, and adequacy of the class plaintiffs.  Fed. R. Civ. P. 23(a).  The

Settlement Class meets the requirements of Rule 23(a) for settlement purposes.

### 1.    Settlement Class Members Are so Numerous that Joinder Is Impracticable

In cases involving widely traded instruments such as this one, numerosity is readily

satisfied.  *See Wallace v. IntraLinks*, 302 F.R.D. 310, 315 (S.D.N.Y. 2014); *Shahriar v. Smith &*

*Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 252 (2d Cir. 2011) (stating that courts presume

numerosity for classes of 40 or more members).

### 2.    There Are Questions of Law and Fact Common to All Settlement Class Members

Rule 23(a)(2) requires that there be "questions of law or fact common to the class."  Fed.

R. Civ. P. 23(a)(2).  This threshold is satisfied if the question is "capable of classwide resolution

– which means that determination of its truth or falsity will resolve an issue that is central to the

validity of each one of the claims in one stroke."  *Wal-Mart Stores*, 564 U.S. at 350.  When

assessing commonality, even "'a single [common] question will do.'"  *Id*. at 359.  Commonality

is regularly found in antitrust cases because questions of the existence, nature, and scope of an

antitrust conspiracy are common.  *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F.

Supp. 3d 430, 590 (S.D.N.Y. 2018) (stating that "the existence of a conspiracy is a common

question").  In addition to common questions about the conspiracy element, numerous other

common questions are presented, including whether Plaintiffs and the other Settlement Class

Members suffered an injury in fact and the appropriate measure of class-wide damages.

### 3.  Plaintiffs' Claims Are Typical of Those of the Settlement Class

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). This standard is satisfied when "'each [class] member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *In re Elec. Books Antitrust Litig.*, No. 11 MD 2293 (DLC), 2014 WL 1282293, at *12 (S.D.N.Y. Mar. 28, 2014) (citing *Brown v. Kelly*, 609 F.3d 467, 475 (2d Cir. 2010)). "Factual differences in the amount of damages, date, size or manner of purchase, the type of purchaser . . . and other such concerns will not defeat class certification when plaintiffs allege that the same unlawful course of conduct affected all members of the proposed class." *In re Sumitomo Copper Litig.*, 182 F.R.D. 85, 92 (S.D.N.Y. 1998). The standard is "not highly demanding," *Dial Corp. v. News Corp.*, 314 F.R.D. 108, 113 (S.D.N.Y. 2015), and is readily satisfied in price-fixing conspiracies which aim to prove "a conspiracy, its effectuation, and damages therefrom." *In re Currency Conversion Fee Antitrust Litig.*, 264 F.R.D. 100, 111 (S.D.N.Y. 2010) (collecting cases).

Plaintiffs' claims are typical of the Settlement Class's claims because Plaintiffs allege the same unlawful course of conduct harmed all Settlement Class Members. *See In re Amaranth Nat. Gas Commodities Litig.*, 269 F.R.D. 366, 376 (S.D.N.Y. 2010) (stating that "the typicality requirement may be satisfied where 'injuries derive from a unitary course of conduct by a single system'"). Any differences that may exist as to the amount of injury suffered by each Settlement Class Member does not preclude a finding of typicality. *In re Playmobil Antitrust Litig.*, 35 F. Supp. 2d 231, 242 (E.D.N.Y. 1998).

### 4.  The Settlement Class Is Fairly and Adequately Represented

As discussed previously at Section I.C.1, *supra*, in the Rule 23(e)(2)(A) analysis, Plaintiffs and Co-Lead Counsel have fairly and adequately represented the Settlement Class.

**B.  The Settlement Class Meets the Requirements of Rule 23(b)(3)**

Rule 23(b)(3) permits a case to be litigated as a class action if (1) "questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  FED. R. CIV. P. 23(b)(3).

