**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE GSE BONDS ANTITRUST LITIGATION | No. 19-cv-01704-JSR |

**PLAINTIFFS' MEMORANDUM OF LAW IN**
**OPPOSITION TO DEFENDANTS' RENEWED JOINT MOTION TO DISMISS**
**THE THIRD CONSOLIDATED AMENDED CLASS ACTION**
**COMPLAINT FOR FAILURE TO STATE A CLAIM**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................ 2

ARGUMENT ................................................................................................................ 3

I.    The TAC Plausibly Alleges Each Defendant's Role in a Conspiracy
to Fix GSE Bond Prices ...................................................................................... 3

    A.    The New Allegations Relate to the Overarching Conspiracy........................... 5

    B.    The Economic Analyses Tie Moving Defendants to the Conspiracy............... 8

    C.    The Class Period Extends to January 1, 2016 ................................................ 10

II.    Plaintiffs Have Pled a Plausible Antitrust Claim Against CGMI ....................... 12

III.    Plaintiffs Are Entitled to Seek Leave to Amend When Necessary ..................... 15

CONCLUSION ................................................................................................................ 16

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Apex Oil Co. v. DiMauro*,
    822 F.2d 246 (2d Cir. 1987)...........................................................................................9

*Beautiful Home Textiles (USA), Inc. v. Burlington Coat Factory Warehouse*
    *Corp.*,
    No. 13 Civ. 1725, 2015 WL 2330066 (S.D.N.Y. May 14, 2015).............................5

*Continental Ore Co. v. Union Carbide & Carbon Corp.*,
    370 U.S. 690 (1962)...........................................................................................6

*Elias v. Rolling Stone LLC*,
    872 F.3d 97 (2d Cir. 2017).................................................................................13

*Golden Bridge Tech., Inc. v. Motorola, Inc.*,
    547 F.3d 266 (5th Cir. 2008) ..............................................................................15

*Gym Door Repairs, Inc. v. New York City Dept. of Educ.*,
    No. 12 Civ. 7387, 2015 WL 3883243 (S.D.N.Y. June 23, 2015)...........................13

*Havens v. Mobex Network Servs., LLC*,
    820 F.3d 80 (3d Cir. 2016).................................................................................14

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
    No. 06-MD-1175, 2014 WL 7882100 (E.D.N.Y. Oct. 15, 2014)...........................7

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
    No. 06-MDL-1775, 2010 WL 10947344 (E.D.N.Y. Sept. 22, 2010)......................9

*In re Commodity Exch. Inc., Gold Futures and Options Trading Litig.*,
    328 F. Supp. 3d 217 (S.D.N.Y. 2018)..................................................................8

*In re Currency Conversion Fee Antitrust Litig.*,
    265 F. Supp. 2d 385 (S.D.N.Y. 2003)..................................................................9

*In re Delta/Airtran Baggage Fee Antitrust Litig.*,
    245 F. Supp. 3d 1343 (N.D. Ga. 2017), *aff'd sub nom., Siegel v. Delta Air*
    *Lines, Inc.*, 714 F. App'x 986 (11th Cir. 2018), *cert. denied*, 139 S. Ct. 827
    (2019).............................................................................................................14

*In re Elevator Antitrust Litig.*,
    No. 04 cv 1178, 2006 WL 1470994 (S.D.N.Y. May 30, 2006)..............................7

*In re Foreign Exchange Benchmark Rates Antitrust Litigation*,
13 Civ. 7789, 2016 WL 5108131 (S.D.N.Y. Sept. 20, 2016) ................................................13

*In re Ins. Brokerage Antitrust Litig.*,
618 F.3d 300 (3d Cir. 2010) ...........................................................................................7

*In re London Silver Fixing, Ltd., Antitrust Litig.*,
332 F. Supp. 3d 885 (S.D.N.Y. 2018) ......................................................................8, 13

*In re New Jersey Tax Sales Certificates Antitrust Litig.*,
No. 12-1983, 2014 WL 5512661 (D.N.J. Oct. 31, 2014) ........................................7

*In re PCH Assocs.*,
949 F.2d 585 (2nd Cir. 1991) ...........................................................................................5

*In re Polyurethane Foam Antitrust Litig.*,
86 F. Supp. 3d 769 (N.D. Ohio 2015) ..........................................................................9

*In re TFT–LCD (Flat Panel) Antitrust Litig.*,
267 F.R.D. 583 (N.D. Cal. 2010) ....................................................................................7

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
599 F. Supp. 2d 1179 (N.D. Cal. 2009) .......................................................................11

*In re Urethane Antitrust Litig.*,
683 F. Supp. 2d 1214 (D. Kan. 2010) .........................................................................10

*Iowa Pub. Employees' Ret. Sys. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
340 F. Supp. 3d 285 (S.D.N.Y. 2018) .........................................................................12

*Lattice Semiconductor Corp. v. Interface Elec. Corp.*,
37 F.3d 1505 (9th Cir. 1994) .......................................................................................15

