**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE GSE BONDS ANTITRUST LITIGATION | Case No. 1:19-cv-01704 (JSR) |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF STIPULATION AND AGREEMENT OF SETTLEMENT WITH FIRST TENNESSEE BANK, N.A. & FTN FINANCIAL SECURITIES CORP.**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

PROCEDURAL BACKGROUND ....................................................................................... 2

ARGUMENT ....................................................................................................................... 2

I.     THE COURT IS LIKELY TO GRANT FINAL APPROVAL TO THE PROPOSED
SETTLEMENT ........................................................................................................ 2

       A.    The Settlement Is Procedurally Fair Because It Was Achieved Through
Extensive Arm's-Length Negotiation with the Assistance of a Respected
and Experienced Mediator (Rule 23(e)(2)(B)) .................................................4

       B.    The Settlement Is Substantively Fair .................................................................4

            1.    The Complexity, Expense, and Likely Duration of the Litigation
(*Grinnell* Factor #1) ...............................................................................5

            2.    The Reaction of the Settlement Class (*Grinnell* Factor #2).......................5

            3.    The Stage of the Proceedings and the Amount of Discovery
Completed (*Grinnell* Factor #3)..............................................................5

            4.    The Risks of Establishing Liability and Damages
(*Grinnell* Factors #4, 5)..........................................................................7

            5.    The Risks of Maintaining a Class Through Trial
(*Grinnell* Factor #6) ...............................................................................7

            6.    FTN's Ability to Withstand a Greater Judgment
(*Grinnell* Factor #7) ...............................................................................7

            7.    The Range of Reasonableness of the Settlement Fund in Light of
the Best Possible Recovery and Attendant Risks of Litigation
(*Grinnell* Factors #8, 9)..........................................................................7

       C.    The Remaining Rule 23(e)(2) Factors Support Preliminary Approval
of the Settlement .............................................................................................9

            1.    Rule 23(e)(2)(A) – Plaintiffs and Co-Lead Counsel Have
Adequately Represented the Settlement Class...........................................9

            2.    Rule 23(e)(2)(C) – the Monetary Relief, Cooperation, and
Remediation Measures Provided by Deutsche Bank Are Adequate,
Taking into Account the Costs and Risks of Further Litigation and
All Other Relevant Factors .....................................................................10

            3.    Rule 23(e)(2)(D) – the Settlement Treats Class Members
Equitably Relative to Each Other ............................................................11

II.    CERTIFICATION OF THE SETTLEMENT CLASS IS WARRANTED ......................11

III.   THE PROPOSED MANNER OF NOTICE IS THE BEST NOTICE
PRACTICABLE UNDER THE CIRCUMSTANCES ....................................................11

i

IV.     THE FORMS OF NOTICE ARE REASONABLE ............................................................ 13

CONCLUSION ............................................................................................................................ 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Beckman v. KeyBank, N.A.*,
  293 F.R.D. 467 (S.D.N.Y. 2013) ............................................................................5

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberger v.*
  *Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) ...............................................3, 8

*In re AOL Time Warner, Inc.*,
  No. 02 CIV. 5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ...............................5, 7

*In re Austrian and German Bank Holocaust Litig.*,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000), *aff'd sub nom.*, *D'Amato v. Deutsche*
  *Bank*, 236 F.3d 78 (2d Cir. 2001) ........................................................................4

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
  No. 14-cv-2058, 2015 WL 9266493 (N.D. Cal. Dec. 17, 2015)............................................8

*In re Crude Oil Commodity Futures Litig.*,
  No. 11-cv-3600 (S.D.N.Y.)..................................................................................12

*In re Currency Conversion Fee Antitrust Litig.*,
  01-MD-1409, 2006 WL 3247396 (S.D.N.Y. Nov. 8, 2006)................................................4, 8

*In re Global Crossing Sec. and ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ..........................................................................5

*In re Libor-Based Fin. Instruments Antitrust Litig.*,
  No. 11-md-2262 (NRB) ...................................................................................12

*In re Linerboard Antitrust Litig.*,
  292 F. Supp. 2d 631 (E.D. Pa. 2003) ......................................................................8

