UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE GSE BONDS ANTITRUST
LITIGATION

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _____

19-cv-1704 (JSR)

OPINION AND ORDER

JED S. RAKOFF, U.S.D.J.

This putative class action alleges a conspiracy among

several large banks to fix the secondary market prices of GSE

bonds. On September 11, 2019, plaintiffs moved for preliminary

approval of a stipulation and settlement agreement with

defendant Deutsche Bank Securities, Inc. ("DB"). See Mot. for

Prelim. Approval, ECF No. 255; Burke Decl., Exh. 1, ECF No. 257

("DB Settlement Agreement"). On September 24, 2019, plaintiffs

also moved for preliminary approval of a stipulation and

settlement agreement with First Tennessee Bank, N.A. and FTN

Financial Securities Corp. ("FTN"). Mot. for Prelim. Approval,

ECF No. 265; Burke Decl., Exh. 1, ECF No. 267 ("FTN Settlement

Agreement"). Shortly thereafter, the Court held a preliminary

approval fairness hearing for both proposed settlements. See

Hearing Transcript, ECF No. 286.

On October 29, 2019 the Court preliminarily approved both

proposed settlements. See Preliminary Approval Order, ECF No.

296. The Court now elaborates on the reasons for this

1

preliminary approval, as well as some remaining concerns with the proposed settlements, especially in the case of the FTN agreement.

## I.   Legal Background

Fed. R. Civ. P. 23(e) requires judicial approval for any class action settlement. A class action settlement approval procedure typically occurs in two stages: (1) preliminary approval, where "prior to notice to the class a court makes a preliminary evaluation of fairness," and (2) final approval, where "notice of a hearing is given to the class members, [and] class members and settling parties are provided the opportunity to be heard on the question of final court approval." In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig., 330 F.R.D. 11, 28 (E.D.N.Y. 2019). Even at the preliminary approval stage, the Court's role in reviewing the proposed settlement "is demanding because the adversariness of litigation is often lost after the agreement to settle." Zink v. First Niagara Bank, N.A., 155 F.Supp.3d 297, 308 (W.D.N.Y. 2016) (citation omitted).

On December 1, 2018, new amendments to Rule 23 took effect which altered the standards that guide a court's preliminary approval analysis. Prior to these changes, Rule 23 did not specify a standard, and courts in the Second Circuit interpreted Rule 23 to only require the settlement to be "within the range

2

of possible final approval." In re NASDAQ Market-Makers
Antitrust Litig., 176 F.R.D. 99, 102 (S.D.N.Y. 1997). Under the
new, more exacting standards, a district court must consider
whether the court "will likely be able to: (i) approve the
proposal under Rule 23(e)(2); and (ii) certify the class for
purposes of judgment on the proposal." In re Payment Card., 330
F.R.D. at 28.

II. Likelihood of Approval Under Rule 23(e)(2) and the Grinnell
    Factors

To be likely to approve a proposed settlement under Rule
23(e)(2), the Court must find "that it is fair, reasonable, and
adequate." The newly amended Rule 23 enumerates four factors for
the Court to consider as part of this inquiry: (1) adequacy of
representation, (2) existence of arm's-length negotiations, (3)
adequacy of relief, and (4) equitableness of treatment of class
members. Fed. R. Civ. P. 23(e)(2). Prior to the 2018 amendments,
courts in the Second Circuit considered whether a settlement was
"fair, reasonable, and adequate" under nine factors set out in
City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir.
1974). The Advisory Committee Notes to the 2018 amendments
indicate that the four new Rule 23 factors were intended to
supplement rather than displace these "Grinnell" factors. See
2018 Advisory Notes to Fed. R. Civ. P. 23, Subdiv. (e)(2) ("2018

3

Advisory Note"). Accordingly, the Court considers both sets of factors in its analysis, noting where they overlap.

a. Adequacy of Representation

Rule 23(e)(2)(A) requires a Court to find that "the class representatives and class counsel have adequately represented the class" before preliminarily approving a settlement. "Determination of adequacy typically 'entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.'" Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc., 502 F.3d 91, 99 (2d Cir. 2007) (quoting Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d 52, 60 (2d Cir. 2000)).

Here, plaintiffs' interests are aligned with other class members' interests because they suffered the same injuries-- monetary losses resulting from GSE bond transactions with settling defendants. Because of these injuries, plaintiffs have an "interest in vigorously pursuing the claims of the class." Denney v. Deutsch Bank AG, 443 F.3d 253, 268 (2d Cir. 2006). Co-Lead Counsel have demonstrated that they are qualified, experienced, and able to conduct the litigation, as evidenced in their interactions with the Court as well as with a mediator. See Adler Decl. ¶ 6, ECF. 257 Exh. 1. Rule 23(e)(2)(A)'s

4

adequacy of representation prong thus weighs in favor of approval.

