**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE GSE BONDS ANTITRUST
LITIGATION

Case No. 1:19-cv-01704 (JSR)

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR**
**PRELIMINARY APPROVAL OF STIPULATION AND AGREEMENT OF**
**SETTLEMENT WITH GOLDMAN SACHS & CO. LLC**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

PROCEDURAL BACKGROUND.................................................................................. 1

LEGAL STANDARD..................................................................................................... 3

ARGUMENT .................................................................................................................. 4

I.      THE COURT IS LIKELY TO GRANT FINAL APPROVAL TO THE PROPOSED
        SETTLEMENT ..................................................................................................... 4

        A.     Rule 23(e)(2)(A)'s Adequacy of Representation Prong Weighs in Favor of
               Preliminary Approval..............................................................................5

        B.     Rule 23(e)(2)(B)'s Arm's-Length Negotiations Prong Weighs in Favor of
               Preliminary Approval..............................................................................5

        C.     Rule 23(e)(2)(C)'s Adequacy of Relief Prong Weighs in Favor of Preliminary
               Approval ...................................................................................................6

               1.     Costs, Risks, and Delay of Trial and Appeal ............................... 6

               2.     The Effectiveness of Any Proposed Method of Distributing Relief......... 10

               3.     The Terms of Any Proposed Award of Attorneys' Fees ......................... 12

               4.     Any Agreement Required to Be Identified Under Rule 23(e)(3) ............. 13

        D.     The Remaining Grinnell Adequacy Factors Weigh in Favor of Preliminary
               Approval .................................................................................................14

               1.     Goldman Sachs' Ability to Withstand a Greater Judgment..................... 14

               2.     The Range of Reasonableness of the Settlement Fund in
                      Light of the Best Possible Recovery and Attendant Risks
                      of Litigation ................................................................................ 14

        E.     Rule 23(e)(2)(D)'s Equitable Treatment Prong Weighs in Favor of
               Preliminary Approval.............................................................................20

        F.     The Remaining Grinnell Factor Regarding the Stage of the Proceedings
               Weighs in Favor of Preliminary Approval..............................................20

II.     THE COURT IS LIKELY TO CERTIFY THE SETTLEMENT CLASS ...................... 22

III.    THE PROPOSED NOTICE PLAN SATISFIES THE REQUIREMENTS
        OF RULE 23 ...................................................................................................... 25

CONCLUSION.............................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by*
*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)................................... *passim*

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*,
502 F.3d 91 (2d Cir. 2007)..................................................................................5

*Denney v. Deutsche Bank AG*,
443 F.3d 253 (2d Cir. 2006)................................................................................5

*Gelboim v. Bank of America Corp.*,
823 F.3d 759 (2d Cir. 2016)................................................................................8

*In re Austrian & German Bank Holocaust Litig.*,
80 F. Supp. 2d 164 (S.D.N.Y. 2000), *aff'd sub nom., D'Amato v. Deutsche
Bank*, 236 F. 3d 78 (2d Cir. 2001) .......................................................................5

*In re Cathode Ray Tube (Crt) Antitrust Litig.*,
No. 14-cv-2058, 2015 WL 9266493 (N.D. Cal. Dec. 17, 2015)............................18

*In re Community Bank of N. Va.*,
418 F.3d 277 (3d Cir. 2005)...............................................................................24

*In re DDAPV Direct Purchaser Antitrust Litig.*, No. 05-2237,
2011 WL 12627961 (S.D.N.Y. Nov. 28, 2011).....................................................12

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05-CV-10240,
2007 WL 2230177 (S.D.N.Y. July 27, 2007) .......................................................10

*In re Initial Pub. Offering Sec. Litig.*,
671 F. Supp. 2d 467 (S.D.N.Y. 2009)..................................................................11

*In re Lehman Bros. Sec. and ERISA Litig.*,
No. 09 MD 2017, 2013 WL 440622 (S.D.N.Y. Jan. 23, 2013)..............................24

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
327 F.R.D. 483 (S.D.N.Y. 2018) ................................................................. *passim*

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
No. 11 Civ. 5450, 2018 WL 3863445 (S.D.N.Y. Aug. 14, 2018) ...........................12

*In re Med. X-Ray Film Antitrust Litig.*,
No. CV-93-5904, 1998 WL 661515 (E.D.N.Y. Aug. 7, 1998)................................13

ii

*In re Nasdaq Mkt.-Makers Antitrust Litig.,*
   187 F.R.D. 465 (S.D.N.Y. 1998) ........................................................................9

*In re Nasdaq Mkt.-Makers Antitrust Litig.,*
   No. 94 CIV. 3996 RWS, 2000 WL 37992 (S.D.N.Y. Jan. 18, 2000) ......................11

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.,*
   330 F.R.D. 11 (S.D.N.Y. 2019) ................................................................... *passim*

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,*
   986 F. Supp. 2d 207 (E.D.N.Y. 2013), *reversed and vacated on other grounds,*
   827 F.3d 223 (2d Cir. 2016) ...........................................................................7, 8

*In re Pressure Sensitive Labelstock Antitrust Litig.,*
   584 F. Supp. 2d 697 (M.D. Pa. 2008) ................................................................14

*In re Urethane Antitrust Litig.,*
   No. 04 Civ. 1616, 2016 WL 4060156 (D. Kan. July 29, 2016) ..............................13

*In re Vitamin C Antitrust Litig.,*
   No. 06-MD-1738 (BMC), 2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012) .................6

*In re Warfarin Sodium Antitrust Litig.,*
   212 F.R.D. 231 (D. Del. 2002), *aff'd,* 391 F.3d 516 (3d Cir. 2004) ......................17

*In re Warner Commc'ns Sec. Litig.,*
   618 F. Supp. 735 (S.D.N.Y. 1985) .....................................................................9

*Maley v. Del Glob. Techs. Corp.,*
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) .................................................................1

*Precision Assoc., Inc. v. Panalpina World Transport (Holdings) Ltd.,*
   No. 08-cv-42, 2015 WL 6964973 (E.D.N.Y. Nov. 10, 2015) ...............................12

*Precision Assocs., Inc. v. Panalpina World Transp. (Holding) Ltd.,*
   No. 08-cv-42, 2013 WL 4525323 (E.D.N.Y. Aug. 27, 2013) ...............................19

*Rodriguez v. W. Publ'g Corp.,*
   563 F.3d 948 (9th Cir. 2009) ..........................................................................17

*Sullivan v. Barclays PLC,*
   No. 13-cv-02811-PKC, 2018 WL 6299918 (S.D.N.Y. May 18, 2018) ...................13

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*
   396 F.3d 96 (2d Cir. 2005) .......................................................................6, 7, 15

**Statutes, Rules, and Regulations**

15 U.S.C.
    §1 ...................................................................................................................1
    §15(a) ..........................................................................................................17

