

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

IN RE GSE BONDS ANTITRUST
LITIGATION

---

19-cv-1704 (JSR)

MEMORANDUM ORDER

JED S. RAKOFF, U.S.D.J.

This putative class action alleges a conspiracy among several large banks to fix the secondary market prices of GSE bonds. Previously, the Court had preliminarily approved a settlement between plaintiffs and Deutsche Bank ("DB") and First Tennessee Bank ("FTN"). See Opinion and Order, ECF No. 298 ("DB & FTN Op."). Now, plaintiffs have moved for preliminary approval of a stipulation and settlement agreement with defendant Goldman Sachs ("GS"). See Mot. for Prelim. Approval, ECF No. 316; Burke Decl., Exh. 1, ECF No. 318 ("GS Settlement Agreement"). On December 9, 2019, the Court held a preliminary approval fairness hearing on the proposed settlement, and on December 12, 2019 the Court preliminarily approved the proposed settlement. The Court now elaborates on the reasons for this latest preliminary approval.

I.  Legal Background

Fed. R. Civ. P. 23(e) requires judicial approval for any class action settlement. A class action settlement approval

1

procedure typically occurs in two stages: (1) preliminary approval, where "prior to notice to the class a court makes a preliminary evaluation of fairness," and (2) final approval, where "notice of a hearing is given to the class members, [and] class members and settling parties are provided the opportunity to be heard on the question of final court approval." In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig., 330 F.R.D. 11, 28 (E.D.N.Y. 2019). Even at the preliminary approval stage, the Court's role in reviewing the proposed settlement "is demanding because the adversariness of litigation is often lost after the agreement to settle." Zink v. First Niagara Bank, N.A., 155 F.Supp.3d 297, 308 (W.D.N.Y. 2016) (citation omitted).

On December 1, 2018, new amendments to Rule 23 took effect which altered the standards that guide a court's preliminary approval analysis. Prior to these changes, Rule 23 did not specify a standard, and courts in the Second Circuit interpreted Rule 23 to only require the settlement to be "within the range of possible final approval." In re NASDAQ Market-Makers Antitrust Litig., 176 F.R.D. 99, 102 (S.D.N.Y. 1997). Under the new, more exacting standards, a district court must consider whether the court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for

2

purposes of judgment on the proposal." In re Payment Card., 330 F.R.D. at 28.

II. Likelihood of Approval Under Rule 23(e)(2) and the Grinnell Factors

To be likely to approve a proposed settlement under Rule 23(e)(2), the Court must find "that it is fair, reasonable, and adequate." The newly amended Rule 23 enumerates four factors for the Court to consider as part of this inquiry: (1) adequacy of representation, (2) existence of arm's-length negotiations, (3) adequacy of relief, and (4) equitableness of treatment of class members. Fed. R. Civ. P. 23(e)(2). Prior to the 2018 amendments, courts in the Second Circuit considered whether a settlement was "fair, reasonable, and adequate" under nine factors set out in City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974). The Advisory Committee Notes to the 2018 amendments indicate that the four new Rule 23 factors were intended to supplement rather than displace these "Grinnell" factors. See 2018 Advisory Notes to Fed. R. Civ. P. 23, Subdiv. (e)(2) ("2018 Advisory Note"). Accordingly, the Court considers both sets of factors in its analysis.

a. Adequacy of Representation

Rule 23(e)(2)(A) requires a Court to find that "the class representatives and class counsel have adequately represented the class" before preliminarily approving a settlement. Because

counsel has not changed since the Deutsche Bank ("DB") and First Tennessee Bank ("FTN") settlements, the Court finds that Rule 23(e)(2)(A)'s adequacy of representation prong weighs in favor of preliminary approval for the reasons outlined in the DB and FTN settlement. Opinion and Order 4-5, ECF No. 298 ("DB & FTN Op.").

   b. Presence of Arm's-Length Negotiations

Rule 23(e)(2)(B) requires procedural fairness, as evidenced by the fact that "the proposal was negotiated at arms length." If a class settlement is reached through arm's-length negotiations between experienced, capable counsel knowledgeable in complex class litigation, "the Settlement will enjoy a presumption of fairness." In re Austrian & German Bank Holocaust Litig., 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000), aff'd sub nom., D'Amato v. Deutsche Bank, 236 F.3d 78 (2d Cir. 2001). Further, a mediator's involvement in settlement negations can help demonstrate their fairness. In re Payment Card, 330 F.R.D. at 35. Here, as before in the case of the DB and FTN settlements, DB & FTN Op. at 5, the parties engaged in mediation and the mediator's declaration confirms that the settlement agreement was "a product of extensive and informed negotiations conducted at arm's length" by "sophisticated and capable counsel." Melnick Decl. ¶ 6, ECF. 318 Exh. 2. Rule 23(e)(2)(B) thus weighs in favor of preliminary approval.

