UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **IN RE GSE BONDS ANTITRUST LITIGATION** | Case No. 1:19-cv-01704 (JSR) |

**DECLARATION OF TODD A. SEAVER ON BEHALF OF
BERMAN TABACCO IN SUPPORT OF APPLICATION
FOR AWARD OF ATTORNEYS' FEES AND EXPENSES**

I, Todd A. Seaver, declare:

1.      I am a partner at the law firm of Berman Tabacco.  I submit this Declaration in

support of Co-Lead Counsel's application[1] for an award of attorneys' fees and expenses in

connection with services rendered in this action from inception through March 31, 2020.

2.      I am a member in good standing of the bar of the states of California,

Massachusetts and New Hampshire.  I am admitted *pro hac vice* in this matter.

**BERMAN TABACCO'S CLIENT:  IBEW 103**

3.      Berman Tabacco represents Electrical Workers Pension Fund Local 103, I.B.E.W.

("IBEW 103 Pension Plan") and Local 103, I.B.E.W. Health Benefit Plan ("IBEW 103 Health

Plan") (collectively, "IBEW 103") in this action.  IBEW 103, along with the City of Birmingham

Retirement and Relief System ("City of Birmingham") filed the first complaint in this litigation,

---

[1] Unless otherwise defined herein, all capitalized terms have the same meaning as set out in the
Stipulations and Agreements of Settlement with Deutsche Bank (ECF No. 257-1); FTN (ECF No. 267-1);
Goldman Sachs (ECF No. 318-1) Barclays (ECF No. 343-1); and BNP Paribas Securities Corp., Cantor
Fitzgerald & Co., Citigroup Global Markets Inc., Credit Suisse Securities (USA) LLC, HSBC Securities
(USA) Inc., J.P. Morgan Securities LLC, Merrill Lynch, Pierce, Fenner & Smith Inc., Morgan Stanley &
Co. LLC, Nomura Securities International, Inc., SG Americas Securities, LLC, TD Securities (USA)
LLC, and UBS Securities LLC (collectively, "Group Settling Defendants") (ECF No. 343-2).

captioned *City of Birmingham Retirement & Relief System, et al. v. Bank of America, N.A. et al.*, No. 1:19-cv-1704 (S.D.N.Y. Feb. 22, 2019) (the "*City of Birmingham* complaint").

4.      IBEW 103 Pension Plan is a defined benefit retirement plan that provides benefits to over 2,500 retired participants and manages more than $1 billion in assets, while the IBEW 103 Health Plan currently provides benefits to over 16,500 lives including participants and their families.

5.      IBEW 103 was one of two named plaintiffs, along with the City of Birmingham, to file the first action alleging a conspiracy to fix prices of GSE Bonds.  IBEW 103 has remained a named plaintiff in the subsequent consolidated amended complaints, represented by Berman Tabacco throughout.   IBEW 103 serves as a settlement class representative for all of the settlements presently before the Court, and was likewise a proposed class representative in Plaintiffs' motion for class certification filed November 19, 2019.

**BERMAN TABACCO'S ATTORNEYS' FEES AND LITIGATION EXPENSES**

6.      Berman Tabacco has prosecuted this litigation solely on a contingent-fee basis and has been at risk that it would not receive any compensation for prosecuting claims against the Defendants.

7.      Attached hereto as <u>Exhibit A</u> is my firm's total hours and lodestar, computed at current rates, for the period of June 1, 2018 through March 31, 2020.  The total number of hours spent by Berman Tabacco's attorneys and paraprofessionals during this period of time was 2,397.25 hours, with a corresponding lodestar of $1,633,074.75.  My firm's lodestar figures are based on the firm's billing rates which do not include charges for expense items.  Expense items are billed separately and are not duplicated in my firm's billing rates.  This summary was prepared from contemporaneous, daily time records regularly prepared and maintained by my

firm. The lodestar amount reflected in Exhibit A is for work done by Berman Tabacco and was performed by professionals at my law firm for the benefit of the Class.