**1.      Common Questions of Law and Fact Predominate**

"The predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'"  *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting 2 W. Rubenstein, NEWBERG ON CLASS ACTIONS §4:49, at 195-96 (5th ed. 2012)).  Predominance is satisfied "'if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'"  *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 118 (2d Cir. 2013).  A plaintiff does not have "'to prove that each element of her claim is susceptible to classwide proof,'" but rather, a plaintiff need only show "'that common questions ***predominate*** over any questions affecting only individual [class] members.'"  *In re Petrobras Sec.*, 862 F.3d 250, 268 (2d Cir. 2017) (quoting *Amgen Inc v. Connecticut Ret. Plans and Trust Funds*, 568 U.S. 455, 469 (2013)) (emphasis in original).

Predominance is "'a test readily met in certain cases alleging . . . violations of the antitrust laws.'"  *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 105 (2d Cir. 2007) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)); *Elec. Books*, 2014 WL 1282293, at *14 ("'where plaintiffs were allegedly aggrieved by a single policy of the

defendant[], and there is a strong commonality of the violation and the harm, this is precisely the type of situation for which the class action device is suited'") (quoting *Brown*, 609 F.3d at 484).

Here, each element of the Plaintiffs' antitrust claims – collusion, causation and impact, and damages – would be proven through common evidence. *See In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90, 109 (E.D.N.Y. 2012) (stating that in price-fixing conspiracy cases, "courts have frequently held that the predominance requirement is satisfied because the existence and effect of the conspiracy are the prime issues in the case and are common across the class") (citing cases).

The existence and scope of Defendants' conspiracy to fix prices for GSE Bond Transactions can be established by common evidence, such as chat room communications and the deposition testimony of Defendants' traders. *NASDAQ Market-Makers*, 169 F.R.D. at 518 ("Courts repeatedly have held that the existence of a conspiracy is the predominant issue in price fixing cases, warranting certification of the class even where significant individual issues are present.").  None of this proof will vary across Settlement Class Members.  Rather, proof of the conspiracy "will focus on the actions of the defendants, and, as such, proof for these issues will not vary among class members." *In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 264 (D.D.C. 2002).  Further, class-wide impact, causation, and damages can also be demonstrated using common evidence, including through expert testimony and modeling that relies on Defendants' transaction data, which is common to all members of the Settlement Class and requires no individualized inquiries.

### 2.    A Class Action Is the Superior Method for Resolving This Case

A case satisfies the superiority test if "'the class device will achieve economies of scale, conserve judicial resources, preserve public confidence in the integrity of the judicial system by avoiding the waste and delay of repetitive proceedings, and prevent inconsistent adjudications of similar claims.'" *Chhab v. Darden Rests., Inc.*, No. 11 Civ. 8345 (NRB), 2016 WL 3004511, at

*3 (S.D.N.Y. May 20, 2016) (quoting *Gonqueh v. Leros Point to Point, Inc.*, No. 14-CV-5883 (GHW), 2015 WL 9256932, at *3 (S.D.N.Y. Sept. 2, 2015)).   Superiority is "explicitly comparative in nature: courts must ask whether 'a class action is ***superior to other available methods*** for fairly and efficiently adjudicating the controversy.'"   *Petrobras*, 862 F.3d at 268 (quoting FED. R. CIV. P. 23(b) (emphasis in original)).  In the settlement context, the Court "need not inquire whether the case, if tried, would present intractable management problems." *Amchem*, 521 U.S. at 620; *Am. Int'l Group*, 689 F.3d at 239, 240.

Class litigation is superior in actions where, as here, it would be unduly costly for Settlement Class Members to pursue litigation on their own.  *See Elec. Books*, 2014 WL 1282293, at *23 (citing *Amchem*, 521 U.S. at 617); *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("The ***realistic*** alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30.") (emphasis in original).  Additionally, Settlement Class Members are significant in number and geographically disbursed, making a "class action the superior method for the fair and efficient adjudication of the controversy."   *In re Currency Conversion Fee Antitrust Litig.*, 224 F.R.D. 555, 566 (S.D.N.Y. 2004).