*Meyer v. Kalanick*,
174 F. Supp. 3d 817 (S.D.N.Y. 2016) (Rakoff, J.) .....................................................12

*Nypl v. JPMorgan Chase & Co.*,
15 CIV 9300, 2018 WL 1276869 (S.D.N.Y. Mar. 12, 2018) ...................................12

*Precision Assocs., Inc. v. Panalpina World Transp. (Holding) Ltd.*,
No. 08-CV-00042, 2015 WL 4987751 (E.D.N.Y. Aug. 19, 2015) ...........................12

*Ross v. Am. Express*,
35 F. Supp. 3d 407 (S.D.N.Y. 2014) ..............................................................................9

*Shields v. Citytrust Bancorp., Inc.*,
25 F.3d 1124 (2d Cir. 1994) ..........................................................................................11

*Sonterra Capital Master Fund Ltd. v. Credit Suisse Grp. AG,*
    277 F. Supp. 3d 521 (S.D.N.Y. 2017)......................................................................................14

*Stinson v. City of N.Y.,*
    19 Civ. 4227, 2016 WL 817445 (S.D.N.Y. Feb. 24, 2016)..........................................................5

*Sullivan v. Barclays PLC,*
    No. 13-CV-2811, 2017 WL 685570 (S.D.N.Y. Feb. 21, 2017)..................................................8

*U.S. v. Am. Airlines, Inc.,*
    743 F.2d 1114 (5th Cir. 1984) ................................................................................................15

## INTRODUCTION

Moving Defendants Barclays Capital, Inc., Citigroup Global Markets, Inc., Credit Suisse Securities (USA) LLC, UBS Securities LLC, J.P. Morgan Securities LLC, HSBC Securities (USA) Inc., Nomura Securities International, Inc., TD Securities (USA) LLC, Cantor Fitzgerald & Co., and SG Americas Securities, LLC (collectively, "Moving Defendants")[1] now concede that the new evidence contained in the Third Amended Consolidated Class Action Complaint (the "TAC") sufficiently ties them to the alleged conspiracy to fix the prices of GSE Bonds.  Indeed, they make virtually no attempt to defend the 19 new chats contained in the TAC except in an anemic footnote related to summary judgment.

Instead, they argue that the TAC fails to allege that they participated in *all* of the conspiracy.  To make this argument, they once again take a piecemeal approach to the conspiracy which is inappropriate under established case law requiring a conspiracy be viewed as a whole. Moving Defendants' argument also flies in the face of this Court's prior Opinion and Order holding that extremely similar (if not at times, verbatim) chats along with the statistical allegations (which remain unchanged) sufficiently tied the Sustained Defendants to the entire conspiracy alleged. There is simply no reason that the same rationale would not, and does not, apply here.  And while Moving Defendants point to a supposed paucity of chats directly evincing the entirety of Plaintiffs' theories of liability, as of this filing, no Moving Defendant has produced a single chat.[2] *See, e.g.,*

---

[1]     Five other Defendants (Deutsche Bank Securities Inc., BNP Paribas Securities Corp., Morgan Stanley & Co., Goldman Sachs & Co., and Merrill Lynch, Pierce, Fenner & Smith Inc.), per this Court's Order, have already been included in the case.  Those Defendants are referred to herein as the "Sustained Defendants."  Defendants First Tennessee Bank National Association and FTN Financial Securities Corp. did not join the Moving Defendants' Renewed Motion.

[2]     While they have produced a handful of documents (largely compliance and organizational documents) and transactional data, Defendants have yet to produce any substantive documents to Plaintiffs despite repeated meet-and-confer conversations.

Defendants' Memorandum of Law in Support of Their Renewed Motion to Dismiss the TAC For Failure to State a Claim (ECF No. 260) ("Defs.' Mot.") at 1, 10.

It is thus clear that Moving Defendants are simply attempting to rehash arguments already argued and denied by this Court.  Only §VI.A.1 (or ¶¶156-179) of the TAC differs from the prior complaint regarding new allegations as to the Moving Defendants.  This section is therefore the only one "in play."  Instead of taking the Court's directive to focus "exclusively on the new allegations," Moving Defendants largely ignore those very paragraphs of the TAC and relitigate issues already decided.  Such gamesmanship should not be countenanced.

## BACKGROUND

On May 23, 2019, Plaintiffs filed an amended complaint after receiving information from a cooperating co-conspirator.[3]  That complaint contained the chats available to Plaintiffs at the time, as well as further allegations setting forth Defendants' conspiracy to fix secondary prices in the GSE Bond market.  In the face of these allegations, Defendants then spent hundreds of pages (including exhibits) moving to dismiss the SAC and making their arguments including, *inter alia*: that the chats, and thus the case, were limited to "callable bonds"; that the parameters of the Class Period were too broad; and that the economic analyses showing pricing patterns consistent with collusive conduct were somehow flawed.