*In re Nasdaq Mkt.-Makers Antitrust Litig.*,
  176 F.R.D. 99 (S.D.N.Y. 1997) ...........................................................................5

*In re Nissan Radiator/Transmission Cooler Litig.*,
  10 CV 7493 (VB), 2013 WL 4080946 (S.D.N.Y. May 30, 2013)............................................6

*In re Packaged Ice Antitrust Litig.*,
  No. 08-MD-01952, 2011 WL 717519 (E.D. Mich. Feb. 22, 2011)..........................................8

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
  330 F.R.D. 11 (S.D.N.Y. 2019) .......................................................................2, 3, 8, 10

*In re Pressure Sensitive Labelstock Antitrust Litig.*,
   584 F. Supp. 2d 697 (M.D. Pa. 2008) ...................................................................8

*In re: SSA Bonds Antitrust Litig.*,
   No. 1:16-cv-3711(ER) (S.D.N.Y. Mar. 5, 2018) ....................................................8

*In re Warfarin Sodium Antitrust Litig.*,
   212 F.R.D. 231 (D. Del. 2002) .............................................................................8

*Laydon v. Mizuho Bank, Ltd.*,
   No. 12-cv-3419 (S.D.N.Y) ..................................................................................12

*Maley v. Del Glob. Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) ...................................................................1

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
   237 F.R.D. 26 (E.D.N.Y. 2006) ............................................................................4

*Sonterra Capital Master Fund Ltd. v. Credit Suisse Group AG*,
   No. 1:15-cv-00871 (S.D.N.Y. Aug. 16, 2017) .......................................................8

*Sonterra Capital Master Fund, Ltd. v. UBS AG*,
   No. 15-cv-5844 (S.D.N.Y.) .................................................................................12

*Sullivan v. Barclays plc*,
   No. 13-cv-2811 (S.D.N.Y.) .................................................................................12

*Wal-Mart Stores Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005) ............................................................................12, 13

**Statutes, Rules, and Regulations**

15 U.S.C.
   §1 note .............................................................................................................6

Federal Rules of Civil Procedure
   Rule 23 ...............................................................................................................3
   Rule 23.1 ..........................................................................................................10
   Rule 23(b)(3) ....................................................................................................12
   Rule 23(c)(2)(B) ..........................................................................................12, 13
   Rule 23(e) ...........................................................................................................2
   Rule 23(e)(1)(B) ...............................................................................................11
   Rule 23(e)(2) ...............................................................................................2, 3, 9
   Rule 23(e)(2)(A) .................................................................................................9
   Rule 23(e)(2)(B) .................................................................................................4
   Rule 23(e)(2)(C) ...............................................................................................10
   Rule 23(e)(2)(C)(i) ...........................................................................................10
   Rule 23(e)(2)(C)(ii) ..........................................................................................10

Rule 23(e)(2)(C)(iii)..................................................................................................................10
Rule 23(e)(2)(C)(iv)...............................................................................................................10, 11
Rule 23(e)(2)(D) ........................................................................................................................11
Rule 23(e)(3)...........................................................................................................................3, 11

## <u>INTRODUCTION</u>

If approved, the FTN Settlement[1] will create a Settlement Fund of $14.5 million (plus interest earned between preliminary approval and distribution), identify and establish GSE market specific antitrust compliance reforms, and obligate FTN to provide substantial cooperation to Plaintiffs in pursuing their claims against the remaining Defendants.   The Settlement Fund recovers 18.6% to 36.5% of FTN's proportionate share of Plaintiffs' preliminary estimate of class wide single damages potentially recoverable at trial.   FTN's cooperation is being provided at an early stage, as Plaintiffs litigate their claims under the pressure of a May 4, 2020 trial date and a partial six-month discovery stay, thus enhancing the value of the cooperation to Plaintiffs.   The Settlement also establishes important antitrust compliance-remediation measures that Plaintiffs believe are critical to preventing and detecting future anticompetitive conduct in the GSE Bond market.