## b. Presence of Arm's-Length Negotiations

Rule 23(e)(2)(B) requires procedural fairness, as evidenced by the fact that "the proposal was negotiated at arms length." If a class settlement is reached through arm's-length negotiations between experienced, capable counsel knowledgeable in complex class litigation, "the Settlement will enjoy a presumption of fairness." In re Austrian & German Bank Holocaust Litig., 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000), aff'd sub nom., D'Amato v. Deutsche Bank, 236 F.3d 78 (2d Cir. 2001). Further, a mediator's involvement in settlement negations can help demonstrate their fairness. In re Payment Card, 330 F.R.D. at 35. Here, the parties engaged in mediation and the mediator's declaration confirms that the settlement agreements were "a product of extensive and informed negotiations conducted at arm's length" by "sophisticated and capable counsel." Adler Decl. ¶ 6, ECF. 257 Exh. 1. Rule 23(e)(2)(B) thus weighs in favor of preliminary approval.

## c. Adequacy of Relief

Rule 23(e)(2)(C) requires examining whether relief for the class is adequate, taking into account:

   (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to

the class, including the method of processing class-member claims, if required; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3). This inquiry overlaps significantly with a number of Grinnell factors, which help guide the Court's application of Rule 23(e)(2)(C)(i). In re Payment Card, 330 F.R.D. at 36. For the reasons below, the Court finds that most of these factors weigh in favor of approval of the settlement agreements, though some factors raise some questions as to whether the FTN Settlement Agreement is adequate.

i.    Rule 23(e)(2)(C) Adequacy Factors

1. Costs, Risk, Delay of Trial and Appeal

In order to assess adequacy under Rule 23(e)(2)(C)(i), "courts may need to forecast the likely range of possible classwide recoveries and the likelihood of success in obtaining such results." In re Payment Card, 330 F.R.D. at 36 (citing the 2018 Advisory Note). This inquiry overlaps significantly with a number of Grinnell factors. Id.

One relevant Grinnell factor is a consideration of the "complexity, expense and likely duration of the litigation." Grinnell, 495 F.2d at 463. Courts favor settlement when litigation is likely to be complex, expensive, or drawn out. Numerous federal courts have recognized that "[f]ederal

6

antitrust cases are complicated, lengthy, and bitterly fought," Wal-Mart Stores Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 118 (2d Cir. 2005), "as well as costly." In re Vitamin C Antitrust Litig., No. 06-MD-1738 (BMC), 2012 WL 5289514, at *4 (E.D.N.Y. Oct. 23, 2012). This antitrust case is not likely to be different. It involves numerous defendants and complex issues of fact and law related to the sale of GSE bonds at different points in time. Further issues are likely to arise at the class certification stage. Interlocutory appeals may arise after the Court's class certification decision, generating lengthy delays. Finally, even if plaintiffs "were to prevail at trial, post-trial motions and the potential for appeal could prevent the class members from obtaining any recovery for several years, if at all." Sykes v. Harris, No. 09-CV-8486, 2016 WL 3030156, at *12 (S.D.N.Y. May 24, 2016). This Grinnell factor thus weighs in favor of preliminary approval.

Another two related Grinnell factors, "the risks of establishing liability" and "the risks of establishing damages," also counsel in favor of preliminarily approving the settlement agreements. Grinnell, 495 F.2d at 463. To assess these factors, a court "should balance the benefits afforded the Class, including immediacy and certainty of recovery, against the continuing risks of litigation." In re Payment Card, 330 F.R.D. at 37. Given that multiple remaining defendants contend that

7

they can present a strong case against plaintiffs after discovery, see Ds. Mem. of Law in Support of Renewed Joint Motion to Dismiss the Third Amended Compl., ECF. '260 at 11 n.4, there is no guarantee that plaintiffs will be able to prove liability.

Furthermore, even if they prove liability, plaintiffs will still face difficulties inherent in proving damages. As the Second Circuit has noted, "the history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible damages, at trial, or on appeal." Wal-Mart Stores, Inc., 396 F.3d at 118 (quoting In re NASDAQ Market-Makers Antitrust Litig., 187 F.R.D. 465, 476 (S.D.N.Y. 1998)). These two Grinnell factors also weigh in favor of preliminary approval.