Federal Rules of Civil Procedure
    Rule 12(b)(6) .................................................................................................2
    Rule 23(a) ....................................................................................................22
    Rule 23(b) ....................................................................................................22
    Rule 23(b)(3)(A-B) ......................................................................................23
    Rule 23(e) ..................................................................................................3, 14
    Rule 23(e)(1)(B)(i-ii) ....................................................................................4
    Rule 23(e)(2) ..............................................................................................3, 4
    Rule 23(e)(2)(A) ........................................................................................4, 5
    Rule 23(e)(2)(B) ........................................................................................4, 5
    Rule 23(e)(2)(C) ........................................................................................4, 6
    Rule 23(e)(2)(C)(i) ...................................................................................6, 10
    Rule 23(e)(2)(C)(ii) .....................................................................................10
    Rule 23(e)(2)(C)(iii) ....................................................................................12
    Rule 23(e)(2)(C)(iv) ....................................................................................13
    Rule 23(e)(2)(D) ......................................................................................4, 20
    Rule 23(e)(3) ...........................................................................................6, 13

**Other Authorities**

MANUAL FOR COMPLEX LITIGATION (4th) §21.631 ............................................ 13-14

## INTRODUCTION

If approved, the Goldman Sachs Settlement[1] will create a Settlement Fund of $20 million (plus interest earned between preliminary approval and distribution), obligate Goldman Sachs to continue providing cooperation to Plaintiffs as they pursue their claims against non-settling defendants, and establish and maintain GSE market-specific antitrust compliance reforms. Based on Co-Lead Counsel's experience and assessment of the claims and defenses at issue in this Action, Co-Lead Counsel believe that the Settlement is in the best interests of the Settlement Class. *See Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 366 (S.D.N.Y. 2002) (stating that "'great weight' is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation").[2]  Plaintiffs also support the Settlement.

## PROCEDURAL BACKGROUND

Following consolidation and appointment of Co-Lead Counsel, on May 23, 2019, Plaintiffs filed the First Amended Complaint, which included allegations based on cooperation materials provided by Deutsche Bank pursuant to the Antitrust Criminal Penalty Enhancement and Reform Act of 2004 ("ACPERA"),[3] but did not name Deutsche Bank as a defendant.  The cooperation materials from Deutsche Bank included, among other things, four transcripts of chat room conversations between traders acting on behalf of Goldman Sachs, Deutsche Bank, BNP Paribas, Morgan Stanley, and Merrill Lynch.  Plaintiffs included allegations about these four chat

---

[1]      Unless otherwise defined herein, all capitalized terms have the same meaning as set out in the Stipulation and Agreement of Settlement with Goldman Sachs & Co. LLC ("Stipulation" or "Stip."), attached as Ex. 1 to the Declaration of Christopher M. Burke ("Burke Decl."), filed concurrently herewith.

[2]      Unless otherwise noted, citations are omitted and emphasis is added.

[3]      Pub. L. No. 108-237, §213(a)-(b), 118 Stat. 661, 666-668 (June 22, 2004), *as amended by* Pub. L. No. 111-190, 124 Stat. 1275 (June 9, 2010), *codified as amended at* 15 U.S.C. §1 note.

room conversations in the First Amended Complaint.   On July 12, 2019, Plaintiffs filed the Second Amended Complaint in order to name Deutsche Bank as a defendant, but the Second Amended Complaint was otherwise identical to the First Amended Complaint.

On June 13, 2019, Defendants jointly moved to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.   The Court heard argument on the motion on July 23, 2019.   On September 3, 2018, the Court granted in part, and denied in part, Defendants' motion to dismiss.   ECF No. 253 ("*GSE Bonds I*").   The motion was denied as to Goldman Sachs, Deutsche Bank, BNP Paribas, Morgan Stanley, and Merrill Lynch, as to which Plaintiffs had alleged evidence from chat rooms showing traders agreeing to fix the price at which to sell GSE Bonds in the secondary market.   *GSE Bonds I*, at 11-12.   The Court granted the motion as to Barclays, Citigroup, Credit Suisse, FTN, UBS, JPMorgan, HSBC, Nomura, TD Securities, Cantor Fitzgerald, and SG Americas, as to which the Second Amended Complaint did not allege specific chat room conversations.   *Id.*, at 17.   The Court's *GSE Bonds I* order was without prejudice to Plaintiffs seeking to rejoin the dismissed defendants in a Third Amended Complaint.

On September 10, 2019, Plaintiffs filed a Third Amended Complaint, which was largely identical to the Second Amended Complaint, but added 19 chat room conversations that were substantially similar in kind to the four chat room conversations previously alleged, showing traders employed by the dismissed defendants agreeing to fix the price at which to sell GSE Bonds in the secondary market.   ECF No. 288, at 4.   ("*GSE Bonds II*").

On September 17, 2019, Barclays, Citigroup, Credit Suisse, UBS, JPMorgan, HSBC, Nomura, TD Securities, Cantor Fitzgerald, and SG Americas jointly moved to dismiss the Third Amended Complaint pursuant to Rule 12(b)(6).   Plaintiffs had signed a settlement agreement

with FTN on September 16, 2019, so FTN did not join the motion.  The Court heard argument on September 27, 2019.  On October 15, 2019, the Court denied the motion to dismiss the Third Amended Complaint.  ECF No. 288.

The Goldman Sachs Settlement is the third settlement Plaintiffs have submitted in this Action.  On September 11, 2019, Plaintiffs filed a motion for preliminary approval of a $15 million settlement with Deutsche Bank.  On September 24, 2019, Plaintiffs filed a motion for preliminary approval of a $14.5 million settlement with FTN.  The Court heard argument on both motions on October 11, 2019.  On October 29, 2019, the Court preliminarily approved the Deutsche Bank and FTN settlements (ECF No. 296) and elaborated on the reasons for granting preliminary approval in an Opinion and Order dated November 7, 2019.  ECF No. 298 ("*GSE Bonds III*").

## LEGAL STANDARD

Rule 23(e) requires judicial approval of a proposed class action settlement.  Fed. R. Civ. P. 23(e)(2).  "A class action settlement approval procedure typically occurs in two stages: (1) preliminary approval, where 'prior to notice to the class a court makes a preliminary evaluation of fairness," and (2) final approval, where 'notice of a hearing is given to the class members, [and] class members and settling parties are provided the opportunity to be heard on the question of final court approval.'"  *GSE Bonds III*, at 2 (quoting *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig*., 330 F.R.D. 11, 28 (S.D.N.Y. 2019)).  "The judicial role in reviewing a proposed settlement is demanding," even at the preliminary approval stage.  *Payment Card*, 330 F.R.D. at 27; *GSE Bonds III*, at 2.  Under Rule 23(e), which was amended on December 1, 2018, in determining whether to grant preliminary approval, the Court must determine whether "giving notice is justified by the parties' showing that the court

3

will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."  Fed. R. Civ. P. 23(e)(1)(B)(i-ii); *GSE Bonds III*, at 3.