4

c. Adequacy of Relief

Rule 23(e)(2)(C) requires examining whether relief for the class is adequate, taking into account:

> (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

This inquiry overlaps significantly with a number of Grinnell factors, which help guide the Court's application of Rule 23(e)(2)(C)(i). In re Payment Card, 330 F.R.D. at 36. Most of these factors weigh in favor of approval of the GS Settlement Agreement.

    i.   Rule 23(e)(2)(C) Adequacy Factors

        1. Costs, Risk, Delay of Trial and Appeal

In order to assess adequacy under Rule 23(e)(2)(C)(i), "courts may need to forecast the likely range of possible classwide recoveries and the likelihood of success in obtaining such results." In re Payment Card, 330 F.R.D. at 36 (citing the 2018 Advisory Note). Such risks and costs are similar to those presented by the DB and FTN settlements. This factor thus weighs in favor of preliminary approval of the settlement for the reasons outlined in the DB and FTN settlement opinion. DB & FTN Op. at 6-9.

### 2. Effectiveness of the Proposed Method of Distributing Relief

Rule 23(e)(2)(C)(ii) requires courts to examine "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Plaintiffs propose to employ the Plan of Distribution that the Court preliminarily approved in connection with the DB and FTN settlements. For the reasons outlined in the DB and FTN settlement opinion, the effectiveness of GS's proposed Plan of Distribution weighs in favor of preliminary approval. DB & FTN Op. at 9-11.

### 3. The Terms of Any Proposed Award of Attorneys' Fees

Rule 23(e)(2)(C)(iii) requires courts to examine "the terms of any proposed award of attorneys' fees, including timing of payment." The total settlement fund will be $20 million. Co-Lead Counsel "will apply for an award of attorney's fees of $4,400,000, which is 22% of the Settlement Fund." Pls. Mem. of Law in Support of Motion for Prelim. Approval of Stipulation and Agreement of Settlement with Goldman Sachs & Co. LLC 12, ECF. No. 317 ("Pls. Mem. GS"). Half of the fees will be paid upon final approval of the settlement, and the other half will be paid when distribution of the proceeds to claimants has been very substantially completed. GS Settlement Agreement ¶ 27.

The Court preliminarily approved a higher fee percentage (up to 26%) in the DB and FTN settlement opinion to be distributed on the same timeline. DB & FTN Op. at 11-13. Further, plaintiffs have represented that they will not seek any mediation fees in this settlement agreement. Id. at 6, n.5. Thus, for the reasons outlined in the DB and FTN settlement opinion, the terms of the proposed award of attorneys' fees does not weigh against preliminary approval.

### 4. Any Agreement Required to be Identified Under Rule 23(e)(3)

Rule 23(e)(2)(C)(iv) requires courts to consider "any agreement required to be identified by Rule 23(e)(3)," that is, "any agreement made in connection with the proposal." GS has filed one such agreement under seal. The Court has reviewed the agreement and finds that it has no bearing on the preliminary approval analysis.

## ii. Grinnell Adequacy Factors

### 1. Defendants' Ability to Withstand a Greater Judgment

The seventh Grinnell factor -- defendants' ability to withstand a greater judgment -- disfavors approval of the settlement agreement. Grinnell, 495 F.2d at 463. Plaintiffs acknowledge "there is no doubt that as a globally prominent financial institution, Goldman Sachs could withstand a greater judgment." Pls. Mem. GS at 14. As the Court noted in its DB and

7

FTN opinion, DB & FTN Op. at 13, a defendant's cooperation "tends to offset the fact that they would be able to withstand a larger judgment," In re Pressure Sensitive Labelstock Antitrust Litig., 584 F.Supp.2d 697, 702 (M.D. Pa. 2008). However, as the Court also emphasized in its prior opinion, the Court can only credit a defendant, here GS, for cooperation that occurred prior to the execution of the settlement agreement. DB & FTN Op. at 19. Nevertheless, here, as discussed in more detail below, GS has provided some cooperation already, thus mitigating GS's ability to withstand a greater judgment to a minor degree.