8.      The time and expense records that form the basis of this declaration have been reviewed to correct billing errors.  I oversaw that review.  In addition, reductions were made in the exercise of billing judgment, to remove all time billed by any attorney or paraprofessional that amounted to under ten (10) total hours for the litigation.  The total hours spent on the litigation through March 31, 2020 by my firm and the corresponding lodestar reflect these corrections and reductions.

9.      The hourly rates for the attorneys and professional support staff in my firm included in Exhibit A are the same as the regular rates charged for their services in contingent fee matters and non-contingent matters, and which have been accepted in other complex or class action litigation.

10.     The total hours dedicated to various litigation tasks – *e.g.*, case investigation, discovery, pleadings and briefing – are presented in Exhibit B for the period of inception through March 31, 2020.  A further breakdown of my firm's hours is presented in Exhibit C, which shows the total hours billed by my firm by month, from inception through March 31, 2020.

11.     Berman Tabacco's expenses in this matter through March 31, 2020 total $347,929.61 in connection with prosecution of the litigation.  Those expenses and charges are summarized in Exhibit D.  This total does not include the contribution Berman Tabacco made to the litigation fund established by Co-Lead Counsel to fund various litigation expenses.

12.     My firm's costs and expenses in connection with the prosecution of this litigation were incurred on behalf of the Class on a contingent basis, and have not been reimbursed.  The expenses incurred in this action are reflected on the books and records of my firm.  These books

and records are prepared from expense vouchers, invoices, check records and other source materials and represent an accurate recordation of the expenses incurred.

## EXPENSE:  CONSULTING EXPERTS

13.     The following paragraphs supply additional information regarding the chief category of expenses, consulting experts.  Payments made and owed to consulting experts represent 85% of my firm's litigation expenses incurred through March 31, 2020.  *See* Exhibit D.[2]

14.     **Vega Economics**.  Berman Tabacco retained Vega Economics ("Vega Economics" or "Vega") a premier full-service consulting firm with expertise in economics, finance, and capital markets.  At my direction, Vega Economics performed significant work investigating the GSE Bond market beginning in June 2018.  Vega supplied regular, monthly invoices for the time periods in which they performed work that included detailed billing descriptions for hourly work.  Berman Tabacco retains Vega's invoices in our books and records. All the work done by Vega Economics was with the pre-approval of Berman Tabacco, and after May 3, 2019, with the pre-approval of Co-Lead Counsel.  Attorneys from my firm, principally myself and Carl Hammarskjold, worked closely with Vega Economics throughout the course of the engagement.

15.     Vega Economics has billed Berman Tabacco a total of $248,479.75 at mixed hourly rates for its work on this matter.  Of this total, Berman Tabacco's expense is $243,496.19.[3]

---

[2] My firm's travel expenses through March 31, 2020 total $46,276.  Those travel expenses are described and presented in Exhibit E.

[3] One payment in the amount of $4,983.56 was made by the Litigation Fund to Vega Economics, which payment is not included in the $243,496.19 amount for which Berman Tabacco requests reimbursement.

16.     Berman Tabacco has paid $205,306.51 with an outstanding balance owed by Berman Tabacco of $38,189.68.  My firm requests payment of $243,496.19 from the Settlement Fund for reimbursement of the monies paid to Vega Economics and for payment of the unpaid balance owed.[4]

17.     At my direction Vega Economics acquired a license to the "enhanced, historical TRACE data" product that includes details of secondary market GSE Bond trades that are required to be reported by registered broker-dealers to FINRA.  The non-public, "enhanced, historical TRACE data" product for which the license was purchased contains more data fields than the public version, and includes over 14,000 bonds issued by GSEs and data for over 5.9 million total transactions.

18.     Vega Economics used the enhanced TRACE data to analyze prices for GSE Bonds, and detected several pricing patterns consistent with an agreement among Defendants to fix prices.

19.     Berman Tabacco shared Vega Economics' work product with Scott+Scott and Lowey starting in the summer of 2018 when the firms began to collaborate.  The work done by Vega Economics was included with the other expert work of Co-Lead Counsel and together the expert analyses formed the economic allegations in the first-filed complaint filed City of Birmingham and IBEW on February 22, 2019 and the complaint filed by the Pennsylvania Treasury on March 19, 2019.