### C.  The Court Should Appoint Co-Lead Counsel as Counsel for the Settlement Class

"An order that certifies a class action . . . must appoint class counsel under Rule 23(g)." FED. R. CIV. P. 23(c)(1)(B) considering the factors identified in Rule 23(g)(1)(A)(i)-(iv).  After considering numerous lead counsel motions, the Court previously appointed Scott+Scott and Lowey Dannenberg as interim co-lead counsel.  ECF No. 159.  Since that time, the firms have competently undertaken the responsibilities assigned to them by the Court.   Accordingly,

Plaintiffs request that Scott+Scott and Lowey Dannenberg be appointed as counsel for the Settlement Class.

## III.   THE PROPOSED MANNER OF NOTICE IS THE BEST NOTICE PRACTICABLE UNDER THE CIRCUMSTANCES

Rule 23(e)(1)(B) provides that, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Where, as here, notice is to be provided to a settlement class certified under Rule 23(b)(3), the Court is required to "direct to class members the best notice that is practicable under the circumstance[s]."  FED. R. CIV. P. 23(c)(2)(B).  "The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness."  *Wal-Mart Stores,* 396 F.3d at 113.

Plaintiffs propose to send via first class mail the Mail Notice and Claim Form (together, the "Notice Packet") (attached as Exhibits 1 and 2 to the proposed Preliminary Approval Order) to potential members of the Settlement Class.  Deutsche Bank agreed to supply the names and addresses of potential Settlement Class Members who or which can be identified based on records within the bank's possession.  Plaintiffs have requested parallel information from the other Defendants and are conferring with them in an attempt to reach an agreement.

In addition, the Claims Administrator will implement a robust broker/nominee mailing process that will further facilitate the distribution of notice to potential members of the Settlement Class.  The Claims Administrator maintains a database of the approximately 4,500 brokers and nominees, which include the largest and most common banks, brokers, and other nominees who are responsible for conducting financial transactions, including GSE Bond Transactions, on behalf of others.

In addition to mailing Notice Packets, Plaintiffs propose that the Publication Notice (attached as Exhibit 3 to the proposed Preliminary Approval Order) will be published in international financial news outlets and as a global press release.  The Claims Administrator will establish and maintain a Settlement Website, where Settlement Class Members can obtain detailed information about the case and the Settlement.  The Claims Administrator will also establish a telephone helpline and monitor an email address to which Settlement Class Members may write.

Such multi-faceted notice programs combining individual mail notice and publication notice have been approved by federal courts in numerous complex class actions.  *See, e.g.*, *Wal-Mart Stores*, 396 F.3d at 105 (affirming "notice plan that required mailing the settlement notice to class members and publishing a condensed version of the settlement notice in numerous widely-distributed publications").  Accordingly, Plaintiffs respectfully request that the Court approve the proposed manner of effectuating notice.

## IV.     THE FORMS OF NOTICE ARE REASONABLE

The Mail Notice exceeds the requirements of Rule 23(c)(2)(B), as it provides Settlement Class Members, in "plain, easily understood language," with descriptions of the nature of the Action, including the claims and defenses at issue; the definition of the settlement class; how and when to object and opt out; and the binding effect of the judgement, if the Court approves the Deutsche Bank Settlement.  Further, the Publication Notice will be widely disseminated, further supporting the reasonableness of the notice.  Accordingly, Plaintiffs respectfully request that the Court approve the proposed forms of notice.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an order preliminarily approving the Deutsche Bank Settlement and authorizing notice.

Dated: September 11, 2019

_s/ Christopher M. Burke_
CHRISTOPHER M. BURKE (CB-3648)
600 W. Broadway, Suite 3300
**SCOTT+SCOTT ATTORNEYS AT
LAW LLP**
San Diego, CA 92101
Tel:  (619) 233-4565
Fax: (619) 233-0508
cburke@scott-scott.com

DAVID R. SCOTT (DS-8053)
AMANDA F. LAWRENCE (AL-8804)
KRISTEN ANDERSON (KA-1965)
DONALD A. BROGGI (DB-9661)
THOMAS BOARDMAN (TB-0530)
**SCOTT+SCOTT ATTORNEYS AT
LAW LLP**
The Helmsley Building
230 Park Ave., 17th Floor
New York, NY 10169
Tel:  (212) 223-6444
Fax: (212) 223-6334
david.scott@scott-scott.com
alawrence@scott-scott.com
kanderson@scott-scott.com
dbroggi@scott-scott.com
tboardman@scott-scott.com