On July 23, 2019, this Court heard oral argument on the motion to dismiss and thereafter rejected each of the arguments made as to the Sustained Defendants, finding that "the Second Amended Complaint adequately alleges the existence of a conspiracy to fix the price of GSE Bonds."  *See* Sept. 3, 2019 Opinion and Order (ECF. No. 253) at 9 (the "Order").  This Court

---

[3]      This was the ***first*** amended complaint.  The Second Amended Consolidated Class Action Complaint (the "SAC") (which merely added Deutsche Bank Securities, Inc. as a Defendant) was filed on July 12, 2019.

further held that "the Second Amended Complaint plausibly pleads that ***the conspiracy extended beyond just these defendants***." *Id.* at 10.[4]  However, the Order also notes that "while the Court finds it entirely plausible that the conspiracy evidenced by the chatroom logs may have extended beyond the specific defendants participating in those conversations, plaintiffs must still adduce ***some reason to believe*** that the particular defendants named in this suit were involved." *Id.* at 17.

After filing the SAC, Plaintiffs continued to receive information and then documents from the cooperating co-conspirator and reviewed them for representative examples of chats where each Defendant impermissibly agreed to fix prices with other Defendants.  On September 10, 2019, Plaintiffs filed the TAC containing these further illustrative chats which amply provide the "some reason" to tie in the Moving Defendants called for by the Court.  The TAC only differs from the SAC regarding the Moving Defendants in one relevant area: §VI.A.1 (or ¶¶156-79), which contains the 19 new example chats.  Moving Defendants now seek to have the TAC dismissed as to them.  For the reasons stated below and in the papers filed in opposition to the motion to dismiss the SAC, their motion should be denied in its entirety and this case should move on to focus on rapid discovery and class certification.

## ARGUMENT

**I.      The TAC Plausibly Alleges Each Defendant's Role in a Conspiracy to Fix GSE Bond Prices**

Moving Defendants accept that, at least to some extent, the TAC adequately alleges their participation in the conspiracy to fix prices of GSE Bonds.  With the exception of Citigroup Global Markets Inc. ("CGMI"), Moving Defendants do not argue the exemplar chats are somehow

---

[4]      Unless otherwise noted, all emphasis is added and citations are omitted.

permissible, legal, or inadequate.  Indeed, they would be unable to do so in the face of the clear language contained in those chats such as:

- DBSI Trader 4 asking, "where are we going out on these bonds?  99.90?  ***just want to make sure everyone's cool w/ that . . .***," to which Cantor Fitzgerald Trader 1 responds, "***Yes, 99.90***."  ¶159;

- Morgan Stanley Trader 1 saying, "I see an upsize px at -13 of 100.02, ***so i agree***" and then replying, "I don't want to sell any below there to be honest."  UBS Trader 1 responds, "FTT ***we are following***."  ¶161;

- SG Securities Trader 1 saying, "I think we get a bit more traction if we free them . . . ***wanna free at 99.80***?" and DBSI Trader 4 responding, "Yeah . . . sounds good to me.  99.80 ftt works . . ."  ¶164;

- SG Securities Trader 1 saying, "mind if we just ***free them to 99.925*** and wake some people up" to which DBSI Trader 1 says, "SURE," and Goldman Sachs Trader 2 responding, "***I'm ok with that***."  ¶165; and

- TD Securities Trader 1 asking, "***how about 99.98***?" and DBSI Trader 1 responding "that work.  ftt at 99.98."  ¶170.

Therefore, it is undisputed that the TAC should be sustained against the Moving Defendants.  Each of their arguments as to potential limits of the conspiracy are both impermissible under this Court's Order and meritless.

A. **The New Allegations Relate to the Overarching Conspiracy**

Moving Defendants' primary argument is to say that the exemplar chats pertain to a certain set of GSE Bonds and thus do not connect them to the entire conspiracy pled.  Defs.' Mot. at 5-8.  This argument fails under the law as well as the law of this case.[5]

First of all, Defendants have already attempted this very same argument multiple times (including references to the same cases) and were not successful.  *See, e.g.*, Defendants' Motion to Dismiss the SAC (ECF No. 221) at 18-19 (citing *In re Elevator Antitrust Litig.*, No. 04 cv 1178, 2006 WL 1470994 (S.D.N.Y. May 30, 2006); Defendants' Reply Memorandum in Further Support of Motion to Dismiss the SAC (ECF No. 240) at 4-7 (citing *In re Interest Rate Swaps Antitrust Litig.*, 261 F. Supp. 3d 430 (S.D.N.Y. 2017).   In fact, the very header of Moving Defendants' argument ("The New Chat Excerpts Are Unrelated to "Off-the-Run" Bonds or Bid-Ask Spreads") is almost identical to one in the reply memorandum in support of the motion to dismiss the SAC ("Plaintiffs Identify No Direct Evidence of an Agreement Related to Off-the-Run Bonds, Bid-Ask Spreads, or Non-Callable Bonds.").  The Court already squarely rejected this exact and repeated argument.  It held succinctly in the Order:

> Defendants also point out that all of the chats involved callable bonds.  From this, they argue that there is no evidence of a conspiracy involving other types of bonds. This is not persuasive.  ***It is more than plausible that these kinds of conversations also happened about other types of bonds***.