Based on their experience and knowledge of the claims and defenses at issue in this Action, Co-Lead Counsel believe that the Settlement is in the best interests of the Settlement Class.   *See Maley v. Del Glob. Techs. Corp*., 186 F. Supp. 2d 358, 366 (S.D.N.Y. 2002) (stating that '"great weight' is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation").[2]   Each of the Plaintiffs also wholly supports the Settlement.

The FTN Stipulation is essentially identical to the Deutsche Bank Stipulation (ECF No. 257-1), and to the extent there are differences, these differences are inconsequential to the class

---

[1]     Unless otherwise defined herein, all capitalized terms have the same meaning as set out in the Stipulation and Agreement of Settlement with First Tennessee Bank & FTN Financial Securities Corp. (collectively, "FTN") (the "Stipulation"), attached as Ex. 1 to the Declaration of Christopher M. Burke ("Burke Decl."), filed concurrently herewith.

[2]     Unless otherwise noted, citations are omitted and emphasis is added.

action settlement process.   Thus, if the FTN and Deutsche Bank Stipulations are both preliminarily approved, Plaintiffs propose to combine notice of these settlements to the Settlement Class and consolidate the claims process, distribution, and other settlement procedures.   The proposed notice plan is summarized in Exhibit 3 to the Burke Decl. and described in this Memorandum.   Also accompanying this filing is a proposed order granting preliminary approval of the FTN and Deutsche Bank settlements (together, the "Settlements") and authorizing notice of their terms, which supersedes the prior proposed order granting preliminary approval of the Deutsche Bank Settlement and its exhibits.

## PROCEDURAL BACKGROUND

Plaintiffs incorporate by reference the Procedural Posture set forth in their Memorandum of Law in Support of Preliminary Approval of the Stipulation and Agreement of Settlement with Deutsche Bank Securities, Inc. (ECF No. 256) ("Deutsche Bank Memo"), which was filed on September 11, 2019.

## ARGUMENT

**I.     THE COURT IS LIKELY TO GRANT FINAL APPROVAL TO THE PROPOSED SETTLEMENT**

Rule 23(e) requires court approval of a proposed class action settlement upon finding that the proposal "is fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2).   The preliminary approval process is governed by a "likelihood standard" – requiring the Court to assess whether the parties have shown that "the court will *likely* be able to grant final approval and certify the class." *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 28 n.21 (S.D.N.Y. 2019) (emphasis in original).   Under the December 1, 2018 amendments to Rule 23(e), in weighing preliminary approval, the Court must consider whether:

(A)     the class representatives and class counsel have adequately represented the class;

(B)      the proposal was negotiated at arm's length;

(C)      the relief provided for the class is adequate, taking into account:

　　　(i)    the costs, risks, and delay of trial and appeal;

　　　(ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required;

　　　(iii)  the terms of any proposed award of attorney's fees, including timing of payment; and

　　　(iv)   any agreement required to be identified under Rule 23(e)(3); and

(D)      the proposal treats class members equitably relative to each other.

FED. R. CIV. P. 23(e)(2).  The Advisory Committee Notes to the 2018 Amendments indicate that the amendments were meant to codify the existing preliminary approval process that is customary in class action settlements in each circuit.  *Id.*  Therefore, "the new Rule 23 factors add to, rather than displace, the *Grinnell* factors" traditionally considered in the Second Circuit to evaluate the substantive fairness of a settlement during the preliminary approval process. *Payment Card*, 330 F.R.D. at 29.

Grinnell requires the Court to weigh the following factors to determine whether a proposed settlement is fair, reasonable, and adequate:

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).  In undertaking this review, "a full fairness analysis is unnecessary at this stage; preliminary approval is appropriate where a

proposed settlement is merely within the range of possible approval." *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 34 (E.D.N.Y. 2006).

### A. The Settlement Is Procedurally Fair Because It Was Achieved Through Extensive Arm's-Length Negotiation with the Assistance of a Respected and Experienced Mediator (Rule 23(e)(2)(B))

To determine whether a settlement is procedurally fair, courts evaluate the process undertaken to achieve it. The FTN Settlement is entitled to a presumption of fairness because it was reached by capable counsel with the assistance of an experienced mediator, Jed D. Melnick, Esq. *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000), *aff'd sub nom.*, *D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) (stating that where a settlement is the "product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation," the settlement enjoys a "presumption of fairness").