One final Grinnell factor, which requires a court to assess "the risks of maintaining a class through the trial," also supports preliminary approving the settlement agreement under Rule 23(e)(2)(C)(i). Grinnell, 495 F.2d at 463. Although the "risk of maintaining a class through trial is present in [every] class action," Guippone v. BH S & B Holdings LLC, No. 09-CV-1029, 2016 WL 5811888, at *7 (S.D.N.Y. Sept. 23, 2016) (citation omitted), "this factor [nevertheless] weighs in favor of settlement" where "it is likely that defendants would oppose class certification" if the case were to be litigated. Garland

8

v. Cohen & Krassner, No. 08-CV-4626, 2011 WL 6010211, at *8
(E.D.N.Y. Nov. 29, 2011) (citation omitted). Non-settling
defendants in this case have filed a response indicating that
they "expect to vigorously challenge class certification in this
litigation." Non-Settling Ds. Resp. to Pls. Motions for Prelim.
Approval of Settlements at 1, ECF. No. 271. This suggests that
the maintenance of the class would not be guaranteed if the
settling defendants went to trial. This factor thus also weighs
in favor of preliminary approval.

> ## 2. Effectiveness of the Proposed Method of Distributing
> ## Relief

Rule 23(e)(2)(C)(ii) requires courts to examine "the
effectiveness of any proposed method of distributing relief to
the class, including the method of processing class-member
claims." "A claims processing method should deter or defeat
unjustified claims, but the court should be alert to whether the
claims process is unduly demanding." 2018 Advisory Note.
Furthermore, while the plan of allocation "must be fair and
adequate," it "need only have a reasonable, rational basis,
particularly if recommended by experienced and competent class
counsel." In re WorldCom, Inc. Sec. Litig., 388 F. Supp. 2d 319,
344 (S.D.N.Y. 2005) (quoting Maley v. Del Global Technologies
Corp., 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002)). "[N]umerous
courts have held . . . [that] a plan of allocation need not be

9

perfect." In re EVCI Career Colleges Holding Corp. Sec. Litig., No. 05-CV-10240, 2007 WL 2230177, at *11 (S.D.N.Y. July 27, 2007) (collecting cases).

Plaintiffs' proposed Plan of Distribution, ECF No. 281, Exh. 4, meets this standard. Class co-counsel, who are experienced and competent in class actions, prepared the proposed Plan of Distribution in consultation with industry and economic consultants, as well as the proposed Claims Administrator. The Plan of Distribution would allocate the fund based on a calculation that accounts for the risk level, maturity, and volume of bonds purchased by each claimant. Initially, the plan would categorize GSE bonds into 31 categories based on the remaining years of maturity when purchased or sold. It would then assign a risk number to these categories and a multiplier based on this risk number. Next, the claims administrator would multiply each claimant's notional volume for each category of bond by the relevant multiplier, resulting in a transaction claim amount. Finally, the claimant's pro rata share of the settlement would be obtained by dividing the individual transaction claim amount by the total of all transaction claim amount. The plan would also implement a reasonable minimum payment threshold.

The Plan of Distribution represents a reasonable method of ensuring "the equitable and timely distribution of a settlement

10

fund without burdening the process in a way that will unduly waste the fund." In re Credit Default Swaps Antitrust Litig., 2016 WL 2731524, at *4 (S.D.N.Y. 2016). Although the minimum payment threshold might theoretically block some legitimate claims, plaintiffs' counsel has represented that this threshold will be no higher than the bare minimum necessary for the claims administrator to process a simple claim. See Hearing Transcript at 12, ECF No. 286; see also In re Gilate Satellite Networks, Ltd., No. 02-cv-1510, 2007 WL 1191048, at *9-10 (E.D.N.Y. Apr. 19, 2007) (approving a de minimis threshold in order to "save the settlement fund from being depleted by the administrative costs associated with claims unlikely to exceed those costs" and noting that "courts have frequently approved such thresholds"). This factor thus weighs in favor of preliminary approval.

### 3. The Terms of Any Proposed Award of Attorneys' Fees

Rule 23(e)(2)(C)(iii) requires courts to examine "the terms of any proposed award of attorneys' fees, including timing of payment." The total settlement fund will be $14.5 million for FTN and $15 million for DB. Co-counsel "will apply for an award of attorneys' fees not to exceed 26% of the Settlement Fund plus payment of Litigation expenses, as well as interest on the attorneys' fees and Litigation expenses." Pls. Mem. of Law in Support of Motion for Prelim. Approval of Stipulation and Agreement of Settlement with Deutsche Bank Securities 17, ECF.