## ARGUMENT

## I.   THE COURT IS LIKELY TO GRANT FINAL APPROVAL TO THE PROPOSED SETTLEMENT

"To be likely to approve a proposed settlement under Rule 23(e)(2), the Court must find 'that it is fair, reasonable, and adequate.'"  *GSE Bonds III*, at 3.  Rule 23(e)(2) "enumerates four factors for the Court to consider as part of this inquiry:  (1) adequacy of representation, (2) existence of arm's-length negotiations, (3) adequacy of relief, and (4) equitableness of treatment of class members."  *Id*; *see also* Fed. R. Civ. P. 23(e)(2)(A-D).  These four Rule 23(e)(2) factors were intended to "supplement rather than displace" the nine "*Grinnell*" factors[4] that courts in the Second Circuit consider when determining whether a settlement is fair, reasonable, and adequate.  *GSE Bonds III*, at 3; *Payment Card*, 330 F.R.D. at 29; 2018 Advisory Committee Notes to Fed. R. Civ. P. 23, Subdiv. (e)(2) ("2018 Advisory Note").  Accordingly, in preliminarily approving the Deutsche Bank and FTN settlements, the Court considered both sets of factors, noting their overlap.  *GSE Bonds III*, at 4.  Plaintiffs respectfully submit that application of the same factors to the Goldman Sachs Settlement demonstrates that the Court should grant preliminary approval.

---

[4]    The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

A.   **Rule 23(e)(2)(A)'s Adequacy of Representation Prong Weighs in Favor of Preliminary Approval**

"Rule 23(e)(2)(A) requires a Court to find that 'the class representatives and class counsel have adequately represented the class' before preliminarily approving a settlement." *GSE Bonds III*, at 4.  This determination "typically 'entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.'"  *Id*. (quoting *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc*., 502 F.3d 91, 99 (2d Cir. 2007)).

As the Court previously found, "[P]laintiffs' interests are aligned with other class members' interests because they suffered the same injuries – monetary losses resulting from GSE bond transactions with settling defendants."  *Id*., at 4.  Accordingly, Plaintiffs have "an 'interest in vigorously pursuing the claims of the class.'"  *Id*. (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)).  Further, "Co-Lead Counsel have demonstrated that they are qualified, experienced, and able to conduct the litigation."  *Id*.; *see also* Burke Decl., Ex. 2, ¶6 (mediator's declaration stating that the settling parties "were represented by sophisticated and capable counsel who displayed the highest level of professionalism").  This factor thus weighs in favor of preliminary approval.

B.   **Rule 23(e)(2)(B)'s Arm's-Length Negotiations Prong Weighs in Favor of Preliminary Approval**

Rule 23(e)(2)(B) requires the Court to examine whether "the proposal was negotiated at arm's length."  "If a class settlement is reached through arm's-length negotiations between experienced, capable counsel knowledgeable in complex class litigation, 'the Settlement will enjoy a presumption of fairness.'"  *GSE Bonds III*, at 5 (quoting *In re Austrian & German Bank Holocaust Litig*., 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000), *aff'd sub nom., D'Amato v. Deutsche Bank*, 236 F. 3d 78 (2d Cir. 2001)).  Further, "a mediator's involvement in settlement

negotiations can help demonstrate their fairness." *Id.*; *Payment Card*, 330 F.R.D. at 95. Here, the settling parties engaged in mediation before Jed D. Melnick, Esq., who confirms that the "negotiation process was *bona fide* and, at times extremely contentious," with sophisticated and capable counsel advocating for their respective clients.[5] Burke Decl., Ex. 2, ¶6. This factor thus weighs in favor of preliminary approval.

### C.   Rule 23(e)(2)(C)'s Adequacy of Relief Prong Weighs in Favor of Preliminary Approval

Rule 23(e)(2)(C) requires the court to examine whether the "relief for the class is adequate, taking into account:  (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." *GSE Bonds III*, at 5-6.

#### 1.   Costs, Risks, and Delay of Trial and Appeal

This factor overlaps significantly with *Grinnell* factors 1, 4, 5, and 6 (*see* n.4, *supra*), which "help guide the Court's application of Rule 23(e)(2)(C)(i)." *GSE Bonds III*, at 6; *Payment Card*, 330 F.R.D. at 36.

The first overlapping *Grinnell* factor is the "complexity, expense and likely duration of the litigation." *Grinnell*, 495 F.2d at 463. "Courts favor settlement when litigation is likely to be complex, expensive, or drawn out." *GSE Bonds III*, at 6. Numerous courts have recognized that "[f]ederal antitrust cases are complicated, lengthy, and bitterly fought." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 118 (2d Cir. 2005); *see also In re Vitamin C Antitrust Litig.*, No.

---

[5]   Plaintiffs will not seek payment of the mediator's fees from the Settlement Fund. *See GSE Bonds III*, at 12-13.

06-MD-1738 (BMC), 2012 WL 5289514, at *4 (E.D.N.Y. Oct. 23, 2012) (noting that "'[f]ederal antitrust cases are complicated, lengthy . . . bitterly fought,' as well as costly"). As the Court has recognized, "[t]his antitrust case is not likely to be different." *GSE Bonds III*, at 7 (noting that the case involves "numerous defendants and complex issues of fact and law related to the sale of GSE bonds at different points in time"). Indeed, this Action has already raised complex issues of law and fact, and it has only just proceeded beyond the pleading stage. For example, in their motions to dismiss, Defendants argued that Plaintiffs failed to allege a plausible conspiracy to fix prices of GSE Bond Transactions in the secondary market. They also challenged the sufficiency of the allegations to implicate any one of them in the alleged price-fixing conspiracy, as well as the reliability of Plaintiffs' economic evidence of the conspiracy. Even at the pleading stage, resolution of these issues was complex, involving interpretation of 23 chat room transcripts and the results of three statistical models.

Complex issues of law and fact will also be raised at the class certification stage, and as the Court pointed out, "[i]nterlocutory appeals may arise after the Court's class certification decision, generating lengthy delays." *GSE Bonds III*, at 7; *see also In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207, 212 n.13 (E.D.N.Y. 2013), *reversed and vacated on other grounds*, 827 F.3d 223 (2d Cir. 2016) (noting that "[i]n the *Wal-Mart* case, twenty months elapsed between the order certifying the class and the Second Circuit's divided opinion affirming that decision").

Further, "[t]here is little reason to believe that this complexity will abate if the case were to proceed through to summary judgment and trial." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 327 F.R.D. 483, 493 (S.D.N.Y. 2018) ("*LIBOR*"). The trial of this action after completion of discovery is likely to be lengthy, and even if Plaintiffs "'prevail[ed] at trial, post-

trial motions and the potential for appeal could prevent class members from obtaining any recovery for several years, if at all.'"  *GSE Bonds III*, at 7; *see also Payment Card*, 986 F. Supp. 2d at 212 (stating that "[t]he losing parties would likely appeal any adverse jury verdicts, thereby extending the duration of litigation").

Three other related *Grinnell* factors – the risks of establishing liability, establishing damages, and maintaining the action as a class through trial – also weigh in favor of preliminary approval. To assess these factors, a court "'should balance the benefits afforded the Class, including the ***immediacy*** and ***certainty*** of a recovery, against the continuing risks of litigation.'" *GSE Bonds III*, at 7 (quoting *Payment Card*, 986 F. Supp. 2d at 224).  "[E]ach of these facets of trial poses substantial risks to this action."  *LIBOR*, 327 F.R.D. at 494.