The seventh Grinnell factor thus weighs moderately against preliminary approval of the GS Settlement Agreement. The Court has recognized, however, that "this factor, standing alone is not enough to require disapproval of [a] settlement at this stage." DB & FTN Op. at 14.

> 2. Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and Attendant Risks of Litigation

Two additional Grinnell factors weigh slightly in favor of preliminarily approving the GS Settlement Agreement. Courts often consider Grinnell factor 8, "the range of reasonableness of the settlement in light of the best possible recovery," and Grinnell factor 9, "the range of reasonableness of the settlement fund to a possible recovery in light of all the

8

attendant risks of litigation," together. In re Payment Card, 330 F.R.D. at 47-48. As discussed supra, some risks would be attendant upon continuing to litigate against GS. Whether these risks justify a settlement in the amount agreed to by plaintiffs, however, requires analysis of the best possible recovery plaintiffs could expect.

Here, the settlement amount falls within the range of reasonableness in light of the best possible recovery. In its prior opinion, the Court held that best possible recovery figures should be based on treble damages. DB & FTN Op. at 17-18. Plaintiffs' treble damages estimate from all defendants is $2.57 billion to $5.04 billion. Given GS's market share of roughly 3.65% (Third Amended Complaint, ECF No. 254, ¶135 (Table 1)), the $20 million Settlement Amount represents 32.6% to 63.9% of GS's proportionate share of the preliminary single damages estimate ($31,280,500 to $61,320,000) and 10.9% to 21.3% of the potential trebled recovery ($93,841,500 to $183,960,000).

While the 10.9% to 21.3% is only fraction of the best possible recovery, courts in this district have approved similar percentages. E.g., In re Currency Conversion Fee Antitrust Litig., No. 01 MDL 1409, 2006 WL 3247396, at *6 (preliminarily approving settlements "representing roughly 10-15% of the credit transaction fees collected by Defendants"). Indeed, this Court preliminarily found that a 13% to 17% figure was a reasonable

9

settlement recovery from DB. DB & FTN Op. at 15. Further, this percentage is much greater than the 6% to 12% recovery that the Court found weighed against preliminary approval of the FTN settlement.

Further still, GS has offered cooperation that has already added some minor value to its settlement agreement. For example, plaintiffs represent that GS has already been of some help to them in drafting their motion for class certification. GS both identified a set of key "chatroom" communications and provided plaintiffs with information that would have otherwise required labor-intensive extraction. Further, plaintiffs represent that GS's data production was among the best of the data productions from Defendants in terms of richness of fields and usefulness at class certification. While this cooperation is not as valuable as DB's cooperation, it nonetheless provides some additional value to the GS settlement. The two Grinnell adequacy factors thus weigh in favor of preliminary approval of the GS Settlement Agreement.

### d. Equitable Treatment of Class Members

After an adequacy assessment, Rule 23(e)(2)(d) finally requires the Court to consider whether "the proposal treats class members equitably relative to each other." The Court has already found that the Plan of Distribution plaintiffs propose

here treats class members equitably. DB & FTN Op. at 20. This factor thus weighs in favor of preliminary approval.

   e. Remaining Grinnell Factor

One Grinnell factor remains that can help guide the Court's decision to preliminarily approve the settlement. This third Grinnell factor requires the Court to consider the stage of the proceedings and amount of discovery completed. The relevant inquiry "is whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement." In re AOL Time Warner, Inc., No. 02 Civ. 5575 (SWK), 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006); see also In re Global Crossing Sec. and ERISA Litig., 225 F.R.D. 436, 458 (S.D.N.Y. 2004) ("Formal discovery is not a prerequisite; the question is whether the parties had adequate information about their claims.").