20.     Consequently, the *City of Birmingham* and *Pennsylvania Treasury* complaints benefited from reliance on Berman Tabacco's and Vega Economics' work with the enhanced, historical TRACE data.

---

[4] The Vega Economics invoices described in this declaration do not overlap with any paid from the Litigation Fund as detailed in the Declaration of Daryl Scott, filed concurrently herewith.

21.     During the Rule 23(g)(3) leadership contest in April 2019, I directed Vega Economics to provide economic analyses to rebut assertions made by other plaintiffs' firms whose competing leadership applications questioned the economic fact allegations in the *City of Birmingham* and *Pennsylvania Treasury* complaints.

22.     At the request of Co-Lead counsel, I directed Vega to revise much of its earlier economic analyses for the purpose of using it to form fact allegations in the Consolidated Amended Class Action Complaint ("CAC") that would take into account new information provided by a settling, cooperating defendant (Deutsche Bank).

23.     Vega thus revised its analyses of prices charged by defendants compared to non-defendants to reflect the addition of new defendants named in the CAC as well as a longer Class Period and additional issuers of GSE Bonds.

24.     Co-Lead Counsel requested that Vega provide information and assistance to Econ One, an economics consulting firm more recently retained by Co-Lead Counsel, and confer with Co-Lead Counsel regarding Vega's revised GSE Bond analysis for the CAC.  I directed Vega to perform these tasks for the benefit of my client IBEW and the Class.

25.     In June 2019, Co-Lead Counsel asked Berman Tabacco to obtain Vega's assistance to examine the Defendants' attacks on the economic allegations in the CAC to the extent the attacks related to the enhanced TRACE data or to the work already done by Vega. This assistance included explaining the reliability of averages, describing the suitability TRACE data for identifying secondary-market transactions, and defending particular charts and figures in the CAC.

26.     Defendants served document requests and interrogatories on each named plaintiff, including IBEW 103.  Some of the discovery requests pertained to the economic analyses Vega

had performed for the complaint.  In August 2019, at the request of Co-Lead Counsel and directed by me, Vega provided certain information used in Plaintiffs' responses to Defendants' discovery requests, and assisted Plaintiffs' counsel in connection with subsequent meet-and-confers regarding those responses.

27.     **Sonecon LLC**.  In December 2018, Berman Tabacco retained Sonecon LLC ("Sonecon"), a Washington DC-based economic advisory firm that counts the regulatory and capital market operations of Fannie Mae and Freddie Mac among its areas of economic expertise. Sonecon billed a total of $53,700 to Berman Tabacco, all of which Berman Tabacco has paid.  My firm retains the detailed billing invoices.  My firm requests reimbursement of the $53,700 paid to Sonecon LLC.

28.     Sonecon's purpose was to consult with Berman Tabacco regarding Sonecon's expertise with Fannie Mae and Freddie Mac, the two largest issuers of GSE Bonds.  In particular, Sonecon's experience and background provided insight into the specific ways the secondary market for GSE Bonds might have been manipulated by the Defendants.  Sonecon's engagement was discrete and focused on this question. Sonecon's work was utilized by Berman Tabacco in Berman Tabacco's contribution to the *City of Birmingham* complaint, the first-filed complaint in this litigation and in subsequent complaints.

29.     Sonecon performed an analysis of the markets for unsecured debt issued by Fannie Mae and Freddie Mac and identified opportunities to influence or manipulate the prices of Fannie/Freddie bonds by taking advantage of certain features and procedures followed in those markets.  In particular, Sonecon studied the ways various types of Fannie and Freddie bonds came to market, including via syndication, and advised on that process and the

opportunities it afforded banks to collude.  Sonecon produced a thorough report on this topic that is reflected in the complaints filed on behalf of IBEW 103, the other Plaintiffs and the Class.

## BERMAN TABACCO'S HOURS AND LODESTAR

30.     The paragraphs below describe the principal work undertaken from inception through March 31, 2020 for which my firm requests an award of attorneys' fees.

31.     The bulk of all the work done by my firm to prosecute the action was concentrated in three attorneys and one financial analyst.  Myself, my partner Leslie Stern, associate Carl Hammarskjold and financial analyst Jessica Misra performed 80% of the work as measured by lodestar.  *See* Exhibit A.