_Interim Co-Lead Counsel for the Class and
Attorneys for Plaintiff City of Birmingham
Retirement and Relief System_

CHRISTOPHER CRAIG
Chief Counsel
**PENNSYLVANIA TREASURY
DEPARTMENT
OFFICE OF THE CHIEF COUNSEL**
129 Finance Building
Harrisburg, PA 17120
ccraig@patreasury.gov

_Attorney for Plaintiff Joseph M. Torsella, in
his official capacity as the Treasurer of the
Commonwealth of Pennsylvania_

VINCENT BRIGANTI
CHRISTIAN LEVIS
MARGARET MACLEAN
ROLAND R. ST. LOUIS, III
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Tel:  (914) 997-0500
Fax: (914) 997-0035
vbriganti@lowey.com
clevis@lowey.com
mmaclean@lowey.com
rstlouis@lowey.com

_Interim Co-Lead Counsel for the Class and
Attorneys for Plaintiff Joseph M. Torsella is the
Treasurer of the Commonwealth of
Pennsylvania and the head of the Pennsylvania
Office of the State Treasurer_

TODD A. SEAVER
CARL N. HAMMARSKJOLD
**BERMAN TABACCO**
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Tel:  (415) 433-3200
Fax: (415) 433-6382
tseaver@bermantabacco.com
chammarskjold@bermantabacco.com

LESLIE R. STERN
**BERMAN TABACCO**
One Liberty Square
Boston, MA 02109
Tel:  (617) 542-8300
Fax: (617) 542-1194
lstern@bermantabacco.com

_Attorneys for Plaintiffs Electrical Workers
Pension Fund Local 103, I.B.E.W., and Local
103, I.B.E.W. Health Benefit Plan_

### CERTIFICATE OF SERVICE

I hereby certify that on September 11, 2019, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

*s*/ Christopher M. Burke
Christopher M. Burke

**APPENDIX A**

| Preliminary Multiplier Table | | | | |
|---|---|---|---|---|
| Remaining Years Until Maturity | | | Risk Number | Multiplier |
| > | but | < | | |
| 0 | | 1 | 0.49843 | 1 |
| 1 | | 2 | 1.49486 | 3 |
| 2 | | 3 | 2.47329 | 5 |
| 3 | | 4 | 3.42543 | 7 |
| 4 | | 5 | 4.34314 | 9 |
| 5 | | 6 | 5.22957 | 10 |
| 6 | | 7 | 6.07686 | 12 |
| 7 | | 8 | 6.88143 | 14 |
| 8 | | 9 | 7.68229 | 15 |
| 9 | | 10 | 8.43743 | 17 |
| 10 | | 11 | 9.17771 | 18 |
| 11 | | 12 | 9.90057 | 20 |
| 12 | | 13 | 10.59614 | 21 |
| 13 | | 14 | 11.26171 | 23 |
| 14 | | 15 | 11.87214 | 24 |
| 15 | | 16 | 12.51443 | 25 |
| 16 | | 17 | 13.09429 | 26 |
| 17 | | 18 | 13.64543 | 27 |
| 18 | | 19 | 14.17200 | 28 |
| 19 | | 20 | 14.66757 | 29 |
| 20 | | 21 | 15.13529 | 30 |
| 21 | | 22 | 15.57700 | 31 |
| 22 | | 23 | 15.99043 | 32 |
| 23 | | 24 | 16.37986 | 33 |
| 24 | | 25 | 16.74071 | 34 |
| 25 | | 26 | 17.07586 | 34 |
| 26 | | 27 | 17.38643 | 35 |
| 27 | | 28 | 17.66557 | 35 |
| 28 | | 29 | 17.93929 | 36 |
| 29 | | 30 | 18.16371 | 36 |
| 30 | | | 18.44600 | 37 |