---

[5]    "Under the law of the case doctrine, a decision on an issue made at one stage of a case becomes binding precedent to be followed in subsequent stages of the same litigation."  *In re PCH Assocs.*, 949 F.2d 585, 592 (2nd Cir. 1991).  Because the only additional facts in the TAC are the chats requested by the Court (which Moving Defendants do not challenge) and because the law has not shifted since the Court issued its Order, Moving Defendants' motion can be summarily denied.  *See also Beautiful Home Textiles (USA), Inc. v. Burlington Coat Factory Warehouse Corp.*, No. 13 Civ. 1725, 2015 WL 2330066, at *1 (S.D.N.Y. May 14, 2015) (noting that although "styled as a 'motion for judgment as a matter of law,' Plaintiff's motion is effectively a motion for reconsideration"); *Stinson v. City of N.Y.*, 19 Civ. 4227, 2016 WL 817445, at *2 (S.D.N.Y. Feb. 24, 2016) (courts '"are reluctant to permit parties . . . to avoid . . . the legal requirements"' of a motion for reconsideration by "disguising" it as something else).

Order at 16-17.   Therefore, it sustained the allegations of a conspiracy (as to the Sustained Defendants) to fix the prices of all GSE Bonds.

Moving Defendants offer no reason to hold otherwise here, but are instead attempting to relitigate the issue in their favor.   The only change to the TAC specific to the Moving Defendants is the addition of the paragraphs that contain chats almost identical to those discussed in the Court's Order, which the Court found to be "exactly what they appear to be: direct evidence of a conspiracy to fix prices."   *Id.* at 17.   Moving Defendants offer no argument to support differentiating them from the banks already sustained by this Court.

This argument also misconstrues Plaintiffs' case and attempts to dissect, dismember, and compartmentalize the TAC, which the law patently forbids.   *See Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962) (Sherman Act plaintiffs "should be given the full benefit of their proof without tightly compartmentalizing the various factual components and wiping the slate clean after scrutiny of each.").   This case concerns one overarching conspiracy – to fix the prices of GSE Bonds in the secondary market.   The distinctions Defendants are drawing (to "off the run" bonds and "bid-ask spreads") refer to the economic analyses put forth in the SAC and TAC that support the direct evidence in both.   Furthermore, while Moving Defendants suggest there are differences between the GSE Bonds, they overlook strong allegations in the TAC (and the SAC) to the contrary.   Those include that:

- "All GSE Bonds have core similarities that distinguish them as a single class of debt instruments."  (¶114);

- "GSE Bonds . . . carry substantially similar levels of credit risk" (¶115);

- "[T]he same employees within each Defendant's GSE Bond trading and sales business determine prices charged to investors in GSE Bond transactions for all types of GSE Bonds." (¶117); and

- "GSE Bonds also have other common features. These include face value, maturity, and coupon payment . . ." (¶118).

Therefore, this Court's Order and the language in the TAC clearly demonstrate the TAC alleges an overarching conspiracy as to all Defendants.

Case law supports this conclusion and countenances against Defendants' repeated efforts to re-cast the allegations as separate, distinct, or severable. *See, e.g.*, *In re TFT–LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 606-07 (N.D. Cal. 2010) ("defendants may not recast plaintiffs' allegations, and plaintiffs have consistently alleged a single, overriding conspiracy spanning the entire class period"); *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 336-37 (3d Cir. 2010) (global horizontal conspiracy supported by allegations of examples of bid rigging among defendants); *In re New Jersey Tax Sales Certificates Antitrust Litig.*, No. 12-1983, 2014 WL 5512661, at *8 (D.N.J. Oct. 31, 2014) ("allegations of collusion at the individual auctions can be considered in establishing the larger overarching conspiracy"); *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD-1175, 2014 WL 7882100, at *38 (E.D.N.Y. Oct. 15, 2014) ("the mere fact that the defendants have a different case theory should not deprive the plaintiffs of the opportunity to prove theirs").