On July 8, 2019, the Parties engaged in mediation before Mr. Melnick who confirms that the negotiation process was *bona fide*, at times extremely contentious, and advocated by sophisticated and capable counsel on both sides. Burke Decl., Ex. 2, ¶7. After a full day of mediation, the Parties remained far apart, and the mediation was suspended. *Id.*, ¶5. Following the mediation, the Parties remained in contact with each other and the mediator and continued to explore the possibility of resolving this Action. *Id.*, ¶6. On September 3, 2019, the Parties reached an agreement in principle to settle this Action for $14.5 million, subject to agreement on other material terms. *Id.*

### B. The Settlement Is Substantively Fair

At preliminary approval, the Court "must make 'a preliminary evaluation' as to whether the settlement is fair, reasonable and adequate." *In re Currency Conversion Fee Antitrust Litig.*, 01-MD-1409, 2006 WL 3247396, at *5 (S.D.N.Y. Nov. 8, 2006). Where, as here, the Settlement is achieved through a fair process and the Settlement's terms are within the "range of possible

4

approval," preliminary approval is warranted.  *See In re Nasdaq Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997).

### 1. The Complexity, Expense, and Likely Duration of the Litigation (*Grinnell* Factor #1)

Plaintiffs incorporate by reference the Grinnell Factor #1 arguments set out in the Deutsche Bank Memo.

### 2. The Reaction of the Settlement Class (*Grinnell* Factor #2)

Plaintiffs incorporate by reference the Grinnell Factor #2 arguments set out in the Deutsche Bank Memo.

### 3. The Stage of the Proceedings and the Amount of Discovery Completed (*Grinnell* Factor #3)

In assessing the fairness of a settlement at preliminary approval, the Court inquires as to "whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement."  *In re AOL Time Warner, Inc.*, No. 02 CIV. 5575 (SWK), 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006); *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004) ("[T]he question is whether the parties had adequate information about their claims.").  Further, "[c]ourts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 474-75 (S.D.N.Y. 2013).

Co-Lead Counsel's knowledge of the merits and potential weaknesses of Plaintiffs' claims supports preliminary approval of the Settlement.  Co-Lead Counsel undertook an eight-month investigation, which included engaging two sets of experts who analyzed three datasets, interviewing former GSE Bond traders, and reviewing publicly available information.  Co-Lead Counsel also briefed Defendants' first motion to dismiss and, on September 23, 2019, opposed

certain Defendants' second motion to dismiss.  Oral argument on the second motion to dismiss is scheduled for September 27, 2019.

In addition, Co-Lead Counsel participated in two initial proffer sessions involving Deutsche Bank, which provided Plaintiffs with cooperation pursuant to the Antitrust Criminal Penalty Enhancement and Reform Act of 2004 ("ACPERA").[3]   Co-Lead Counsel also participated in numerous follow-up proffers with counsel for Deutsche Bank, during which the bank proffered key factual allegations that Plaintiffs incorporated in the operative complaint. *See*, *e.g.*, *In re Nissan Radiator/Transmission Cooler Litig.*, 10 CV 7493 (VB), 2013 WL 4080946, at *7 (S.D.N.Y. May 30, 2013) (stating "[a]lthough the parties have not engaged in extensive discovery, . . . the plaintiffs conducted an investigation prior to commencing the action, retained experts, and engaged in confirmatory discovery in support of the proposed settlement").

Discovery has also commenced.  To date, Co-Lead Counsel have engaged in dozens of meets and confers with Defendants, and some Defendants have begun to produce compliance and other policy documents and organizational charts.  Plaintiffs have also met and conferred with Defendants about the scope of discovery regarding the four named Plaintiffs and are very near agreement on all issues.  Plaintiffs anticipate producing relevant and responsive documents to Defendants in the coming weeks.