No. 256 ("Pls. Mem. DB"); Pls. Mem. of Law in Support of Motion
for Prelim. Approval of Stipulation and Agreement of Settlement
with First Tennessee Bank, N.A. & FTN Financial Securities Group
10, ECF. No. 266 ("Pls. Mem. FTN"). Half of the fees will be
paid upon final approval of the settlement, and the other half
will be paid when distribution of the proceeds to claimants has
been very substantially completed. DB Settlement Agreement ¶ 29;
FTN Settlement Agreement ¶ 27.

Courts in this District have approved fees as high as 33.5%
from comparable class settlement funds, finding that they are
"well within the applicable range of reasonable percentage fund
awards." In re DDAPV Direct Purchaser Antitrust Litigation, No.
05-2237, 2011 WL 12627961 (S.D.N.Y. Nov. 28, 2011) (approving
33.5% from a class settlement fund of $20.25 million); see In re
Oxycontin Antitrust Litig., No. 04-md-1603-SHS, ECF No. 360
(S.D.N.Y. Jan. 25, 2011) (awarding 33.5% from a class settlement
fund of $16 million). The fee of 26% from a $14.5 million and
$15 million settlement fund thus does not weigh against
preliminary approval of the settlements.

However, as noted at oral argument, the Court will not approve
the payment of any of the costs of the mediation the parties
engaged in. Hearing Transcript at 6, ECF No. 286. The parties
did not seek the Court's approval before engaging in this
outside mediation, and there is a free mediation service

12

available in the Southern District of New York. The attorneys for each side thus must bear the mediation costs and not pass them on to the class.

### 4. Any Agreement Required to be Identified Under Rule 23(e)(3)

Rule 23(e)(2)(C)(iv) requires courts to consider "any agreement required to be identified by Rule 23(e)(3)," that is, "any agreement made in connection with the proposal." FTN has filed one such agreement under seal. The Court has reviewed the agreement and finds that it has no bearing on the preliminary approval analysis.

### ii. Grinnell Adequacy Factors

#### 1. Defendants' Ability to Withstand a Greater Judgment

The seventh Grinnell factor -- defendants' ability to withstand a greater judgment -- disfavors approval of both settlement agreements, but particularly the FTN Settlement Agreement. Grinnell, 495 F.2d at 463. Both DB and FTN are large corporations, and there is no evidence on the record that they could not withstand a greater judgment. Although courts have noted that a defendant's cooperation "tends to offset the fact that they would be able to withstand a larger judgment," In re Pressure Sensitive Labelstock Antitrust Litig., 584 F.Supp.2d 697, 702 (M.D. Pa. 2008), this mitigating factor only supports the adequacy of the DB Settlement Agreement. As discussed in

13

more detail below, only DB has offered cooperation that the Court may take account of at this stage in the approval process.

The seventh Grinnell factor thus weighs slightly against preliminary approval of the DB Settlement Agreement, and more strongly against preliminary approval of the FTN Settlement Agreement. Some courts have held, however, that "in any class action against a large corporation, the defendant entity is likely to be able to withstand a more substantial judgment, and, against the weight of the remaining factors, this fact alone does not undermine the reasonableness of the instant settlement." In re Vitamin C, 2012 WL 5289514, at *6 (quoting Weber v. Gov't Emps. Ins. Co., 262 F.R.D. 431, 447 (D.N.J. 2009)). Thus, this factor, standing alone is not enough to require disapproval of the FTN settlement at this stage.

> 2. Range of Reasonableness of the Settlement Fund in
> Light of the Best Possible Recovery and Attendant
> Risks of Litigation

Two additional Grinnell factors weigh against preliminary approval of the FTN Settlement Agreement. Courts often consider Grinnell factor 8, "the range of reasonableness of the settlement in light of the best possible recovery," and Grinnell factor 9, "the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation," together. In re Payment Card, 330 F.R.D. at 47-48.

14

As discussed supra Section II.C.i.1, some risks would be attendant upon continuing to litigate against either defendant. Whether these risks justify a settlement in the amount agreed to by plaintiffs, however, requires analysis of the best possible recovery plaintiffs could expect.