"First as to liability, establishing the existence and extent of a conspiracy will necessarily be a complex task, and many of the hurdles that plaintiffs have overcome at the pleading stage will raise substantially more difficult issues at the proof stage."  *Id*.  At the pleading stage, for example, "so long as the allegations are plausible, plaintiff's burden has been met."  *GSE Bonds I*, at 11.  "To survive dismissal, the plaintiff need not show that its allegations suggesting an agreement are more likely than not true or that they rule out the possibly of independent action, as would be required at later litigation stages such as a defense motion for summary judgment, or trial.'"  *Id*. (quoting *Gelboim v. Bank of America Corp*., 823 F.3d 759, 781 (2d Cir. 2016)).  As the Court has noted, "multiple remaining defendants contend that they can present a strong case against plaintiffs after discovery."  *GSE Bonds III*, at 7-8.[6]  Defendants, no doubt, will continue

---

[6]      *See also GSE Bonds I*, at 15 (stating that "the pricing trends and their relationship to the dates of these chats is a factual question ill-suited for resolution at this early stage"); *GSE Bonds II*, at 5 n.2 (noting that Defendants contend that "on a more developed factual record they will be able to show that they have engaged in no wrongdoing"); *GSE Bonds II*, at 7 (noting that

to vigorously contest all liability elements of Plaintiffs' claims beyond the pleading stage, and "there is no guarantee that plaintiffs will be able to prove liability." *GSE Bonds III*, at 8.

If liability is established, Plaintiffs will face the difficulties of proving damages in an antitrust case. *Id*. At summary judgment, Plaintiffs' damages models are likely to be challenged and subject to *Daubert* motions. *See LIBOR*, 327 F.R.D. at 494 (stating that the plaintiffs' damages models will "unquestionably be challenged and perhaps subject to further *Daubert* motions"). At trial, there is no doubt that proof of damages will involve a "battle of the experts." *In re Nasdaq Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 476 (S.D.N.Y. 1998). "In this 'battle of experts,' it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found . . . ." *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985). Thus, there is a substantial risk that a jury might accept one or more of Defendants' damages arguments, or award far less than the Settlement Amount, or nothing at all. "As the Second Circuit has noted, 'the history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible damages, at trial, or on appeal.'" *GSE Bonds III*, at 8 (quoting *Wal-Mart Stores*, 396 F.3d at 118).

"Although the 'risk of maintaining a class through trial is present in [every] class action,' 'this factor [nevertheless] weighs in favor of settlement' where 'it is likely that defendants would oppose class certification' if the case were to be litigated." *GSE Bonds III*, at 8. Plaintiffs believe they will ultimately persuade the Court to certify a litigation class, but Defendants will advance substantial arguments in opposition. *See id.*, at 9. "This suggests that the maintenance

---

"Citigroup offers a plausible interpretation of the August 22, 2012 chat," but at the pleading stage, "the Court may not 'choose between two plausible inference that may be drawn from factual allegations').

of the class would not be guaranteed if the settling defendants went to trial." *Id.*; *LIBOR*, 327 F.R.D. at 494 (noting that even if a class is certified, "'subsequent developments in the case [that] call into question [the plaintiffs'] allegations' . . . could warrant modification or decertification of the class").

The Rule 23(e)(2)(C)(i) factor and overlapping *Grinnell* factors that guide the Court's analysis thus weigh in favor of preliminary approval.

### 2.      The Effectiveness of Any Proposed Method of Distributing Relief

"Rule 23(e)(2)(C)(ii) requires courts to examine 'the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims.'" *GSE Bonds III*, at 9 (quoting Fed. R. Civ. P. 23(e)(2)(C)(ii)). Further, a "'claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding.'" *Id.* (quoting 2018 Advisory Note). A plan of distribution "'must be fair and adequate,'" but "it 'need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel.'" *GSE Bonds III*, at 9. For these reasons, a plan of distribution "'need not be perfect'" in order to be approved. *Id.*, at 9-10 (quoting *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05-CV-10240, 2007 WL 2230177, at *11 (S.D.N.Y. July 27, 2007) (collecting cases)).

Plaintiffs propose to employ the Plan of Distribution that the Court preliminarily approved in connection with the Deutsche Bank and FTN settlements. *GSE Bonds III*, at 10-11. In summary, the Plan of Distribution would allocate the Settlement Fund based on a calculation that accounts for risk level, maturity, and volume of GSE Bond Transactions by each Claimant. The Plan categorizes GSE Bonds into 31 categories based on the remaining years until maturity when purchased or sold, and a multiplier is assigned based on those categories. The multipliers increase as the time until maturity increases. To illustrate, assume the impact of the challenged

conduct is 1 basis point of yield.  The damage resulting from a 1 basis point change in yield grows with maturity such that a bond with 30 years until maturity receives a higher multiplier than a bond with less than one year until maturity.

The Claims Administrator would multiply each claimant's GSE Bond Transaction volume for each of the 31 categories by the assigned multiplier, resulting in a transaction claim amount.  Payments would be calculated based on each individual claimant's transaction claim amount divided by the total of all transaction claim amounts.  In consultation with Co-Lead Counsel, the Claims Administrator would implement a minimum payment.  Co-Lead Counsel clarify that they do not intend to block any valid claims from being paid, *see GSE Bonds III*, at 11, but rather, propose to set a minimum payment of between $10 to $25 so that all valid claims would receive at least the minimum.  *In re Nasdaq Mkt.-Makers Antitrust Litig.*, No. 94 CIV. 3996 RWS, 2000 WL 37992, at *2 (S.D.N.Y. Jan. 18, 2000) (approving $25 minimum payment as a reasonable means of compensating class members with relatively small claims and noting that the "$25 floor will not cause reallocation of more than 1% to 2% of the Settlement Fund"); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 497-98 (S.D.N.Y. 2009) (approving $10 minimum payment "no matter how small [the] Recognized Claim" as reasonable to "enable class members with relatively small claims to participate meaningfully").  The minimum payment here would allow meaningful participation in the Settlement Fund by all claimants submitting valid claims and would avoid a situation in which the cost of issuing a payment exceeds the amount of the payment.  A minimum payment would also allow smaller claims to be processed more efficiently, as Co-Lead Counsel anticipates fewer inquiries and challenges on claims that are brought up to the minimum payment level.

Because "[t]he Plan of Distribution represents a reasonable method of ensuring 'the equitable and timely distribution of a settlement fund without burdening the process in a way that will unduly waste the fund," this factor weighs in favor of preliminary approval. *GSE Bonds III*, at 10-11.

### 3.   The Terms of Any Proposed Award of Attorneys' Fees

"Rule 23(e)(2)(C)(iii) requires courts to examine 'the terms of any proposed award of attorneys' fees, including timing of payment.'" *Id.* at 11 (quoting Fed. R. Civ. P. 23(e)(2)(C)(iii)).   Co-Lead Counsel will apply for an award of attorney's fees of $4,400,000, which is 22% of the Settlement Fund, plus payment of Litigation Expenses, and for interest on such attorneys' fees and Litigation Expenses at the same rate as the earnings in the Settlement Fund.   Subject to Court approval, half of the fees would be paid upon final approval of the Settlement, and the other half will be paid when distribution of the proceeds to Claimants has been very substantially completed.  Stip., ¶27.