Here, plaintiffs' counsel is sufficiently well informed. Co-Lead Counsel undertook an eight-month investigation, which included expert analysis of publicly available information and interviews with former GSE bond traders. Pls. Mem. GS 20-21. Further, plaintiffs' counsel has already gone through mediation with GS and two rounds of briefing at the motion to dismiss stage, making it aware of the strengths and weaknesses of plaintiffs' position and that of GS. Finally, significant discovery has taken place, including the substantial completion

11

of data and document production. Taken together, this indicates that plaintiffs have adequate information such that this factor weighs in favor of preliminary approval.

f. Rule 23(e)(2) Conclusion

Most of the Rule 23(e)(2) and Grinnell factors weigh in favor of preliminary approval of the GS Settlement Agreement. The Court thus finds that it will likely be able to approve the GS Settlement Agreement under Rule 23(e)(2).

III. Likelihood of Certification of the Class

In order to preliminary approve the settlement proposals, the Court must also find that it will likely be able to certify the class for purposes of judgment on the proposal. In re Payment Card., 330 F.R.D. at 28. The Court previously found in its DB and FTN settlement opinion that it will likely be able to certify a settlement class substantially similar to the one proposed here. DB and FTN Op. at 22-29. However, there have been some intervening developments related to the Rule 23(b)(3)(A-B) superiority analysis in this case that require discussion.

Rule 23(b)(3)'s superiority analysis requires courts to consider in part "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; [and] (B) the extent and nature of any litigation concerning the controversy already begun by or against class members." Plaintiffs have indicated that two actions making

12

virtually identical allegations and raising substantially the same claims against an overlapping set of defendants have been brought by potential Settlement Class Members outside this District. State of Louisiana v. Bank of America, N.A., No. 3:19-cv-00638 (M.D. La. Sept 23, 2019) ("Louisiana Action"); City of Baton Rouge/East Baton Rouge Parish v. Bank of America, N.A., Docket No. 3:19-cv-00725 (M.D. La. Oct 21, 2019) ("Baton Rouge Action"). These actions were filed by an overlapping set of lawyers on behalf of a total of four plaintiffs (State of Louisiana, Parish Employees Retirement System, City of Baton Rouge/East Baton Rouge Parish, and Police Guaranty Fund), but they are not class actions.

Although these new suits provide some evidence to the contrary, they do not ultimately alter the Court's prior conclusion that a class action is the superior means of adjudicating this controversy. First, there is "no overwhelming interest by class members to proceed individually." Pub. Employees' Ret. Sys. of Mississippi v. Merrill Lynch & Co., 277 F.R.D. 97, 120 (S.D.N.Y. 2011). "[A]s is the case in most securities suits, multiple lawsuits would be inefficient and costly," suggesting that it is in the interest of individuals to resolve their claims via a class action. Id. (citation omitted). Furthermore, by resolving their claims as a class, individuals can increase their bargaining power, and thus potential

13

recovery. Id. Second, the quantity of individual litigation is minimal in the broader scope of this case. Two actions filed by four members of a total class of potentially thousands do not weigh against preliminary approval on settlement grounds. *In re Lehman Bros. Sec. and ERISA Litig.*, No. 09 MD 2017, 2013 WL 440622, at *5 (S.D.N.Y. Jan. 23, 2013) (finding that fewer than one in twenty class members seeking to maintain individual actions did not weigh against superiority).

Intervening developments thus do not alter the Court's prior finding that it is likely to certify the class for purposes of judgment on the proposal.

IV. Notice Plan

Plaintiffs propose the same notice plan and substantially similar forms of notice, conformed to the GS Settlement the Court approved with respect to the DB and FTN settlements. For the reasons outlined in the DB and FTN opinion, the Court finds that the Notice Plan and proposed class notices are reasonable and constitute "the best notice that is practicable under the circumstances," Fed. R. Civ. P. 23(c)(2)(B), and directs their use. DB and FTN Op. at 29-31.

V. Conclusion

The Court ultimately finds that it will likely be able to approve the proposal under Rule 23(e)(2) and certify the class for purposes of judgment on the proposal. For these reasons, the

14

Court preliminarily approved the GS Settlement Agreement on December 12, 2019 and hereby reaffirms that determination.

SO ORDERED.

Dated:   New York, NY

        December 13, 2019                JED S. RAKOFF, U.S.D.J.