32.     Berman Tabacco, starting June 1, 2018, spent eight months assisting in the development this case.  Beginning in August 2018, a substantial part of my work and that of my firm was in regular collaboration with attorneys from Scott + Scott and Lowey Dannenberg, as well as a fourth firm, Korein Tillery.  Our firms worked together to combine complementary investigatory and economic forces in order to bring the first actions alleging a conspiracy to fix prices of GSE Bonds.

33.     I led Berman Tabacco's pre-complaint investigation which included work with professional economists (as detailed above), industry consultants and former market participants.  It also included speaking with institutional investors to investigate the role Fannie/Freddie bonds play in their investment portfolios, to understand the methods by which they purchase Fannie/Freddie bonds, and understand the mechanics of the bond transactions.

34.     At my direction, Berman Tabacco's in-house investigators and staff researched GSE bond traders' websites, social media profiles, and other public sources to identify current

and former employees in the GSE bond market to approach for information.  The investigators'
time totaled over 100 hours, and is reflected on Exhibit A.

35.     I and another Berman Tabacco attorney also interviewed three traders employed
by one of the largest public pension funds in the United States, who provided insight into the
workings of the over-the-counter market and interactions between dealers and customers.  The
first-filed complaints and amended complaints in this action benefited from this work.

36.     In 2018, Carl Hammarskjold and I worked with Co-Lead Counsel to draft a
version of what became the first-filed complaint in this litigation.  These efforts accelerated in
January 2019 until our client IBEW 103 and City of Birmingham filed the first complaint on
February 22, 2019.

37.     Thereafter, Berman Tabacco analyzed and evaluated the multiple follow-on
complaints that were filed in February and March 2019, including those from other law firms
that differed substantially from those filed by Berman Tabacco, Scott+Scott, and Lowey.

38.     Berman Tabacco took part in briefing the Rule 23(g)(3) leadership application
and related proposed schedules and orders in April 2019.  Berman Tabacco successfully
supported the appointment of Co-Lead Counsel Scott + Scott and Lowey Dannenberg, and I
appeared at the initial status conference on April 2, 2019 and the April 26, 2019 hearing on the
competing Rule 23(g) leadership motions.

39.     Berman Tabacco, on behalf of our client IBEW 103, contributed to select portions
of the preliminary approval motions for all of the various settlements with Defendants, which
propose client IBEW 103 as a settlement class representative.

**DISCOVERY**

40.     Berman Tabacco performed work on discovery matters through December 2019 when the final, Group Settlement was reached.  The discovery work performed by Berman Tabacco was almost entirely with regard to our client IBEW 103.  Berman Tabacco gathered information and documents from IBEW 103 to make required initial disclosures and, subsequently, to respond to Defendants' written document requests and interrogatories.  My firm also worked with retained consulting economists Vega Economics to produce data, information and other responses to Defendants' document requests and interrogatories, which implicated much of the pre-complaint work.

41.     In May 2019, Berman Tabacco interviewed personnel at IBEW 103 and gathered information from IBEW 103 for initial disclosures.

42.     In June 2019, Berman Tabacco and Vega Economics helped respond to Defendant's request for data and analyses used to draft the Consolidated Amended Complaint and interviewed IBEW 103 personnel regarding sources of ESI and searches for documents responsive to Defendants' discovery requests.  Berman Tabacco attorneys also interviewed and gathered information from IBEW 103 personnel to provide verified answers to Defendants' interrogatories.

43.     Berman Tabacco attorneys, including me, were responsible for drafting and did draft the objections and substantive responses to the interrogatories propounded on IBEW.  We also collaborated with Co-Lead Counsel in order to produce an omnibus set of objections and responses to the document requests propounded on all Plaintiffs.

44.     In July 2019, Berman Tabacco participated in meet-and-confers with Defendants regarding their written discovery requests served on IBEW 103.  We also worked with Vega

Economics to investigate and draft supplemental responses to a particular interrogatory seeking information and evidence about the economic analyses in the CAC (for which Vega had been primarily responsible).