Moving Defendants' cases do not dictate otherwise. For example, their repeated reliance on *Elevators*, 2006 WL 1470994, is misplaced. There, the district court found just **four paragraphs** as constituting the entirety of the supposed evidence of a worldwide conspiracy. Furthermore, the Court held that allegations of a conspiracy in Europe could not alone demonstrate

one in the United States.  This is a far cry from the pleadings here where Plaintiffs have alleged fixing of the same class of bonds by the same desks and in some cases, the same exact traders. Likewise, in *Sullivan v. Barclays PLC*, No. 13-CV-2811, 2017 WL 685570, at *25 (S.D.N.Y. Feb. 21, 2017), the Court sustained allegations of a conspiracy to rig the Euribor fix.  It dismissed only those claims for conduct that it found did not "overlap" with the fixing of Euribor, and that it believed "instead involve[d] other horizontal activity to fix the price of Euribor-based derivatives." *Id.*  Here, by contrast, there is only one type of horizontal activity alleged: fixing the prices of GSE Bonds. Moving Defendants' citation to *Silver Fix* is similarly inapposite.  There, the Court found that plaintiffs had plausibly alleged conspiracies both by one set of banks to suppress the silver fix and by another set of banks "to collude in the silver markets through market manipulation and information sharing."  *In re London Silver Fixing, Ltd., Antitrust Litig.*, 332 F. Supp. 3d 885 (S.D.N.Y. 2018).  *See also In re Commodity Exch. Inc., Gold Futures and Options Trading Litig.*, 328 F. Supp. 3d 217, 228, 231 (S.D.N.Y. 2018) (court found communications (limited to two traders at two firms) were inconsistent with suppression-based theory and with insider knowledge of a price-fixing conspiracy and therefore could not support a multi-year conspiracy with four other financial institutions).  The TAC sufficiently alleges that the Moving Defendants were part of the overarching conspiracy pled.

### B.  The Economic Analyses Tie Moving Defendants to the Conspiracy

Not only do the 19 new chats directly connect Moving Defendants to the conspiracy alleged, but the economic allegations from the SAC (that remain in the TAC) support this connection.[6]

---

[6]    It is also worth noting that the TAC (as with the SAC) contains league tables expressly showing that Defendants were the largest players in the GSE Bond market.  *See also* ¶135 ("Defendants have consistently been among the largest GSE Bond underwriters in the United

The TAC contains the same statistical evidence from the SAC that shows GSE Bond dealers throughout the Class Period inflated the prices that investors paid when buying GSE Bonds and deflated the prices investors received when selling GSE Bonds. These anomalies in GSE Bond pricing were found to be inconsistent with normal, competitive market conditions and such anomalies were demonstrated in numerous graphs that contained various cross-checks and benchmarks. This Court found that the very same statistics "generally support the allegation of a price-fixing conspiracy." Order at 19. It then held: "based on the direct evidence of price-fixing activity, as supplemented by the statistical evidence, that plaintiffs have adequately pleaded an antitrust conspiracy against [the Sustained Defendants]." *Id.* at 23. Now, in the TAC, Plaintiffs provide direct evidence in the form of chats for each Moving Defendant, and again supplement those chats by the identical statistical evidence.

The TAC therefore pleads the same antitrust conspiracy — to fix the prices of all GSE Bonds — as to the Moving Defendants. Nothing more is required.[7]

---

States. . . . Thus, Defendants as a bloc dominated control of GSE Bond supply and were well-positioned to use that dominant position to fix the prices of GSE Bonds charged to Plaintiffs and the Class.").

[7]     In fact, "'[O]nce a conspiracy is shown, only slight evidence is needed to link another defendant with it.'" *Ross v. Am. Express*, 35 F. Supp. 3d 407, 438 (S.D.N.Y. 2014) (quoting *Apex Oil Co. v. DiMauro*, 822 F.2d 246, 257 (2d Cir. 1987)). *See also In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385, 420 (S.D.N.Y. 2003). This burden is not onerous. *In re Polyurethane Foam Antitrust Litig.*, 86 F. Supp. 3d 769, 786 (N.D. Ohio 2015). As the Eastern District of New York explained in denying individual motions to dismiss in *In re Air Cargo*: "No defendant goes unmentioned in the complaint. Each is alleged to have engaged in some specified conduct, even if in the defendants' eyes it amounts to very little." *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MDL-1775, 2010 WL 10947344, at *8 (E.D.N.Y. Sept. 22, 2010).

### C.     The Class Period Extends to January 1, 2016

Moving Defendants argue that because the most recent chat quoted in the TAC is from February 2014, the Class Period must likewise end then. *See* Defs.' Mot. at 8-10. This argument is erroneous for numerous reasons:

*First*, the 19 chats now included in the TAC are illustrative examples only. They contain clear language of price fixing and were thus included in the TAC. They are not an exhaustive set of the evidence already received from the cooperating co-conspirator. Furthermore, once Defendants themselves begin to produce substantive documents, the number and extent of the chats (and other evidence) will surely multiply and further support the Class Period alleged.