Finally, Co-Lead Counsel have engaged in three full-day mediation sessions with Deutsche Bank and FTN, separately.   In both mediations, Plaintiffs submitted mediation

---

[3]      Pub. L. No. 108-237, §213(a)-(b), 118 Stat. 661, 666-668 (June 22, 2004), *as amended by* Pub. L. No. 111-190, 124 Stat. 1275 (June 9, 2010), *codified as amended at* 15 U.S.C. §1 note.

statements in which they discussed, among other things, the litigation risks Plaintiffs face in pursuing their claims, as well as potential damages.

Co-Lead Counsel '"have engaged in sufficient investigation of the facts to enable the Court to "intelligently make . . . an appraisal" of the Settlement.'" *AOL Time Warner*, 2006 WL 903236, at *10.  Accordingly, this factor weighs in favor of preliminary approval.

### 4.   The Risks of Establishing Liability and Damages (*Grinnell* Factors #4, 5)

Plaintiffs incorporate by reference the Grinnell Factor #4 and #5 arguments set out in the Deutsche Bank Memo.

### 5.   The Risks of Maintaining a Class Through Trial (*Grinnell* Factor #6)

Plaintiffs incorporate by reference the Grinnell Factor #6 arguments set out in the Deutsche Bank Memo.

### 6.   FTN's Ability to Withstand a Greater Judgment (*Grinnell* Factor #7)

Plaintiffs incorporate by reference the Grinnell Factor #7 arguments set out in the Deutsche Bank Memo.

### 7.   The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and Attendant Risks of Litigation (*Grinnell* Factors #8, 9)

In recommending that the Court preliminarily approve the Settlement, Plaintiffs have taken into account estimated damages, the benefits and risks of continuing litigation against FTN in light of the cooperation the bank has agreed to provide, and the range of possible outcomes in the absence of the Settlement.

Using the seven years of data that Deutsche Bank provided as cooperation, Plaintiffs developed a preliminary damages model that estimates a range of class wide single damages

potentially recoverable at trial of between $857 million and $1.68 billion.[4]  Given FTN's market

share over the class period of 4.63% (Third Amended Complaint, ECF No. 254, ¶135 (Table 1)),

the $14.5 million Settlement Amount therefore represents 18.6% to 36.5% of FTN's

proportionate share of the preliminary estimate.  The Settlement does not alter the maximum

recoverable damages if Plaintiffs prevail at trial against the other Defendants.  Burke Decl., Ex.

1, ¶9; *see also In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 14-cv-2058, 2015 WL

9266493, at *6 (N.D. Cal. Dec. 17, 2015) (noting the right to seek entire damages from non-

settling defendants "provides increased value . . . by creating added incentive for the remaining

defendants to settle or allowing greater recovery for the Plaintiffs at trial").  Plaintiffs

respectfully submit that the recovery from FTN is within the range of reasonableness.[5]

The Settlement also delivers FTN's cooperation to Plaintiffs in pursuing their claims

against the other Defendants.  *See In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2011

WL 717519, at *10 (E.D. Mich. Feb. 22, 2011) (recognizing value of early cooperation);

*Pressure Sensitive Labelstock*, 584 F. Supp. 2d at 702 (same); *Linerboard*, 292 F. Supp. 2d at

643 (same).  FTN's cooperation obligations include the production of data and documents,

---

[4]     "'[T]he standard for evaluating settlement involves a comparison of the settlement amount with the estimated single damages,' not treble damages."  *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 257-58 (D. Del. 2002).

[5]     *See, e.g.*, *In re: SSA Bonds Antitrust Litig.*, No. 1:16-cv-3711(ER), ECF No. 431, at 2 (S.D.N.Y. Mar. 5, 2018) (preliminarily approving first-in settlement with Bank of America for $17,000,000 and cooperation); *Sonterra Capital Master Fund Ltd. v. Credit Suisse Group AG*, No. 1:15-cv-00871, ECF No. 159 (S.D.N.Y. Aug. 16, 2017) (preliminarily approving first-in settlement with JPMorgan for $22,000,000 and cooperation); *In re Currency Conversion Fee Antitrust Litig.*, No. 01 MDL 1409, 2006 WL 3247396, at *6 (S.D.N.Y. Nov. 8, 2006) (preliminarily approving settlements "representing roughly 10-15% of the credit transaction fees collected by Defendants"); *Payment Card*, 330 F.R.D. at 49 (stating that the Second Circuit did not take issue with original settlement recovery of "2.5% of the largest possible estimate of actual damage to merchants"); *Grinnell Corp.*, 495 F.2d at 455 n.2 (stating that "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery").