Plaintiffs' risk-reward calculation appears reasonable with respect to the DB Settlement Agreement. Plaintiffs represent that the best possible recovery against DB would be between $90 million and $113 million based on single damages. Pls. Mem. DB 11. Plaintiffs' use of single damages in their best possible recovery calculation is appropriate here. Although plaintiffs would ordinarily be entitled to automatic treble damages in this case, see 15 U.S.C. § 15(a), DB is a leniency applicant under the Antitrust Criminal Penalty Enhancement and Reform Act of 2004 ("ACPERA"). If DB provides satisfactory cooperation under ACPERA, it will be "liable only for actual damages and only for damages from its own product sales, not from the sales of its co-conspirators." See ACPERA, § 213(a)-(b). Thus, the Court accepts plaintiffs' representation that the proposed settlement of $15 million represents 13% to 17% of plaintiffs' best possible recovery.

While this may be only fraction of the best possible recovery, courts in this district have approved similar percentages. E.g., In re Currency Conversion Fee Antitrust Litig., No. 01 MDL 1409,

15

2006 WL 3247396, at *6 (preliminarily approving settlements "representing roughly 10-15% of the credit transaction fees collected by Defendants").

Furthermore, DB has offered cooperation which has added significant value to its settlement agreement. For example, the chatroom evidence DB offered as part of its cooperation was essential to the survival of many of plaintiffs' claims at the motion to dismiss stage. See Hearing Transcript at 7, ECF No. 286. DB also added "significant value" by being a settlement "ice-breaker," or first party to settle, potentially helping to spur other parties to settlement. In re Packaged Ice Antitrust Litig., 2011 WL 717519, at *10 (E.D. Mich. Feb. 22, 2011). Finally, DB has agreed to implement substantial antitrust compliance remediation measures for a period of two years, which provides some additional value. These two Grinnell adequacy factors thus weigh in favor of preliminary approval of the DB Settlement Agreement.

However, plaintiffs' risk-reward calculation with respect to the FTN Settlement Agreement is less persuasive. Plaintiffs represent that the best possible recovery against all defendants would be between $857 million and $1.68 billion based on single damages. Pls. Mem. FTN 8. Based on FTN's market share over the class period of 4.63%, plaintiffs claim that the $14.5 million

16

settlement amount represents 18.6% to 36.5% of the best possible damages against FTN.

Plaintiffs' use of single damages in their best possible recovery calculation in this case, however, belies this claim. Unlike DB, FTN would be subject to automatic treble damages and recovery of plaintiffs' attorneys' fees were plaintiffs to succeed at trial. Plaintiffs should thus have calculated their best possible recovery based on treble damages and recovery of attorneys' fees, and the Court will assess the adequacy of the settlement amount based on these factors.

Contrary to the parties' assertions, nothing in Grinnell requires the Court to assess the adequacy of the settlement based on single damages. The Grinnell court merely suggested that there are "strong reasons" why a court should compute best possible recovery figures based on single, rather than treble damages. 495 F.2d at 458. Further, as another court in this district has recognized in a decision affirmed by the Second Circuit, this language is best characterized as dicta. In re Auction Houses Antitrust Litig., No. 00 CIV. 0648 (LAK), 2001 WL 170792, at *7 (S.D.N.Y. Feb. 22, 2001), aff'd, 42 F. App'x 511 (2d Cir. 2002).

Moreover, there are strong countervailing reasons why it is entirely appropriate to base recovery figures on treble damages and recovery of attorneys' fees. Most obviously, in an antitrust

17

action like this one, if liability is proved, the trebling of damages and award of attorneys' fees is automatic. See 15 U.S.C. § 15(a). Thus, to ignore the fact that both parties consider the possibility of trebling damages and award of attorneys' fees when assessing whether to settle is not only "to ignore economic reality," In re Auction Houses, 2001 WL 170792, at *7, but also to put a judicial thumb on the scale in favor of smaller settlements.

Based on these and other considerations, this Court joins a number of other courts that have held that consideration of treble damages and recovery of attorneys' fees is entirely appropriate. See, e.g., In re Compact Disc Minimum Advertised Price Antitrust Litig., 216 F.R.D. 197, 210 n. 30 (D. Me. 2003) ("[I]f a settlement reflects a potential damage recovery, it should logically reflect the other parts of that recovery (trebling and attorneys' fees) that the statute awards automatically."); see also Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 955 (9th Cir. 2009) (holding that district courts are not precluded from considering treble damages in an adequacy assessment).