The Court previously found Co-Lead Counsel's proposed award of attorneys' fees did not "weigh against preliminary approval of the settlements," noting that "[c]ourts in this District have approved fees as high as 33.5% from comparable class settlement funds." *GSE Bonds III*, at 12 (citing *In re DDAPV Direct Purchaser Antitrust Litig.*, No. 05-2237, 2011 WL 12627961 (S.D.N.Y. Nov. 28, 2011) (33.5% from $20.25 million class settlement) and *In re Oxycontin Antitrust Litig.*, No. 04-md-1603-SHS, ECF No. 360 (S.D.N.Y. Jan. 25, 2011) (33.5% from $16 million class settlement)).[7]

---

[7]     When deciding attorneys' fees based on multiple rounds of settlement submissions in a single case, some courts have considered as one factor the cumulative lodestar, total amount of settlements, and total amount of attorneys' fees across the entire case.  *See, e.g., In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 Civ. 5450, 2018 WL 3863445, at *4 (S.D.N.Y. Aug. 14, 2018) (Buchwald, J.); *Precision Assoc., Inc. v. Panalpina World Transport (Holdings)*

**4.     Any Agreement Required to Be Identified Under Rule 23(e)(3)**

"Rule 23(e)(2)(C)(iv) requires courts to consider 'any agreement required to be identified by Rule 23(e)(3),' that is, 'any agreement made in connection with the proposal.'" *GSE Bonds III*, at 13 (quoting Fed. R. Civ. P. 23(e)(2)(C)(iv) and 23(e)(3)).

The sole agreement required to be disclosed under Rule 23(e)(3) is the "Supplemental Agreement," which provides Goldman Sachs with the qualified right to withdraw or terminate the Settlement upon the occurrence of certain conditions.  Stip., ¶¶44-45.  This qualified right arises if potential Settlement Class Members who meet certain criteria exclude themselves from the Settlement Class.  *Id.*  The Goldman Sachs Supplemental Agreement is substantially similar to the FTN Supplemental Agreement.  Upon reviewing the FTN Supplemental Agreement, the Court found "it has no bearing on the preliminary approval analysis." *GSE Bonds III*, at 13.  As with the prior agreement, the Parties request that the Goldman Sachs Supplemental Agreement be allowed to remain confidential, as "knowledge of the specific number of opt outs that will vitiate a settlement might encourage third parties to solicit class members to opt out."  MANUAL

---

*Ltd.*, No. 08-cv-42, 2015 WL 6964973 (E.D.N.Y. Nov. 10, 2015) (Gleeson, J.); *In re Urethane Antitrust Litig.*, No. 04 Civ. 1616, 2016 WL 4060156, at *7-*8 (D. Kan. July 29, 2016).  Co-Lead Counsel are seeking in fees 22% of the $29.5 million recovery from the Deutsche Bank and FTN settlements, and 22% of the $20 million recovery from the Goldman Sachs Settlement.  Cumulatively, this would be 22% of a $49.5 million recovery, totaling $10,890,000.  Courts in this District have approved similar fee awards in comparable cases.  *See, e.g.*, *Sullivan v. Barclays PLC*, No. 13-cv-02811-PKC, 2018 WL 6299918, at *1 (S.D.N.Y. May 18, 2018) (awarding 22.24% attorneys' fees from $68.71 million settlement fund in antitrust case); *In re Med. X-Ray Film Antitrust Litig.*, No. CV-93-5904, 1998 WL 661515, at *8 (E.D.N.Y. Aug. 7, 1998) (awarding 33 1/3% attorneys' fees from $39.36 million settlement fund in antitrust case); *see also* Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. EMPIRICAL LEGAL STUD. 811, tbl. 10 (2010) (finding mean fee of 22.3% and median fee of 24.9% (with a standard deviation of 8.4%) for recoveries between $30 million and $72.5 million); Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees and Expenses in Class Action Settlements: 1993-2008*, 7 J. EMPIRICAL LEGAL STUD. 248, tbl. 7 (2010) (finding mean fee of 20.5% and median fee of 24.9% (with a standard deviation of 8.7%) for recoveries between $38.3 million and $69.6 million).

FOR COMPLEX LITIGATION (4th) §21.631; *see also* Fed. R. Civ. P. 23(e), 2003 Advisory Committee Note, Subdiv. (e).

### D.     The Remaining *Grinnell* Adequacy Factors Weigh in Favor of Preliminary Approval

#### 1.     Goldman Sachs' Ability to Withstand a Greater Judgment

There is no doubt that as a globally prominent financial institution, Goldman Sachs could withstand a greater judgment, but "'fairness does not require that the [defendant] empty its coffers before this Court will approve a settlement.'"  *LIBOR*, 327 F.R.D. at 494.  The Court previously found that this factor, standing alone, is not enough to require disapproval at this stage.  *GSE Bonds III*, at 14 (noting that "[s]ome courts have held . . . that 'in any class action against a large corporation, the defendant entity is likely to be able to withstand a more substantial judgment, and, against the weight of the remaining factors, this fact alone does not undermine the reasonableness of the instant settlement'"); *see also LIBOR*, 327 F.R.D. at 495 (stating that "this factor is intended to 'strongly favor settlement' when 'there is a risk that an insolvent defendant could not withstand a greater judgment' but that 'the ability of defendants to pay more, on its own, does not render the settlement unfair'").  In addition, as discussed below, the benefit provided by Goldman Sachs' cooperation, which began prior to execution of the Stipulation, "tends to offset the fact that [it] would be able to withstand a larger judgment." *In re Pressure Sensitive Labelstock Antitrust Litig.*, 584 F. Supp. 2d 697, 702 (M.D. Pa. 2008).

#### 2.     The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and Attendant Risks of Litigation

Courts often consider these two *Grinnell* factors together.  *GSE Bonds III*, at 14; *Payment Card*, 330 F.R.D. at 47-48.  In considering these factors, "'the settlement amount's ratio to the maximum potential recovery need not be the sole, or even the dominant, consideration when assessing the settlement's fairness.'"  *LIBOR*, 327 F.R.D. at 495 (approving settlements where

the plaintiffs did not even provide a damages estimate); *see also Payment Card*, 330 F.R.D. at 49 n.46 (recognizing that "it may be a difficult figure to generate, and, ultimately, this information, while helpful in assessing this factor, is not absolutely necessary" and citing cases). This is because, as the Court has recognized, "some risks would be attendant upon continuing to litigate." *GSE Bonds III*, at 15. Accordingly, the analysis of these factors takes into account "the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Wal-Mart*, 396 F.3d at 119. As the Second Circuit has explained, "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Grinnell*, 495 F.2d at 455.