45.     Berman Tabacco participated in meet-and-confers with Defendants regarding their written discovery requests served on IBEW 103 and subsequently worked with IBEW 103 to search for, collect, review and produce responsive documents.

46.     In August and September 2019, Berman Tabacco collected and reviewed additional data from IBEW 103's third-party custodial bank for production to Defendants.  In September 2019, I initiated and held an in-person meet-and-confer with counsel for a Defendant regarding my client IBEW 103's forthcoming document and data collection and production.

47.     In November 2019 Berman Tabacco tracked third-party subpoenas for documents and testimony served by Defendants on client IBEW's external money managers, and prepared strategy for potentially appearing at any resulting depositions.

48.     In November 2019 Berman Tabacco accepted service from Defendants of a Rule 30(b)(6) deposition notice to client IBEW 103.  We worked with our client to ascertain information and files to review in order for a designee witness to provide responsive testimony to various topics.  Berman Tabacco attorney Carl Hammarskjold drafted objections to certain topics, and worked with Co-Lead Counsel on an omnibus set of such objections.

49.     I worked with client IBEW 103 to identify a 30(b0(6) designee and to prepare for giving testimony.  IBEW 103's 30(b)(6) deposition was scheduled for December 16, 2019 in New York City.  Preparations with client IBEW 103 for the deposition were underway when a settlement in principle was reached with all remaining Defendants the week prior, and the deposition date was suspended.

## SETTLEMENTS WITH DEUTSCHE BANK, FTN AND GOLDMAN SACHS

50.     My partner Leslie Stern and I kept our client IBEW 103 apprised of all significant developments in the litigation, including settlement negotiations with Deutsche Bank, FTN, and Goldman Sachs.  We apprised IBEW 103 of litigation risks and the pro's and con's of reaching each of the settlement agreements now before the Court.

51.     My partners Leslie Stern and Joseph J. Tabacco, Jr. attended the in-person mediation with Deutsche Bank in New York City that led to the settlement now before the Court. They kept IBEW 103 apprised of the developments within the mediation and obtained IBEW 103's informed authorization to ultimately accept the settlement terms with Deutsche Bank.

52.     Ms. Stern attended the in-person mediation with First Tennessee in Chicago, Illinois that led to the settlement now before the Court.  Ms. Stern kept IBEW 103 apprised of the developments within the mediation and obtained IBEW 103's informed authorization to ultimately accept the settlement terms with First Tennessee.

53.     I attended the in-person mediation with Goldman Sachs in New York City that led to the settlement. I kept IBEW 103 apprised of the developments within the mediation over the course of the day and obtained IBEW 103's informed authorization to accept the settlement terms with Goldman Sachs.

## SETTLEMENTS WITH  BARCLAYS AND GROUP SETTLING DEFENDANTS

54.     In November 2019 I received information from Co-Lead Counsel regarding the fact of settlement negotiations with counsel for Barclays and an offer of settlement.  My partner Leslie Stern and I presented the confidential offer of settlement to client IBEW 103, discussed it with the client, and obtained client authorization to proceed with the negotiation and acceptance of the ultimate terms.  I communicated this authorization to Co-Lead Counsel.

55.     December 2, 2019, I attended the mediation in New York City presided over by Hon. Layn Phillips (Ret.) with the Group Settling Defendants.  I kept IBEW 103 apprised of the developments within the mediation over the course of the day, which ended without an agreement.

56.     In the week subsequent to the mediation, I stayed in communication with Co-Lead Counsel regarding continued settlement negotiations held through the mediator.  I kept client IBEW 103 informed of developments and obtained client authorization to agree to the settlement with the Group Settling Defendants now before the Court.

## BERMAN TABACCO'S QUALIFICATIONS

57.     A firm description can be seen at https://www.bermantabacco.com/about-the-firm/.  A firm biography was submitted to the Court and is found at ECF Dkt. No. 96-6, at pp. 15-30.