*Second*, the January 1, 2016 end of the Class Period is supported by copious allegations in the TAC. The cooperating co-conspirator confirmed that date as the end of the Class Period. *See* ¶12 ("The economic fingerprints that Defendants' conspiracy left on the GSE Bond market diminish after January 2016, when the cooperating co-conspirator discovered the anticompetitive conduct alleged herein."); *see also In re Urethane Antitrust Litig.*, 683 F. Supp. 2d 1214, 1234 (D. Kan. 2010) (upholding plaintiffs' allegation of the class period based on cooperating co-conspirator's indication that conspiracy dated back to 1994). The economic analysis also clearly supports the Class Period as alleged. Numerous charts in the TAC (and SAC) show a sharp change beginning in 2016 once the conspiracy ceased to operate. *See, e.g.*, ¶213 ("Thus, the price that Defendants charged investors for newly issued Notes on offer days were ***nine times higher*** before January 1, 2016 than after."); ¶230 ("this observed price inflation in advance of new GSE Bond issuances dissipated after January 1, 2016, when prices of bonds that were about to go off-the-run traded at lower prices than newly issued GSE Bonds."); ¶245 ("the average relative bid-ask spread in Defendants' GSE Bond quotes during the Class Period . . . was ***90% wider*** than [before January

2016]").  *See also In re TFT-LCD (Flat Panel) Antitrust Litig.*, 599 F. Supp. 2d 1179, 1185 (N.D. Cal. 2009) (maintaining the alleged class period despite criminal guilty pleas for shorter time periods regarding the same conduct based in part on the fact that "[t]he complaints also allege indicia of price-fixing and market manipulation, such as unusual pricing practices" for the longer period).

*Third*, this Court has already opined on the duration of the Class Period.  The Order states that in 2016, "the conspiracy supposedly ended and the pricing suddenly changed dramatically." It thus confirms the analysis performed in the TAC.  Order at 28.

*Finally*, complaints filed prior to consolidation here are of no avail.  Moving Defendants again attempt to suggest that the end of the Class Period listed in the first-filed complaint is suggestive of the "correct" date.  Defs.' Mot. at 8-9.  However, the TAC supersedes and replaces previously filed complaints, making them of no import.  *See, e.g.*, *Shields v. Citytrust Bancorp., Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("'It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect.'").  This Court likewise states the same in the Order:

> First, defendants complain that plaintiffs' statistical analysis in the predecessor complaints differed, allegedly based on the same data.  Inconsistency, however, is not a reason to discount the current statistics, which are the only ones that matter at this stage.  That is especially true when, as here, there is a reasonable explanation for a change in the complaint − to wit, that the cases were consolidated, and a cooperating co-conspirator allegedly helped plaintiffs to refine their case.

Order at 19-20.  Furthermore, while Moving Defendants claim the economic evidence in the original complaint is the same as in the TAC (Defs.' Mot. at 10), the statistics in the TAC actually include a larger group of Defendants as well as different issuers.

Moving Defendants' attempts to limit the length of the Class Period should fail.[8]

## II.   Plaintiffs Have Pled a Plausible Antitrust Claim Against CGMI

The chat quoted in paragraph 163 of the TAC clearly demonstrates CGMI's participation in a conspiracy to fix the prices of GSE Bonds.  An FTN trader proposes taking the bonds FTT at a price of $99.95, to which CGMI responds moments later, "FTT is good."  TAC, ¶163.  A plausible reading of the chat is that the CGMI trader was agreeing to the entire proposal — going FTT at the stated price.  As is plain from all the chats cited in the TAC, these traders communicated in a quick, abbreviated way, using shorthand and acronyms.  It is no surprise that the CGMI trader did not bother to type out the additional words "at $99.95"; these words are implied from the context of the conversation.  *See, e.g.*, *Meyer v. Kalanick*, 174 F. Supp. 3d 817, 825 n.7 (S.D.N.Y. 2016) (Rakoff, J.) ("[s]ophisticated conspirators often reach their agreements as much by the wink and the nod as by explicit agreement," and therefore, "[i]t is fundamental to the law of conspiracy that the agreements that form the essence of the misconduct are [to be judged by] . . . practical realities").[9]

Well aware that this chat more than sufficiently "tie[s] [CGMI] to the conspiracy" (Order at 19), Moving Defendants instead urge this Court to accept their own strained interpretation of

---

[8]   The cases cited by Moving Defendants are entirely dissimilar.  For example, in *Precision Assocs., Inc. v. Panalpina World Transp. (Holding) Ltd.*, No. 08-CV-00042, 2015 WL 4987751 (E.D.N.Y. Aug. 19, 2015), the operative complaint contained pleadings which directly supported shortening the class period because it alleged that one defendant had turned itself in prior to the end of the class period.  Here, the Class Period ends at the precise time the cooperating co-conspirator discovered the wrongdoing.  Similarly, in *Nypl v. JPMorgan Chase & Co.*, 15 CIV 9300, 2018 WL 1276869) (S.D.N.Y. Mar. 12, 2018), documents attached to the complaint (guilty pleas and consent decrees) revealed that the conduct ended before the end of the posited class period.