deposition and trial testimony, evidentiary declarations, and further cooperation that the Parties agree to.  Burke Decl., Ex. 1, ¶¶16-17.  FTN is obligated to provide this cooperation until judgment is final against all Defendants.  Given this Action's condensed pre-trial schedule, the hurdle occasioned by the partial six-month DOJ discovery stay, and the May 4, 2020 trial date, FTN's cooperation will be an extraordinarily valuable resource to Plaintiffs in pursuing their claims against the remaining Defendants.

Importantly, FTN has also agreed to establish and maintain antitrust-compliance remediation measures so long as it is engaged in the GSE Bond market.  Burke Decl., Ex. 1, ¶¶18-19.  These measures include FTN's agreement to maintain a GSE specific antitrust-compliance policy that satisfies five identified objectives – rigorous compliance training; established culture of compliance; strong oversight; dedication of corporate resources; and robust risk assessment.  *Id.*, ¶18.  In addition, FTN has committed to meet periodically with Pennsylvania Treasury to discuss its policies, and provide cooperation relating to antitrust-compliance best practices in the GSE Bond market.  *Id.*, ¶19.  Plaintiffs believe these measures are necessary to preventing and detecting future anticompetitive conduct in the GSE Bond market and indispensable to restoring market integrity.

### C.  The Remaining Rule 23(e)(2) Factors Support Preliminary Approval of the Settlement

#### 1.  Rule 23(e)(2)(A) – Plaintiffs and Co-Lead Counsel Have Adequately Represented the Settlement Class

Plaintiffs incorporate by reference the Rule 23(e)(2)(A) arguments set out in the Deutsche Bank Memo.

**2. Rule 23(e)(2)(C) – the Monetary Relief, Cooperation, and Remediation Measures Provided by Deutsche Bank Are Adequate, Taking into Account the Costs and Risks of Further Litigation and All Other Relevant Factors**

To assess whether the relief is adequate, Rule 23(e)(2)(C) requires the Court to consider:

(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

FED. R. CIV. P. 23(e)(2)(C)(i-iv).  Plaintiffs previously discussed Rule 23(e)(2)(C)(i) in Sections I.B.1, I.B.4, and I.B.5,[6] *supra*.  The remaining Rule 23(e)(2)(C) factors support preliminarily approving the Settlement.

**a. Rule 23(e)(2)(C)(ii) – Effectiveness of Any Proposed Method of Distributing Relief to the Class**

Plaintiffs incorporate by reference the Rule 23(e)(2)(C)(ii) arguments set out in the Deutsche Bank Memo.

**b. Rule 23(e)(2)(C)(iii) – the Terms of Any Proposed Award of Attorneys' Fees**

Plaintiffs incorporate by reference the Rule 23(e)(2)(C)(iii) arguments set out in the Deutsche Bank Memo.[7]

---

[6] *Grinnell* factors 1, 4, 5, and 6 are subsumed by the new Rule 23(e)(2)(C)(i), which analyzes the costs, risks, and delay of trial and appeal.  *Payment Card*, 330 F.R.D. at 36 (noting that this assessment implicates several *Grinnell* factors, including: (i) the complexity, expense and likely duration of the litigation; (ii) the risks of establishing liability; (iii) the risks of establishing damages; and (iv) the risks of maintaining the class through the trial, and considering each *Grinnell* factor in its analysis).

[7] There are no fee-sharing agreements to disclose pursuant to Local Civil Rule 23.1.