Employing treble damages and recovery of attorneys' fees as the baseline for plaintiffs' best possible recovery, the plaintiffs' proposed settlement with FTN reveals itself to be quite modest. By the Court's calculation, $14.5 million

18

represents only about 6-12% of plaintiffs' best possible recovery. Trebling the damages figures provided by plaintiffs, plaintiffs' best possible recovery against all defendants would be between $2.57 billion and $5.04 billion. Based on FTN's market share over the class period of 4.63%, the range of recovery for FTN would be between $119.04 million and $233.4 million. Employing the modest assumption that plaintiffs would be awarded attorneys' fees amounting to 26% of the current settlement fund -- which is what they request here -- plaintiffs would receive an additional $3.77 million. Thus, the range of best possible recovery would be from $122.81 million and $237.17 million, and the settlement fund of $14.5 million is only 6-12% of this best possible recovery.

The parties urge that FTN's cooperation, like DB's, enhances this meager sum. FTN's cooperation, however, is contingent upon preliminary approval of the FTN Settlement Agreement. FTN Settlement Agreement ¶ 15. The value of FTN's cooperation will thus only become apparent after the Court preliminarily approves the settlement. The Court will not credit FTN for cooperation of unknown value, and this future cooperation thus does nothing to affect the weighing of the small monetary settlement sum at this time. These two Grinnell adequacy factors thus weigh against preliminary approval of the FTN Settlement Agreement.

d. Equitable Treatment of Class Members

After an adequacy assessment, Rule 23(e)(2)(d) finally requires the Court to consider whether "the proposal treats class members equitably relative to each other." Consideration of this factor "could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." 2018 Advisory Note.

Under the proposed plan of distribution, claimants will be treated equitably by receiving a *pro rata* share of the recovery based on the estimated price impact of defendants' conduct on their GSE bond transactions. Meredith Corp. v. SESAC, LLC, 87 F.Supp.3d 650, 667 (S.D.N.Y. 2015) (finding that a pro rata allocation plan "appear[ed] to treat the class members equitably . . . and has the benefit of simplicity"). Further, all settlement class members will be required to sign the same release. DB Settlement Agreement ¶¶ 3-10; FTN Settlement Agreement ¶¶ 3-9. This release does not appear to affect the apportionment of relief to other class members, demonstrating equity. In re Payment Card, 330 F.R.D. at 47. This factor thus weighs in favor of preliminary approval of both settlements.

e. Remaining Grinnell Factor[1]

---

[1] The Court need not consider Grinnell factor #2, which requires the Court to evaluate the reaction of the settlement class,

One Grinnell factor remains that can help guide the Court's decision to preliminarily approve the settlements. This third Grinnell factor requires the court to consider the stage of the proceedings and amount of discovery completed. The relevant inquiry "is whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement." In re AOL Time Warner, Inc., No. 02 Civ. 5575 (SWK), 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006); see also In re Global Crossing Sec. and ERISA Litig., 225 F.R.D. 436, 458 (S.D.N.Y. 2004) ("Formal discovery is not a prerequisite; the question is whether the parties had adequate information about their claims.").

Here, plaintiffs' counsel is sufficiently well informed. Co-Lead Counsel undertook an eight-month investigation, which included expert analysis of publicly available information and interviews with former GSE bond traders. Pls. Mem. DB 7-8. Further, plaintiffs' counsel has already gone through mediation as well as one round of briefing at the motion to dismiss stage, making it aware of the strengths and weaknesses of plaintiffs' position and that of defendants. Defendant DB has also provided

---

because consideration of this factor is generally premature at the preliminary approval stage. In re Warner Chilcott Ltd. Sec. Litig., No. 06 Civ. 11515, 2008 WL 5110904, at *2 (S.D.N.Y. Nov. 20, 2008) ("Since no notice has been sent, consideration of this factor is premature.").

21

plaintiffs' counsel with extensive evidence essential to its claims. Finally, some discovery has already begun, and plaintiffs' counsel has engaged in dozens of meet and confers with defendants. Taken together, this indicates that plaintiffs have adequate information such that preliminary approval of the settlement agreement is warranted.

f. Rule 23(e)(2) Conclusion

Although most of the Rule Rule 23(e)(2) and Grinnell factors weigh in favor of preliminary approval of both settlements, the Court has some concerns about the adequacy of plaintiffs' settlement with FTN. In light of the automatic treble damages and attorneys' fees plaintiffs would be entitled to upon proving FTN's liability, the $14.5 million settlement offer from FTN appears quite modest. Further, the Court will not credit FTN with cooperation it has not yet offered. However, given that the remaining factors weigh in favor of preliminary approval, and that FTN's cooperation may yet reveal itself to be valuable for purposes of final settlement approval, the Court finds that it will likely be able to approve the settlement proposals under Rule 23(e)(2).