Here, Plaintiffs respectfully submit that the monetary relief obtained for the Settlement Class should be viewed through the context of the broader protection that this Settlement provides. Settlement Class Members, including those members that are limited to dealing in high-credit government securities due to statutory or other constraints, need to have confidence that the GSE Bond market is free from collusion. While it is perhaps a departure from the typical adequacy analysis to consider non-monetary relief the Settlement provides, in this case, the compliance measures agreed to by Goldman Sachs in the Settlement were a key concern of Plaintiffs. The compliance measures ensure that any monetary relief will not be simply a cost of doing business but lead to real reform in the GSE Bond market and long-term relief for the GSE Bond market participants.

Plaintiffs and Goldman Sachs discussed that an antitrust compliance program with respect to the GSE Bond market must contain certain elements in its design to effectively prevent and detect anticompetitive conduct, including; (i) rigorous compliance training; (ii) a culture of

compliance; (iii) strong oversight; (iv) dedication of corporate resources; and (v) robust gap assessment. Stip., ¶18. These factors are consistent with the Antitrust Division's public guidance document that outlines what its prosecutors look for when evaluating antitrust compliance programs.[8] Goldman Sachs represents that it currently maintains an antitrust compliance program that incorporates these principles, and agrees to maintain a substantially similar compliance program adhering to these principles so long as it is engaged in the GSE Bond Market. *Id.*, ¶19. In addition, for 24 months following the execution of the Stipulation or until this Action is fully and finally adjudicated, whichever is later, unless it is no longer engaged in GSE Bond Transactions, Goldman Sachs agrees to, on a semi-annual basis: (i) confirm to Plaintiffs and a representative of Pennsylvania Treasury that Goldman Sachs continues to maintain an antitrust compliance program designed to detect and prevent anticompetitive conduct in the GSE Bond Market; and (ii) confer with Plaintiffs to consider and evaluate antitrust compliance best practices in the GSE Bond Market. *Id.* Plaintiffs believe these measures are necessary to prevent and detect future anticompetitive conduct in the GSE Bond market and indispensable to restoring market integrity. The Court previously found similar compliance remediation measures provided value that weighed in favor of preliminarily approving settlement. *GSE Bonds III*, at 16.

In light of the compliance measures agreed to in the Settlement, Plaintiffs respectfully submit that the monetary relief provided to the Settlement Class is within the range of reasonableness. Plaintiffs developed a preliminary damages model that estimated a range of class wide single damages potentially recoverable at trial of between $857 million and $1.68

---

[8]     U.S. Dep't Justice Antitrust Div., Evaluation of Corporate Compliance Programs in Criminal Antitrust Investigations (July 2019) at 3-4, https://www.justice.gov/atr/page/file/1182001/download.

billion.  If Plaintiffs were to succeed at trial, this figure would be subject to automatic trebling

pursuant to 15 U.S.C. §15(a).  *GSE Bonds III*, at 18.  Accordingly, Plaintiffs' treble damages

estimate is $2.571 billion to $5.04 billion.  There are, of course, many steps remaining between

here and a verdict, and Plaintiffs therefore emphasize that these are estimated figures.  Actual

recovery at trial, if any, would be subject to the risks outlined above and many others.

Given Goldman Sachs' market share of 3.65% (Third Amended Complaint, ECF No.

254, ¶135 (Table 1)), the $20 million Settlement Amount therefore represents 32.6% to 63.9% of

Goldman Sachs' proportionate share of the preliminary single damages estimate ($31,280,500 to

$61,320,000) and 10.9% to 21.3% of the potential trebled recovery ($93,841,500 to

$183,960,000).  While Plaintiffs acknowledge that the Court has held that the best possible

recovery figures should be based on treble damages, *GSE Bonds III*, at 18, because the majority

of antitrust cases use a single damages comparison for evaluating settlements, Plaintiffs provide

both the single and treble figures for ease of comparison to other antitrust cases.[9]

The estimated 10.9% to 21.3% recovery of estimated treble damages from Goldman

Sachs compares favorably to recoveries in other antitrust cases, given the risks outlined above.

*See, e.g., GSE Bonds III*, at 15 (holding that 13% to 17% recovery along with cooperation under

the Deutsche Bank settlement "appears reasonable"); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d

948, 965 (9th Cir. 2009) (approving settlement where "[e]ven considering the trebling effect, the

settlement amount represents approximately ten percent of the class's estimate of its own trebled

---

[9]     *See Grinnell Corp.*, 495 F.2d at 458-59 (stating that "the vast majority of courts which have approved settlements in [antitrust cases], even though they may have not explicitly addressed the issue, have given their approval to settlement which are traditionally based on an estimate of single damages only"); *see also In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 257–58 (D. Del. 2002), *aff'd,* 391 F.3d 516 (3d Cir. 2004) (citing cases using single damages estimates).

damages"); *Currency Conversion*, 2006 WL 3247396, at *6 (preliminarily approving settlements "representing roughly 10-15% of the credit transaction fees collected by Defendants"); *Payment Card*, 330 F.R.D. at 49 (stating that the Second Circuit did not take issue with original settlement recovery of "2.5% of the largest possible estimate of actual damage to merchants," which was based on single damages); *Grinnell Corp.*, 495 F.2d at 455 n.2 (stating that "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery").  Further, the Settlement does not alter the maximum recoverable damages if Plaintiffs prevail at trial against the non-settling defendants (after an offset post-trebling for recoveries from the settlements), which remain jointly and severally liable for all damages caused by the conspiracy.  *In re Cathode Ray Tube (Crt) Antitrust Litig.*, No. 14-cv-2058, 2015 WL 9266493, at *6 (N.D. Cal. Dec. 17, 2015) (noting the right to seek entire damages from non-settling defendants "provides increased value . . . by creating added incentive for the remaining defendants to settle or allowing greater recovery for the Plaintiffs at trial").

In addition, the Settlement delivers Goldman Sachs' cooperation to Plaintiffs in pursuing their claims against non-settling defendants, including the production of data and documents, deposition and trial testimony, evidentiary declarations, and further cooperation that the Parties agree to.  Stip., ¶¶16-17.  Goldman Sachs' performance under the cooperation provisions began prior to the Stipulation's execution, and pursuant to the Stipulation, Goldman Sachs is obligated to provide cooperation until judgment is final against all Defendants.  Stip., ¶15.  Goldman Sachs' cooperation has already proved valuable as Plaintiffs continue to prosecute their claims against non-settling defendants.  For example, in an attorney proffer provided on November 11, 2019, prior to the execution of the Stipulation, Goldman Sachs identified a set of key chat room

communications that were of interest to Plaintiffs as they are drafting their motion for class certification.  As Goldman Sachs' document production at this time consists of approximately 71,000 pages, and given that nearly 80% of the 8.9 million pages of documents produced by Defendants to date were provided just 3.5 weeks before Plaintiffs' November 19, 2019 class certification motion deadline, this was extremely valuable information that Goldman Sachs provided at a critical time.  For these key chats, Goldman Sachs also identified, where possible, the CUSIPs[10] of the GSE Bonds that were the subject matter of those chat room communications.  Such identification is a manual and time-intensive exercise because the CUSIP numbers frequently are not identified in the chats.  The limited information about the bonds that are included in the chats must be compared to bonds that traded around the time period of the chat in order to link the chat to a particular CUSIP.  Accordingly, Goldman Sachs' identification of CUSIPs saved Co-Lead Counsel many hours of analysis.  The identification of the key chat room communications and CUSIPs will also be beneficial as Plaintiffs prepare for and complete deposition discovery by December 23, 2019.  Plaintiffs also note that Goldman Sachs' data production was among the best of the data productions from Defendants in terms of richness of fields and usefulness at class certification.  *See* Burke Decl., ¶¶5-9.