58.     Berman Tabacco is a national law firm with 35 attorneys and a team of in-house investigators located in offices in Boston and San Francisco.  Since its founding in 1982, the firm has devoted its practice to complex litigation, primarily representing plaintiffs seeking redress under U.S. federal and state antitrust and securities laws.  My firm represents clients ranging from Fortune 500 companies and public pension funds to individual consumers.   Our Antitrust Practice Group, which I lead, has engineered substantial settlements and changed business practices of defendant companies, recovering more than $2 billion for class members overall.

59.     Berman Tabacco is recognized as a top plaintiffs' firm in complex litigation. The Firm has been recognized as a *Top Ten Plaintiffs* firm in 2019 by *Benchmark Litigation* for its work in antitrust and securities matters, the third consecutive year the Firm has received such distinction. *Benchmark* has also ranked the Firm as *Highly Recommended* since 2012.  Since

2017 *Chambers USA* and *The Legal 500* has recognized Berman Tabacco as a leading securities litigation firm.  *U.S. News – Best Lawyers* in its *Best Law Firms* (2019 ed.) recognized Berman Tabacco in the field of antitrust litigation.

I declare under penalty of perjury pursuant to the laws of the United States that the foregoing is true and correct.

Dated: April 10, 2020
San Francisco, CA

_____

Todd A. Seaver

# EXHIBIT A

**In re GSE Bonds Antitrust Litig.**
**Hour & Lodestar by Timekeeper**

Firm Name:   Berman Tabacco
Reporting Period:   Inception through March 31, 2020

| TIMEKEEPER | POSITION | HOURLY RATE | CUMULATIVE HOURS | CUMULATIVE LODESTAR |
|---|---|---|---|---|
| Bastien, Mackline | Staff Attorney | $400.00 | 104.25 | **$41,700.00** |
| Hammarskjold, Carl | Associate | $540.00 | 720.40 | **$389,016.00** |
| Lavallee, Nicole | Partner | $965.00 | 23.60 | **$22,774.00** |
| Didrickson, Karen | Staff Attorney | $460.00 | 14.00 | **$6,440.00** |
| Lee, Berna | Staff Attorney | $400.00 | 86.25 | **$34,500.00** |
| Rearden, John | Staff Attorney | $400.00 | 26.50 | **$10,600.00** |
| Seaver, Todd | Partner | $880.00 | 773.50 | **$680,680.00** |
| Stern, Leslie | Partner | $945.00 | 178.55 | **$168,729.75** |
| Tabacco, Joseph | Partner | $985.00 | 107.10 | **$105,493.50** |
| Beaulieu, Karen | Financial Analyst | $415.00 | 11.00 | **$4,565.00** |
| Becker, Kathy | Paralegal | $390.00 | 15.00 | **$5,850.00** |
| Segura, Beto | Paralegal | $360.00 | 13.60 | **$4,896.00** |
| Houghton, James | Investigators | $575.00 | 23.00 | **$13,225.00** |
| Keating, Ronald | Investigators | $575.00 | 95.50 | **$54,912.50** |
| Misra, Jessica | Financial Analyst | $475.00 | 138.20 | **$65,645.00** |
| Raney, Stephanie | Paralegal | $360.00 | 66.80 | **$24,048.00** |
| **GRAND TOTAL:** | | | **2397.25** | **$1,633,074.75** |

# EXHIBIT B

Firm Name:   Berman Tabacco
Reporting Period:   Inception through March 31, 2020

**HOURS BY TASK CATEGORY**

| Task Category | Total Hours | |
|---|---|---|
| Case Investigation/Complaints | 816.60 | |
| Written discovery/meet and confer | 445.75 | |
| Pleadings, motions, briefs | 658.10 | |
| Legal research/memoranda | 78.50 | |
| Litigation strategy & case management | 83.60 | |
| Mediation/Settlement | 314.70 | |
| Grand Total - Hours | | 2397.25 |