[9]   In fact, Defendants' own case confirms this point.  In *Iowa Pub. Employees' Ret. Sys. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 340 F. Supp. 3d 285, 318 (S.D.N.Y. 2018), the Court found an executive's statement that Morgan Stanley and Goldman Sachs agreed to "get a hold of this thing" sufficiently explicit to qualify as "direct evidence of concerted action."

the conversation by dissecting FTN's proposal into two separate parts (the decision to go FTT in general and the FTT price), and claiming that CGMI was acquiescing only to the first part.  *See* Defs.' Mot. at 11-12.  Defendants' argument lacks merit.

Most importantly, "choos[ing] between plausible inferences . . . is not permissible at this stage of the litigation."  Order at 17 (citing *In re London Silver Fixing, Ltd., Antitrust Litig.* ("*Silver Fix II*"), 332 F. Supp. 3d 885, 904 (S.D.N.Y. 2018)).  Plaintiffs are not required to demonstrate that their interpretation of the chat is ***more*** plausible than Defendants' (though it is).  It is enough that Plaintiffs have put forth ***a*** plausible interpretation.  *See, e.g.*, *Elias v. Rolling Stone LLC*, 872 F.3d 97, 106 (2d Cir. 2017) (reversing dismissal because "statements are to be read in the light most favorable to [p]laintiffs and the relevant determination is whether [plaintiff's] proffered interpretation is plausible, not whether other plausible interpretations exist."); *Gym Door Repairs, Inc. v. New York City Dept. of Educ.*, No. 12 Civ. 7387, 2015 WL 3883243, at *5 (S.D.N.Y. June 23, 2015) ("[W]hether a finder of fact will choose to credit Defendants' interpretation of the email exchange . . . [is] not resolvable at the pleadings stage.").

Furthermore, the simple fact that CGMI's traders were sharing and receiving pricing information supports an inference of anticompetitive conduct.  In *Silver Fix II*, the Court inferred the existence of an anticompetitive agreement "from apparently regular sharing of current price and order information between horizontal competitors," because "it is not rational for horizontal competitors to share current pricing information absent the existence of an anticompetitive agreement."  332 F. Supp. 3d at 904 (citing *In re Foreign Exchange Benchmark Rates Antitrust Litigation*, 13 Civ. 7789, 2016 WL 5108131, at *4 (S.D.N.Y. Sept. 20, 2016) (sharing of information "is against each bank's economic self-interest as a competitor absent collusion")).

The same is true here.  To put it plainly, FTN would not have told CGMI its price unless there was an understanding that CGMI would also adhere to the price.

Finally, TRACE data demonstrates that CGMI, FTN, and their co-conspirators actually carried out the conspiracy they planned and that for a week and a half following this chat conversation, the bond in question sold exclusively at prices equal to or greater than $99.95 — the very price CGMI and FTN had discussed.  *See* Attachment A hereto (TRACE data).  Plaintiffs are not suggesting that it is a necessary element of an antitrust claim that a product sell at the exact price agreed between Defendants.  But the fact that the bond sold at prices exactly in line with CGMI's and FTN's coordination enhances the plausibility that CGMI participated in the chat based on an understanding that they were fixing the prices of GSE Bonds, and undercuts Defendants' arguments to the contrary.  Further, it distinguishes the authorities cited by Defendants, in which the alleged conspirators took no subsequent action consistent with their agreement.  *See Havens v. Mobex Network Servs., LLC*, 820 F.3d 80, 91 (3d Cir. 2016) (affirming the lower court's finding that no conspiracy existed where the conspirators' subsequent actions were ***contrary*** to the alleged agreement and observing that a step "***consistent*** with an agreement" is probative of conspiracy) (emphasis in original) (citing *Havens v. Mar. Commc'ns/Land Mobile, LLC*, No. CIV.A. 11-993 KSH, 2014 WL 4352300, at *18 (D.N.J. Sept. 2, 2014)); *Sonterra Capital Master Fund Ltd. v. Credit Suisse Grp. AG*, 277 F. Supp. 3d 521, 541 (S.D.N.Y. 2017) (finding conspiracy claim insufficient based on a single isolated request from a non-defendant to manipulate CHF LIBOR for which no response was provided and no action consistent with the agreement was taken); *In re Delta/Airtran Baggage Fee Antitrust Litig.*, 245 F. Supp. 3d 1343, 1375 (N.D. Ga. 2017), *aff'd sub nom., Siegel v. Delta Air Lines, Inc.*, 714 F. App'x 986 (11th Cir. 2018), *cert. denied*, 139 S. Ct. 827 (2019) (conspiracy was not established on summary judgment

where there was no subsequent action consistent with an agreement and an absence of evidence of any communication between codefendants).[10]  Here, by contrast, the co-conspirators did exactly what they agreed to do.  For all of the above reasons, Plaintiffs have sufficiently pled an antitrust claim against CGMI.