       **c.**       **Rule 23(e)(2)(C)(iv) – Any Agreement Required to Be Identified Under Rule 23(e)(3)**

The sole agreement required to be disclosed under Rule 23(e)(3) is a "Supplemental Agreement" the Parties executed that provides FTN with the qualified right to withdraw or terminate the Settlement upon the occurrence of certain conditions.  Burke Decl., Ex. 1, ¶44. This qualified right arises if potential Settlement Class Members who meet certain criteria exclude themselves from the Settlement Class.  *Id.*  To determine whether certain conditions are met, the Parties have the right, but not the obligation, to subpoena putative Settlement Class Members that exclude themselves for documents pertinent to the threshold.  Burke Decl., Ex. 1, ¶45.  These types of agreements are common in class action settlements and are generally allowed to remain confidential because "knowledge of the specific number of opt outs that will vitiate a settlement might encourage third parties to solicit class members to opt out."  *See generally* MANUAL FOR COMPLEX LITIGATION (4th) §21.631; *see also* Fed. R. Civ. P. 23(e), 2003 Advisory Committee Note, Subdivision (e).

       **3.**       **Rule 23(e)(2)(D) – the Settlement Treats Class Members Equitably Relative to Each Other**

Plaintiffs incorporate by reference the Rule 23(e)(2)(D) arguments set out in the Deutsche Bank Memo.

## II.      CERTIFICATION OF THE SETTLEMENT CLASS IS WARRANTED

Plaintiffs incorporate by reference the Settlement Class certification arguments set out in the Deutsche Bank Memo.

## III.      THE PROPOSED MANNER OF NOTICE IS THE BEST NOTICE PRACTICABLE UNDER THE CIRCUMSTANCES

Rule 23(e)(1)(B) provides that, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Where, as here, notice is to be

provided to a settlement class certified under Rule 23(b)(3), the Court is required to "direct to class members the best notice that is practicable under the circumstance[s]." FED. R. CIV. P. 23(c)(2)(B). "The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." *Wal-Mart Stores,* 396 F.3d at 113. The proposed notice plan is described below and also summarized by the Claims Administrator[8] in Exhibit 3 to the Burke Decl.

Plaintiffs propose to send via first class mail the Mail Notice and Claim Form (together, the "Notice Packet") (attached as Exhibits 1 and 2 to the proposed Preliminary Approval Order) to potential members of the Settlement Class. Deutsche Bank and FTN agreed to supply the names and addresses of potential Settlement Class Members who or which can be identified based on records within the banks' possession. Plaintiffs have requested parallel information from the other Defendants and are conferring with them in an attempt to reach an agreement. In addition, Co-Lead Counsel and the Claims Administrator have undertaken additional research to identify potential Settlement Class Members, including lists of large traders in GSE Bond Transactions (identified by Bloomberg), regional banks (available from the Federal Home Loan Bank's membership list), and credit unions.

In addition, the Claims Administrator will implement a robust nominee mailing process that will further facilitate the distribution of notice to potential members of the Settlement Class.

---

[8] Plaintiffs propose that the Court authorize A.B. Data, Ltd. ("A.B. Data") to be the Claims Administrator. Plaintiffs selected A.B. Data following a multi-party RFP process. A.B. Data was the lowest cost provider and has experience in administering class action settlements involving non-standard securities in over-the-counter and exchange markets (*e.g.*, *Laydon v. Mizuho Bank, Ltd.*, No. 12-cv-3419 (S.D.N.Y) and *Sonterra Capital Master Fund, Ltd. v. UBS AG*, No. 15-cv-5844 (S.D.N.Y.) (Euroyen-based derivatives); *Sullivan v. Barclays plc*, No. 13-cv-2811 (S.D.N.Y.) (Euribor products); *In re Libor-Based Fin. Instruments Antitrust Litig.*, No. 11-md-2262 (NRB) (exchange-based products); *In re Crude Oil Commodity Futures Litig.*, No. 11-cv-3600 (S.D.N.Y.) (exchange-traded products)).

The Claims Administrator maintains a database of the approximately 5,000 of the largest and most common banks, brokers, and other nominees who are responsible for conducting financial transactions, including GSE Bond Transactions, on behalf of others.