III. Likelihood of Certification of the Class

In order to preliminary approve the settlement proposals, the Court must also find that it will likely be able to certify the class for purposes of judgment on the proposal. In re Payment

22

Card., 330 F.R.D. at 28. A court may certify a class for
settlement purposes where the proposed settlement class meets
the requirements for Rule 23(a) class certification, as well as
one of the three subsections of Rule 23(b). In re Am. Intern.
Grp., Inc. Sec. Litig., 689 F.3d 229, 238 (2d Cir. 2012). The
Court will likely be able to certify the settlement class under
this standard for the reasons set out below.[2]

a. Rule 23(a)

Rule 23(a)'s four threshold requirements are: (1) numerosity,
(2) commonality, (3) typicality, and (4) adequacy of
representation. Fed. R. Civ. P. 23(a). The settlement class
likely meets each.

i.   Numerosity

Rule 23(a)(1) requires a class to be "so numerous that
joinder of all members is impracticable." In this Circuit,
numerosity is presumed for classes of 40 or more. Shahriar v.
Smith & Wollensky Rest. Grp., Inc., 659 F.3d 234, 252 (2d Cir.
2011) (citing Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d
473, 483 (2d Cir. 1995)). Here, plaintiffs represent that there
are thousands of geographically dispersed class members who

---

[2] This conclusion is, however, entirely without prejudice to
being reconsidered de novo if an when the remaining defendants
contest certification at the time of plaintiffs' motion to
certify.

23

transacted in GSE Bonds. Third Amended Compl. at 90, ECF. No. 254. Thus, the numerosity requirement is likely met.

### ii. Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." A question is common to the class if it is "capable of classwide resolution--which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011). Commonality requires a plaintiff "to demonstrate that the class members have suffered the same injury." Id. at 349-50 (internal quotations and citation omitted). "Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." Johnson v. Nextel Commc'ns, Inc., 780 F.3d 128, 137 (2d Cir. 2015). Here, the commonality requirement is likely met because plaintiffs allege the same economic injury stemming from the same antitrust violation -- a conspiracy to fix the price of GSE bonds in the secondary market -- by the same defendants. In re LIBOR-Based Fin. Instruments Antitrust Litig., 299 F. Supp. 3d 430, 590 (S.D.N.Y. 2018) ("[T]he existence of a [price-fixing] conspiracy is a common question.").

### iii. Typicality

24

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Typicality is satisfied when "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." Brown v. Kelly, 609 F.3d 467, 475 (2d Cir. 2010) (citing Marisol A. v. Giuliani, 125 F.3d 372, 375 (2d Cir. 1997) (per curiam)). Courts have repeatedly found that typicality is met when plaintiffs allege an antitrust price-fixing conspiracy "because Plaintiffs must prove a conspiracy, its effectuation, and damages therefrom--precisely what the absent class members must prove to recover." In re Currency Conversion Fee Antitrust Litig., 264 F.R.D. 100, 111 (S.D.N.Y. 2010) (collecting cases). Because plaintiffs allege a price-fixing conspiracy by the same defendants that harmed all class members, the typicality requirement is likely met.

   iv. Adequacy of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Adequacy "entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct this litigation." Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d 52, 60 (2d

25

Cir. 2000). Given the similarity of this inquiry to the adequacy inquiry under Rule 23(e)(2)(A), the Court will likely find that this requirement is met for the reasons outlined supra in section II.a.

b. Rule 23(b)

In addition to finding that the class satisfies Rule 23(a), the Court must also determine whether the class meets the requirements of Rule 23(b)(1), (2), or (3). Here, plaintiffs seek to certify the class under Rule 23(b)(3), which permits certification where "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

    i.   Predominance of Questions of Law and Fact

"The predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" Tyson Foods, Inc. v. Bouaphakeo, 136 S. Ct. 1036, 1045 (2016) (quoting 2 W. Rubenstein, NEWBURG ON CLASS ACTIONS § 4:49, at 195-96 (5th ed. 2012)). Predominance is satisfied where elements of plaintiffs' claim may be shown through generalized proof, In re Foodservice Inc. Pricing Litig., 729 F.3d 108, 118 (2d Cir. 2013), and where such common questions "predominate over any

26

questions affecting only individual members." Fed. R. Civ. Proc. 23(b)(3). The Supreme Court has noted that "[p]redominance is a test readily met in certain cases alleging . . . violations of the antitrust laws." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625 (1997).