Goldman Sachs' cooperation will also be a valuable resource to Plaintiffs in pursuing their claims against the non-settling defendants going forward.  As the cooperation obtained to date has already demonstrated, the cooperation provisions will allow Plaintiffs access to information and expertise that would take longer to obtain through normal discovery or might not have been available through normal discovery at all.  *See Precision Assocs., Inc. v.*

---

[10]     A CUSIP is a nine-digit numeric or alphanumeric code that identifies a North American financial security for the purposes of facilitating clearing and settlement of trades.

*Panalpina World Transp. (Holding) Ltd.*, No. 08-cv-42, 2013 WL 4525323, at \*9 (E.D.N.Y. Aug. 27, 2013) ("cooperation adds considerable value to the Settlement and must be factored into an analysis of the overall reasonableness").

These two *Grinnell* adequacy factors thus weigh in favor of preliminary approval.

### E.  Rule 23(e)(2)(D)'s Equitable Treatment Prong Weighs in Favor of Preliminary Approval

"Rule 23(e)(2)(D) finally requires the Court to consider whether 'the proposal treats class members equitably relative to each other,'" *GSE Bonds III*, at 20 (quoting Fed. R. Civ. P. 23(e)(2)(D)), which "could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief."  2018 Advisory Note.  As the Court previously held, "[u]nder the proposed plan of distribution, claimants will be treated equitably by receiving a *pro rata* share of the recovery based on the estimated price impact of defendants' conduct on their GSE bond transactions."  *GSE Bonds III*, at 20.  Further, all claimants will sign the same release, and this release does not affect the apportionment of relief among class members.  *Id*.; *Payment Card*, 330 F.R.D. at 47.  This factor thus weighs in favor of preliminary approval.

### F.  The Remaining *Grinnell* Factor Regarding the Stage of the Proceedings Weighs in Favor of Preliminary Approval

This *Grinnell* factor "requires the court to consider the stage of the proceedings and the amount of discovery completed."  *GSE Bonds III*, at 21.  "The relevant inquiry 'is whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement.'"  *Id*.

As the Court previously found, "[h]ere, plaintiffs'' counsel is sufficiently well informed." *Id*.  Prior to filing the first complaint in this Action on February 22, 2019, Co-Lead Counsel

undertook an eight-month investigation which included engaging two sets of experts who analyzed three datasets, interviewing former GSE Bond traders, and reviewing publicly available information. *See id*. On May 23, 2019, Plaintiffs filed the First Amended Complaint, which, in addition to Co-Lead Counsel's investigation, incorporated certain of the cooperation materials provided by Deutsche Bank. Co-Lead Counsel participated in numerous proffer sessions involving Deutsche Bank and analyzed additional cooperation materials provided by Deutsche Bank, including seven years of the bank's transaction data. Plaintiffs have also obtained and analyzed cooperation materials recently provided by FTN and Goldman Sachs. Plaintiffs further amended their complaint to incorporate additional cooperation materials provided by Deutsche Bank in the Third Amended Complaint, which was filed on September 10, 2019. Co-Lead Counsel have also briefed, argued, and substantially prevailed on two motions to dismiss. *See id*.

In addition, Co-Lead Counsel have now engaged in four full-day mediation sessions with Deutsche Bank, FTN, and Goldman Sachs separately. *See id*. Before each of the mediations, Plaintiffs submitted to the mediator defendant-specific mediation statements that addressed potential damages and the strengths and weaknesses of the claims and defenses at issue. During the mediations, Co-Lead Counsel advocated Plaintiffs' positions on liability, impact, and damages and responded to the countervailing views of Deutsche Bank, FTN, and Goldman Sachs.

Finally, while this case is less than one-year-old, significant discovery has taken place, including the substantial completion of data and document productions. The close of all fact discovery is approaching in just over a month on December 23, 2019. The discovery produced to Plaintiffs to date has further allowed Co-Lead Counsel to gauge the strengths and weaknesses of the claims and defenses and the adequacy of the Goldman Sachs Settlement. *See id*. at 22.

This factor thus weighs in favor of preliminary approval. *Id*.[11]

In conclusion, the Court is likely to grant final approval of the Goldman Sachs Settlement.

## II.   THE COURT IS LIKELY TO CERTIFY THE SETTLEMENT CLASS

"In order to preliminarily approve the settlement . . . the court must also find that it will likely be able to certify the class for purposes of judgment on the proposal." *GSE Bonds III*, at 22. A settlement class may be certified where the proposed class "meets the requirements of Rule 23(a) class certification, as well as one of the three subsections of Rule 23(b)." *Id*. at 23. Because the Settlement Class proposed in the Goldman Sachs Stipulation is substantially similar to the settlement class that the Court previously found it would likely be able to certify, *id*., the Court will likely be able to certify the Settlement Class.

There are two differences to note regarding exclusions from the Goldman Sachs Settlement Class. These two differences, however, do not impact the certification criteria discussed in *GSE Bonds III*, at 23-29. First, the Goldman Sachs Settlement Class includes a minor difference in the exclusion relating to the United States and federal government entities. It excludes the United States and clarifies in the definition of the "Settling Plaintiff Parties" that, to the extent that federal government entities are Settlement Class Members, such entities would be releasing their claims, including any claims of Employee Benefit Plans sponsored by such entities. Stip., ¶¶1(rr), 1(xx). Second, the Goldman Sachs Settlement Class provides that "Investment Vehicles shall not be excluded" from the Settlement Class. Stip., ¶1(rr). An Investment Vehicle is a company, Employee Benefit Plan, or investment fund in which a

---

[11]   "The Court need not consider *Grinnell* factor #2, which requires the Court to evaluate the reaction of the settlement class, because consideration of this factor is generally premature at the preliminary approval stage." *GSE Bonds III*, at 20-21 n.1.

Defendant has a non-majority interest or to which a Defendant, or an affiliate of a Defendant, acts as an investment advisor, such as a mutual fund, exchange-traded fund, fund of funds, or hedge fund.  Stip., ¶1(v).  Several of the Defendants, including Goldman Sachs, have asset management and advisory businesses, and this provision would allow investors in such entities, which are not alleged to have been involved in the conduct, to be Settlement Class Members and eligible to participate in the Settlement.[12]

Finally, relating to the Rule 23(b)(3)(A-B)'s superiority requirements regarding litigation by class members in separate actions, Plaintiffs are aware of two actions, making virtually identical allegations and raising substantially the same claims against an overlapping set of defendants, brought by potential Settlement Class Members pending outside this District.  *State of Louisiana v. Bank of America, N.A.*, No. 3:19-cv-00638 (M.D. La. Sept 23, 2019) ("*Louisiana* Action"); *City of Baton Rouge/East Baton Rouge Parish v. Bank of America, N.A.*, Docket No. 3:19-cv-00725 (M.D. La. Oct 21, 2019) ("*Baton Rouge* Action").  These actions were filed by an overlapping set of lawyers on behalf of a total of four plaintiffs (State of Louisiana, Parish Employees Retirement System, City of Baton Rouge/East Baton Rouge Parish, and Police Guaranty Fund), but they are not class actions.