# EXHIBIT C

Firm Name:   Berman Tabacco
Reporting Period:   Inception through March 31, 2020

**HOURS BY MONTH**

| Month | Total Hours | |
|---|---|---|
| Jun-18 | 56.40 | |
| Jul-18 | 170.65 | |
| Aug-18 | 219.25 | |
| Sep-18 | 122.00 | |
| Oct-18 | 226.20 | |
| Nov-18 | 140.40 | |
| Dec-18 | 78.80 | |
| Jan-19 | 121.20 | |
| Feb-19 | 164.10 | |
| Mar-19 | 122.35 | |
| Apr-19 | 219.90 | |
| May-19 | 49.50 | |
| Jun-19 | 120.20 | |
| Jul-19 | 113.30 | |
| Aug-19 | 33.40 | |
| Sep-19 | 82.20 | |
| Oct-19 | 131.70 | |
| Nov-19 | 129.60 | |
| Dec-19 | 96.10 | 2397.25 |

# EXHIBIT D

**EXHIBIT D**

NAME:  <u>BERMAN TABACCO</u>                          PERIOD:  <u>Inception through March 31, 2020</u>

**In re GSE Bonds Antitrust Litig.**
**COSTS**

| CATEGORY | DESCRIPTION (If necessary) | | CUMULATIVE COSTS |
|---|---|---|---|
| Court Costs | | | $619.00 |
| Experts/consultants | | | $297,196.19 |
| | Sonecon, LLC | $53,700.00 | |
| | Vega Economic Consulting | $243,496.19 | |
| Federal Express | | | $87.27 |
| Lexis/Westlaw | | | $1,468.02 |
| Photocopies - in House | 19,610 copies @ $.10/copy | | $1,961.00 |
| Postage | | | $0.94 |
| Telephone/telecopier | | | $279.10 |
| Travel | | | $46,276.67 |
| Miscellaneous | Barnes & Noble C. Hammarskjold | | $41.42 |
| **TOTAL** | | | $347,929.61 |

# EXHIBIT E

**Berman Tabacco**
**GSE Bonds Antitrust**
**Travel, Meals and Lodging - Inception through 3/31/2020**
**Transportation, Lodging and Meals total:  $46,276.67**

| NAME | DATE | DESTINATION | PURPOSE |
|------|------|-------------|---------|
| Stern, Leslie | 4/2/19 to 4/3/19 | New York, New York | Prepare for, travel to and attend planning meeting and court status conference |
| Stern, Leslie | 6/30/19 to 7/2/19 | New York, New York | Travel to, prepare for and attend mediation with Deutsche Bank |
| Stern, Leslie | 7/7/19 to 7/8/19 | Chicago, Illinois | Travel to, prepare for and attend mediation with First Tennessee |
| Seaver, Todd | 4/1/19 to 4/3/19 | New York, New York | Prepare for, travel to and attend court-ordered status conference |
| Seaver, Todd | 4/25/19 to 4/27/19 | New York, New York | Prepare for, travel to and attend hearing on lead counsel and consolidation of cases |
| Seaver, Todd | 7/22/19 to 7/24/19 | New York, New York | Prepare for, travel to and attend hearing on motions to dismiss |
| Seaver, Todd | 9/26/19 to 9/27/19 | New York, New York | Prepare for, travel to and attend hearing on second motion to dismiss; Meet and confer in-person with defense counsel on discovery requests directed to client IBEW |
| Seaver, Todd | 10/1/19 to 10/3/19 | New York, New York | Prepare for, travel to, and participate in mediation with Goldman Sachs |
| Seaver, Todd | 10/10/19 to 10/11/19 | New York, New York | Prepare for, travel to and attend hearing on preliminary approval motion for Deutsche Bank and FTN settlements |
| Seaver, Todd | 11/30/19 to 12/3/19 | New York, New York | Prepare for, travel to, and participate in mediation with Group Defendants |
| Seaver, Todd | 2/4/20 to 2/5/20 | New York, New York | Prepare for, travel to and attend hearing on preliminary approval of Barclays settlement |
| Seaver, Todd | 2/27/20 to 2/28/20 re-scheduled for 6/8/20 to 6/10/20 | New York, New York | Purchased air travel and lodging for final fairness hearing for Deutsche Bank, FTN and Goldman Sachs settlements.  By Court order, hearing continued to June 9, 2020 for combined final fairness hearing on all settlements |

| | | | |
|---|---|---|---|
| Tabacco, Joseph | 6/30/19 to 7/3/19 | New York, New York | Prepare for, travel to and participate in mediation with Deutsche Bank |