## III.   Plaintiffs Are Entitled to Seek Leave to Amend When Necessary

Defendants conclude their brief by demanding that any hypothetical request Plaintiffs might make for leave to further amend the TAC be denied.  This Court's opinion made clear that Plaintiffs' claims were plausibly pled in the SAC, but that they lacked specificity tying the Moving Defendants to the conspiracy.  Plaintiffs have now cured that deficiency.  However, if Plaintiffs were to request leave to amend for some other reason in the future, the notion that Plaintiffs have been "batting a complaint back and forth with the Court over a rhetorical net until a viable complaint emerges" (Defs.' Mot. at 13) is absurd.  Plaintiffs filed a consolidated complaint at this Court's direction following consolidation of the various cases and selection of lead counsel; the SAC is functionally identical to that complaint; and Plaintiffs filed the TAC once again at the Court's invitation and adhered to the Court's specific instructions.  All of this has taken place in a period of just four months, and before Plaintiffs have received any meaningful discovery

---

[10]    Defendants' other cases are equally inapposite.  For example, *Lattice Semiconductor Corp. v. Interface Elec. Corp.*, 37 F.3d 1505 (9th Cir. 1994) concerned an appeal from the district court's order granting summary judgment in favor of defendant in the context of a manufacturer-dealer relationship.  *Id.*, at *5.  There, the allegedly anticompetitive conduct involved a manufacturer who made pressure on a dealer to sell at suggested retail price, which the court found "legitimate pressure" from which no inference of antitrust conspiracy could be drawn.  *Id.*  In *Golden Bridge Tech., Inc. v. Motorola, Inc.*, 547 F.3d 266, 272 (5th Cir. 2008) the alleged conspirators' email "actually reveal[ed] disagreement . . . about the very action [plaintiff] claim[ed] constituted the conspiracy."  *Id.* at 272.  Finally, in *U.S. v. Am. Airlines, Inc.*, 743 F.2d 1114, 1116 (5th Cir. 1984), the alleged co-conspirator refused to raise prices, and instead, turned over the recording of the incriminating phone conversation to the government.  *Id.*

productions from Defendants.  There is no reason at this time that Plaintiffs should be forever foreclosed from future amendments should cause arise.

## **CONCLUSION**

Plaintiffs allege a horizontal price-fixing conspiracy in the secondary market for GSE Bonds that includes the Moving Defendants.  Plaintiffs respectfully submit they have met the plausibility standard and that the Court should sustain the entire TAC as to all Defendants.

DATED: September 23, 2019          Respectfully submitted,


s/ Christopher M. Burke
CHRISTOPHER M. BURKE (CB-3648)
WALTER W. NOSS (WN-0529)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
600 W. Broadway, Suite 3300
San Diego, CA 92101
Tel: (619) 233-4565
Fax: (619) 233-0508
cburke@scott-scott.com
wnoss@scott-scott.com

VINCENT BRIGANTI
CHRISTIAN LEVIS
MARGARET MACLEAN
ROLAND R. ST. LOUIS, III
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Tel: (914) 997-0500
Fax: (914) 997-0035
vbriganti@lowey.com
clevis@lowey.com
mmaclean@lowey.com
rstlouis@lowey.com

*Interim Co-Lead Counsel for the Class*

TODD A. SEAVER
CARL N. HAMMARSKJOLD
**BERMAN TABACCO**
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Tel: (415) 433-3200
Fax: (415) 433-6382
tseaver@bermantabacco.com
chammarskjold@bermantabacco.com

DAVID R. SCOTT (DS-8053)
AMANDA F. LAWRENCE (AL-8804)
KRISTEN M. ANDERSON (KA-1965)
DONALD A. BROGGI (DB-9661)
THOMAS K. BOARDMAN (TB-0530)
JUSTIN W. BATTEN
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Ave., 17th Floor
New York, NY 10169
Tel: (212) 223-6444
Fax: (212) 223-6334
david.scott@scott-scott.com
alawrence@scott-scott.com
kanderson@scott-scott.com
dbroggi@scott-scott.com
tboardman@scott-scott.com
jbatten@scott-scott.com

*Interim Co-Lead Counsel for the Class*

CHRISTOPHER CRAIG
Chief Counsel
**PENNSYLVANIA TREASURY DEPARTMENT**
OFFICE OF THE CHIEF COUNSEL
129 Finance Building
Harrisburg, PA 17120
Tel: (717)787-2465
Fax: (717) 772-0970
ccraig@patreasury.gov

*Attorney for Plaintiff Joseph M. Torsella, in his official capacity as the Treasurer of the Commonwealth of Pennsylvania*

LESLIE R. STERN
**BERMAN TABACCO**
One Liberty Square
Boston, MA 02109
Tel: (617) 542-8300
Fax: (617) 542-1194
lstern@bermantabacco.com

*Attorneys for Plaintiffs Electrical Workers Pension Fund Local 103, I.B.E.W., and Local 103, I.B.E.W. Health Benefit Plan*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on September 23, 2019, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

/s Christopher M. Burke        
Christopher M. Burke