In addition to mailing Notice Packets, Plaintiffs propose that the Publication Notice (attached as Exhibit 3 to the proposed Preliminary Approval Order) will be published in international financial news outlets (*The Wall Street Journal*, *The New York Times*, *Financial Times*, and *The Bond Buyer*) and as a global press release through PR Newswire, which distributes to the news desks of more than 10,000 newsrooms, including print, broadcast, and digital websites. The Claims Administrator will establish and maintain a Settlement Website, where Settlement Class Members can obtain detailed information about the case and the Settlements. The Claims Administrator will also purchase banner ads on Zacks.com and Barchart.com, linking to the Settlement Website. Finally, the Claims Administrator will establish a telephone helpline and monitor an email address to which Settlement Class Members may write.

Such multi-faceted notice programs combining individual mail notice and publication notice have been approved by federal courts in numerous complex class actions. *See, e.g.*, *Wal-Mart Stores*, 396 F.3d at 105 (affirming "notice plan that required mailing the settlement notice to class members and publishing a condensed version of the settlement notice in numerous widely-distributed publications"). Accordingly, Plaintiffs respectfully request that the Court approve the proposed manner of effectuating notice.

## IV. THE FORMS OF NOTICE ARE REASONABLE

The Mail Notice exceeds the requirements of Rule 23(c)(2)(B), as it provides Settlement Class Members, in "plain, easily understood language," with descriptions of the nature of the Action, including the claims and defenses at issue; the definition of the Settlement Class; how

and when to object and opt out; and the binding effect of the Judgments, if the Court approves the Settlements.  Further, the Publication Notice will be widely disseminated, further supporting the reasonableness of the notice.  Accordingly, Plaintiffs respectfully request that the Court approve the proposed forms of notice.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an order preliminarily approving the Settlements and authorizing notice.

Dated:  September 24, 2019

*s/ Christopher M. Burke*
CHRISTOPHER M. BURKE (CB-3648)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
600 W. Broadway, Suite 3300
San Diego, CA 92101
Tel:  (619) 233-4565
Fax: (619) 233-0508
cburke@scott-scott.com

DAVID R. SCOTT (DS-8053)
AMANDA F. LAWRENCE (AL-8804)
KRISTEN ANDERSON (KA-1965)
DONALD A. BROGGI (DB-9661)
THOMAS BOARDMAN (TB-0530)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Ave., 17th Floor
New York, NY 10169
Tel:  (212) 223-6444
Fax: (212) 223-6334
david.scott@scott-scott.com
alawrence@scott-scott.com
kanderson@scott-scott.com
dbroggi@scott-scott.com
tboardman@scott-scott.com

*Interim Co-Lead Counsel for the Class and Attorneys for Plaintiff City of Birmingham Retirement and Relief System*

VINCENT BRIGANTI
CHRISTIAN LEVIS
MARGARET MACLEAN
ROLAND R. ST. LOUIS, III
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Tel:  (914) 997-0500
Fax: (914) 997-0035
vbriganti@lowey.com
clevis@lowey.com
mmaclean@lowey.com
rstlouis@lowey.com

*Interim Co-Lead Counsel for the Class and Attorneys for Plaintiff Joseph M. Torsella is the Treasurer of the Commonwealth of Pennsylvania and the head of the Pennsylvania Office of the State Treasurer*

TODD A. SEAVER
CARL N. HAMMARSKJOLD
**BERMAN TABACCO**
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Tel:  (415) 433-3200
Fax: (415) 433-6382
tseaver@bermantabacco.com
chammarskjold@bermantabacco.com

CHRISTOPHER CRAIG
Chief Counsel
**PENNSYLVANIA TREASURY**
**DEPARTMENT**
**OFFICE OF THE CHIEF COUNSEL**
129 Finance Building
Harrisburg, PA 17120
ccraig@patreasury.gov

*Attorney for Plaintiff Joseph M. Torsella, in*
*his official capacity as the Treasurer of the*
*Commonwealth of Pennsylvania*

LESLIE R. STERN
**BERMAN TABACCO**
One Liberty Square
Boston, MA 02109
Tel:  (617) 542-8300
Fax: (617) 542-1194
lstern@bermantabacco.com

*Attorneys for Plaintiffs Electrical Workers*
*Pension Fund Local 103, I.B.E.W., and Local*
*103, I.B.E.W. Health Benefit Plan*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 24, 2019, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

*s*/ Christopher M. Burke

Christopher M. Burke

16