The predominance test is likely met here because plaintiffs' antitrust claims predominate and would be proven through common evidence. See In re Vitamin C Antitrust Litig., 279 F.R.D. 90, 109 (E.D.N.Y. 2012) (finding that in price-fixing conspiracy cases "courts have frequently held that the predominance requirement is satisfied because the existence and effect of the conspiracy are the prime issues in the case and are common across the class"). For example, plaintiffs' primary claim concerning existence and scope of the alleged conspiracy to fix GSE bond prices can be established by common evidence such as the chatroom communications and deposition testimony of traders. Proof is not likely to vary among the class members because "allegations of price-fixing relate to the defendants' conduct," not plaintiffs'. In re Vitamin C Antitrust Litig., 209 F.R.D. 251, 264 (D.D.C. 2012). Further, whether a price-fixing conspiracy exists is the central question in this case, outweighing any questions that might be particular to individual plaintiffs. Thus, the predominance test is likely met here.

ii. Superiority of class action

27

Whether a class action is superior to other available methods for fairly and efficiently adjudicating the controversy is an "explicitly comparative" inquiry, requiring the court to consider alternatives to class settlement. In re Petrobras Securities, 862 F.3d 250, 268 (2d Cir. 2017). Courts are instructed to consider four nonexclusive factors in determining whether the class action is a superior device, including: (1) the class members' interests in litigating individually in separate actions; (2) the extent and nature of any related litigation already commenced by class members; (3) the desirability of concentrating litigation of the claims in a particular forum; and (4) the manageability of the litigation as a class action. Fed R. Civ. P. 23(b)(3).

Here, the large size of the class and potentially small recovery of many individual plaintiffs suggests that class members' interests are likely served by a class action. Amchem, 521 U.S. at 617 (discussing how the "very core of the class action mechanism" is to increase the litigating power of groups of plaintiffs who might not otherwise find litigation economical). Further, concentrating the case in one forum will help improve fairness and efficiency in adjudication of the claims of plaintiffs, who are widely dispersed. Finally, the case will be manageable as a class action. Thus, a class action

28

is likely superior and the requirements of Rule 23(b) are likely met.

## IV. Notice Plan

For the reasons discussed above, the Court will likely be able to approve the proposed settlement and certify the class under Rule 23(e)(1)(B), warranting preliminary approval. Pursuant to this finding, "the court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). Where, as here, notice is to be provided to a settlement class that is proposed to be certified under Rule 23(b)(3), the Court is required to "direct to class members the best notice that is practicable under the circumstance[s]." Fed. R. Civ. P. 23(c)(2)(B). This includes "individual notice to all members who can be identified through reasonable effort." Id. Notice may be made by "United States mail, electronic means, or other appropriate means." Id. "The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." Wal-Mart Stores, 396 F.3d at 113-14.

Plaintiffs here propose a Notice Plan, ECF No. 267, Exh. 3, that satisfies this requirement of reasonableness. Plaintiffs propose to send a Mail Notice, ECF No. 281, Exh. 1, and Claim Form, ECF No. 281, Exh. 2, to potential members of the

29

settlement class. Plaintiffs will identify such potential members based on information from DB and FTN, as well as additional research including lists of large traders in GSE bond transaction, regional banks, and credit unions. The chosen plan administrator will send the notice and form to additional potential settlement class members. In addition to mailing notice, the Plaintiffs will publish a Publication Notice, ECF No. 281, Exh. 3, in news outlets, and issue a global press release. The claim administrator will set up a website where settlement class members can receive more information than is contained in these mass publications. Finally, the claims administrator will establish a telephone helpline and monitor an email address to which class members may write. This multi-faceted plan involving individual mail notice and publication satisfies the requirements of Rules 23(e)(1)(B) and 23(c)(2)(B).

The Court must also ensure that the proposed notice is substantively reasonable. Under Rule 23(c)(2)(B), the notice must

clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests

30

exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Plaintiffs' proposed notices satisfy all of these requirements. Thus, the Notice Plan and proposed class notices are reasonable and constitute "the best notice that is practicable under the circumstances." The Court thus directs their use.

V.   Conclusion

The Court ultimately finds that it will likely be able to approve the proposal under Rule 23(e)(2) and certify the class for purposes of judgment on the proposal. For these reasons, the Court preliminarily approved the DB and FTN Settlement Agreements on October 29, 2019 and hereby reaffirms that determination.

SO ORDERED.

Dated:   New York, NY

November $\mathcal{2}$, 2019

JED S. RAKOFF, U.S.D.J.