In the *Louisiana* Action, the Court entered an order approving a stipulation pursuant to which the plaintiff voluntarily dismissed Deutsche Bank and FTN with prejudice in exchange for

---

[12]   Settlement classes with a similar provision have been certified in numerous cases in this District.  *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, No. 1:13-cv-07789-LGS, ECF No. 1099, at 5 (S.D.N.Y. Aug. 6, 2018); *Alaska Elec. Pension Fund v. Bank of Am., N.A.,* No. 14-cv-7126-JMP, ECF No. 738, at 2 (S.D.N.Y. Nov. 13, 2018); *Laydon v. Mizuho Bank*, No. 12-cv-3419-GBD, ECF No. 796, ¶5 (S.D.N.Y. Sept. 14, 2017) and ECF No. 838 (S.D.N.Y. Dec. 7, 2017); *In re: Credit Default Swaps Antitrust Litig.*, No. 1:13-md-02476, ECF No. 539, ¶4 (S.D.N.Y. Apr. 18, 2016).

the provision of cooperation materials provided to Plaintiffs here and the plaintiffs' agreement not to object or opt out of the Deutsche Bank and FTN settlements, thus, indicating that the plaintiff intends to participate in those settlements as a Settlement Class Member.  ECF Nos. 6, 9.  The *Louisiana* Action is otherwise at an early stage.  Three of the 18 defendants answered the complaint.  ECF Nos. 10-12 (Nov. 12, 2019).  Two defendants filed motions to dismiss.  ECF Nos. 17, 19 (Nov. 13, 2019).  An initial scheduling conference has been set for January 9, 2020 in the *Baton Rouge* Action.  ECF No. 4 (Nov. 6, 2019).

Because these actions involve just four of tens of thousands of Settlement Class Members, which have the right to opt out under the Goldman Sachs Settlement, and are at an early procedural stage, they do not disturb the Court's finding of superiority.  *In re Lehman Bros. Sec. and ERISA Litig.*, No. 09 MD 2017, 2013 WL 440622, at *5 (S.D.N.Y. Jan. 23, 2013) (finding superiority although 4% of the proposed class had sought relief individually because "'existence of large individual claims that are sufficient for individual suits is no bar to a class when the advantages of unitary adjudication exist to determine the defendant's liability'" and as "[f]ewer than one in twenty class members have sought to maintain separate actions – the other nineteen out of twenty are entitled to the benefits of class treatment"); *In re Community Bank of N. Va.*, 418 F.3d 277, 309 (3d Cir. 2005) (finding superiority requirement met in a settlement class action involving illegal lending scheme when there was little other litigation, and class members interested in pursuing it could opt out).[13]

Accordingly, for the reasons stated in the Court's prior order, the Settlement Class is likely to be certified.

---

[13]    Co-Lead Counsel will ensure that counsel in the *Louisiana* Action and *Baton Rouge* Action receive notice of all settlements.

III.   **THE PROPOSED NOTICE PLAN SATISFIES THE REQUIREMENTS OF RULE 23**

Plaintiffs propose the same notice plan and substantially similar forms of notice, conformed to the Goldman Sachs Settlement, as the Court approved with respect to the Deutsche Bank and FTN settlements.  The notice plan is set out in detail at Exhibit 3 to the accompanying Burke Declaration, and the proposed forms of notice, that is, the Mail Notice, Claim Form, and Publication Notice, are attached to the Goldman Sachs Stipulation as Exhibits A1, A2, and A3, respectively.  As the Court previously found, the proposed notice plan satisfies "the requirement of reasonableness" and constitutes the "best notice practicable under the circumstances."  *GSE Bonds III*, at 29, 31.

## CONCLUSION

Plaintiffs respectfully request that the Court enter the accompanying order preliminarily approving the Goldman Sachs Settlement and authorizing notice to be provided to the Settlement Class.

Dated: November 14, 2019

_s/ Christopher M. Burke_
CHRISTOPHER M. BURKE (CB-3648)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
600 W. Broadway, Suite 3300
San Diego, CA 92101
Tel:  (619) 233-4565
Fax: (619) 233-0508
cburke@scott-scott.com

DAVID R. SCOTT (DS-8053)
AMANDA F. LAWRENCE (AL-8804)
KRISTEN ANDERSON (KA-1965)
DONALD A. BROGGI (DB-9661)
THOMAS BOARDMAN (TB-0530)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
The Helmsley Building

VINCENT BRIGANTI
CHRISTIAN LEVIS
MARGARET MACLEAN
ROLAND R. ST. LOUIS, III
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Tel:  (914) 997-0500
Fax: (914) 997-0035
vbriganti@lowey.com
clevis@lowey.com
mmaclean@lowey.com
rstlouis@lowey.com

*Interim Co-Lead Counsel for the Class and Attorneys for Plaintiff Joseph M. Torsella is the Treasurer of the Commonwealth of Pennsylvania and the head of the Pennsylvania*

230 Park Ave., 17th Floor
New York, NY 10169
Tel:  (212) 223-6444
Fax: (212) 223-6334
david.scott@scott-scott.com
alawrence@scott-scott.com
kanderson@scott-scott.com
dbroggi@scott-scott.com
tboardman@scott-scott.com

*Interim Co-Lead Counsel for the Class and Attorneys for Plaintiff City of Birmingham Retirement and Relief System*
CHRISTOPHER CRAIG
Chief Counsel
**PENNSYLVANIA TREASURY DEPARTMENT**
**OFFICE OF THE CHIEF COUNSEL**
129 Finance Building
Harrisburg, PA 17120
ccraig@patreasury.gov

*Attorney for Plaintiff Joseph M. Torsella, in his official capacity as the Treasurer of the Commonwealth of Pennsylvania*

*Office of the State Treasurer*

TODD A. SEAVER
CARL N. HAMMARSKJOLD
**BERMAN TABACCO**
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Tel:  (415) 433-3200
Fax: (415) 433-6382
tseaver@bermantabacco.com
chammarskjold@bermantabacco.com

LESLIE R. STERN
**BERMAN TABACCO**
One Liberty Square
Boston, MA 02109
Tel:  (617) 542-8300
Fax: (617) 542-1194
lstern@bermantabacco.com

*Attorneys for Plaintiffs Electrical Workers Pension Fund Local 103, I.B.E.W., and Local 103, I.B.E.W. Health Benefit Plan*

## CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2019, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

*s*/ Christopher M. Burke
Christopher M. Burke
