UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————— x

*In re* GSE Bonds Antitrust Litigation

——————————————————— x

Civil Action No. 1:19-cv-01704-JSR

<u>CLASS ACTION</u>

DECLARATION OF GEORGE A. ZELCS FILED ON BEHALF OF KOREIN TILLERY LLC IN SUPPORT OF APPLICATION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES

I, GEORGE A. ZELCS, declare as follows:

1.       I am a partner in the firm Korein Tillery LLC. I am submitting this declaration in support of Co-Lead Counsel's[1] application for an award of attorneys' fees and expenses in connection with services rendered in the above-entitled action.

2.       This firm is counsel of record for City of Birmingham Retirement and Relief System, Electrical Workers Pension System Local 103, I.B.E.W., and Local 103, I.B.E.W. Health Benefit Plan.

3.       The information in this declaration regarding the firm's time and expenses is taken from time and expense printouts prepared and maintained by the firm in the ordinary course of business. I am the partner who oversaw and/or conducted the day-to-day activities in the litigation and reviewed these printouts (and backup documentation where necessary or appropriate). The purpose of these reviews was to confirm both the accuracy of the entries on the printouts as well as the necessity for, and reasonableness of, the time and expenses committed to the litigation. As part of this review, certain reductions were made in the exercise of billing judgment. As a result of this review, I believe that the time reflected in the firm's lodestar calculation and the expenses for which payment is sought are reasonable in amount and were necessary for the effective and efficient prosecution and resolution of the litigation. In addition, I believe that the expenses are all of a type that would normally be charged to a fee-paying client in the private legal marketplace.

4.       The number of hours spent on this litigation by my firm is 296.39. A breakdown of the lodestar is provided in Exhibit A, along with breakdowns of hours by month and task

---

[1] Unless otherwise defined herein, all capitalized terms have the same meaning as set out in the Stipulations and Agreements of Settlement with Deutsche Bank Securities Inc. (ECF No. 257-1); FTN (ECF No. 267-1); and Goldman Sachs (ECF No. 318-1).

category. The lodestar amount for attorney/paraprofessional time based on the firm's current rates is $234,689.00. The hourly rates shown in Exhibit A are the usual and customary rates set by the firm for each individual. Lodestar amounts do not include charges for expense items.

5.      Korein Tillery was involved in this case several months before the complaint was filed. Korein Tillery investigated the GSE Bond market, reviewed background materials, and worked with economic experts and industry insiders prior to filing the complaint. Korein Tillery worked closely with Co-Lead Counsel to draft the complaint and to develop a litigation strategy. Upon filing the complaint, Korein Tillery reviewed the other filed complaints and assisted in preparing Co-Lead Counsel's leadership application and briefs in reply, including preparing for and attending the hearing on the appointment of lead counsel. Korein Tillery also assisted Co-Lead Counsel in meeting and conferring about, and agreeing on, a Proposed Case Management Order.

6.      My firm's expenses in this matter total $5,645.20 in connection with the prosecution of the litigation. Those expenses and charges are summarized by category in Exhibit B. Expense items are billed separately, and such charges are not duplicated in the firm's current billing rates. Further, expense items do not contain any general overhead costs and do not contain a surcharge over the amount paid to the corresponding vendor(s). This total does not include the contribution Korein Tillery made to the litigation fund established by Co-Lead Counsel to fund various litigation expenses.

7.      The following is additional information regarding certain of these expenses:

(a)      Meals, Hotels and Transportation: $2,721.93. In connection with the prosecution of this case, the firm has paid for travel expenses to, among other things, attend court hearings. The date, destination, and purpose of each trip is set forth in Exhibit C.

(b)      Photocopying: $91.60. In connection with this case, the firm made 916 pages of in-house copies, charging $0.10 per page. Each time an in-house copy machine is used, our billing system requires that a case or administrative billing code be entered and that is how the copies were identified as related to this case.

(c)      Court Costs: $450. In connection with Korein Tillery's representation in this case, the firm incurred fees to obtain certificates of good standing and to apply for two attorneys to be admitted to this Court *pro hac vice*.

(d)      Westlaw and Pacer: $2,052.46. These databases were used to obtain access to court filings, legal research, and for cite-checking of briefs. The expense amount detailed herein represents the out-of-pocket costs incurred by Korein Tillery in connection with use of these services for purposes of this litigation. Korein Tillery has a flat-rate contract with Westlaw for use of their services. When Korein Tillery utilizes such services, a billing code is entered for the specific case being litigated. At the end of each billing period in which a service is used, Korein Tillery' s costs for such services are allocated to specific cases based on the percentage of use in connection with that case in the billing period. As a result of the contract negotiated by Korein Tillery, the Class enjoys substantial savings in comparison with the "market-rate" for *a la carte* use of such services, which some law firms pass on to their clients. The "market rate" that would have been charged by Westlaw for the services used by Korein Tillery each month is routinely five to ten times more expensive than the rates negotiated by Korein Tillery that provide the basis for the expenses set forth herein.

7.      The expenses pertaining to this case are reflected in the books and records of this firm. These books and records are prepared from receipts, expense vouchers, check records and other documents and are an accurate record of the expenses.

8.      The identification and background of my firm and its partners is attached hereto as Exhibit D.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 6th day of January, 2020, at Chicago, Illinois.

_____

George A. Zelcs

EXHIBIT A

Inception through May 3, 2019

| *NAME* | | *HOURS* | *RATE* | *LODESTAR* |
|---|---|---|---|---|
| Berezney, Steve | (P) | 6.30 | 850 | 5,355.00 |
| Ewing, Randall Jr. | (P) | 185.45 | 800 | 148,360.00 |
| Litan, Robert | (P) | 2.60 | 1,150 | 2,990.00 |
| Zelcs, George | (P) | 63.39 | 1,100 | 69,729.00 |
| Bell, Chad | (A) | 1.10 | 575 | 632.50 |
| Cortazar, Ryan | (A) | 0.50 | 425 | 212.50 |
| Bannester, Michael | (NA) | 14.00 | 200 | 2,800.00 |
| Collantes, Frankie | (NA) | 1.50 | 200 | 300.00 |
| Tuttle, Darcy | (NA) | 21.55 | 200 | 4,310.00 |
| *TOTAL* | | **296.39** | | **$234,689.00** |

(P) Partner
(A) Attorney
(NA) Non-Attorney

## Hours by Month

| Month | Hours |
|---|---|
| June 2018 | 0.0 |
| July 2018 | 0.0 |
| August 2018 | 0.0 |
| September 2018 | 0.0 |
| October 2018 | 7.85 |
| November 2018 | 4.50 |
| December 2018 | 33.82 |
| January 2019 | 44.43 |
| February 2019 | 32.62 |
| March 2019 | 50.54 |
| April 2019 | 115.27 |
| May 2019 | 7.36 |
| June 2019 | 0.0 |
| July 2019 | 0.0 |
| August 2019 | 0.0 |
| September 2019 | 0.0 |

**Hours by Task Category**

| Task Category | Total Hours |
|---|---|
| Case Investigation & Complaints | 150.33 |
| Discovery & Expert Work | 0.0 |
| Pleadings, Motions & Hearings | 76.90 |
| Litigation Strategy & Case Management | 69.16 |
| Settlement & Mediation | 0.0 |

EXHIBIT B

EXPENSES

Inception through May 2, 2019

| *Category* | *Total* |
|---|---|
| Meals, Hotel & Transportation | 2,721.93 |
| Prints/Copies (916 @ $0.10 per page) | 91.60 |
| Postage/Shipping | 312.02 |
| Research | 2,052.46 |
| Court Costs | 450.00 |
| Phone/Conference Calls | 17.19 |
| *Total* | *$5,645.20* |

EXHIBIT C

Meals, Hotels, and Transportation: $2721.93

| *NAME* | *DATE* | *DESTINATION* | *PURPOSE* |
|---|---|---|---|
| Zelcs, George | 04/02/19-04/04/19 | New York, NY | Meeting with Chris Burke and Vince Briganti |
| Zelcs, George | 04/25/19-04/27/19 | New York, NY | Attend hearing to appoint lead counsel |

# KOREIN TILLERY

*Attorneys at Law*

One U.S. Bank Plaza
505 N. 7th Street, Suite 3600
St. Louis, Missouri 63101
Tel.: 314.241.4844
Fax: 314.241.3525

205 North Michigan, Suite 1950
Chicago, Illinois 60601-4269
Tel: 312.641.9750
Fax: 312.641.9751

www.koreintillery.com

Korein Tillery — based in Chicago and St. Louis — is one of the country's leading and most successful plaintiffs' complex-litigation firms, representing a broad array of clients in high-stakes lawsuits and delivering over $18 billion in verdicts and settlements over the last 14 years. Most of our attorneys have represented both plaintiffs and defendants at some point in their careers, and, combined, we've handled cases covering virtually every conceivable substantive area of the law. We've litigated cases for clients ranging from individuals and certified classes to governmental entities and billion-dollar, multi-national corporations. Collectively, we've tried hundreds of cases to verdict, with several verdicts exceeding 10 figures. Our attorneys have been nominated for numerous regional and national trial lawyer awards, and we've won many landmark decisions in state and federal appellate courts, including the Supreme Court of the United States.

The National Law Journal has consistently deemed Korein Tillery to be one of the country's top plaintiffs' firms by naming it to its "Plaintiffs' Hot List" seven times in the past 15 years. In 2014 and 2015, Korein Tillery was named by the NLJ as a member of its top 50 Elite Trial Lawyers. The American Bar Association's Securities Litigation Journal deemed two of Korein Tillery's cases, *Kircher v. Putnam Funds Trust,* 547 U.S. 633 (2006) and *Merrill Lynch Pierce Fenner & Smth, Inc. v. Dabit,* 547 U.S. 71 (2006), the two most important securities law decisions in 2006. Securities Litigation Journal, *Top 10 Securities Law Decisions of 2006* (Winter 2006). In *Kircher,* Korein Tillery served as lead counsel for the plaintiffs' class from the initial trial court filing to the Supreme Court of the United States, where the Court reversed the Seventh Circuit in a 9-0 decision.

Korein Tillery has been appointed as class counsel in more than fifty class actions and has successfully negotiated some of the country's largest class action settlements. *See, e.g., Parker v. Sears Roebuck & Co.,* Case No. 04-L-716 (Ill. Cir. Ct. Jan. 16, 2008) (settlement valued at $544.5 million); *Cooper v. The IBM Pers. Pension Plan,* 2005 WL 1981501, 35 Employee Benefits Cas. 2488 (S.D. Ill. Aug. 8, 2005) ($325 million settlement); *Sparks v. AT&T Corp.,* 96-LM-983 (Ill. Cir. Ct. Nov. 4, 2002) ($350 million settlement); *Sullivan v. DB Investments, Inc.,* 04-2819 (D.N.J. May 22, 2008) ($323 million settlement); *Folkerts v. Illinois Bell Tel. Co.,* 95-L-912 (Ill. Cir. Ct. July 7, 1998) ($252 million settlement); *Berger v. Xerox Corp. Ret. Income Guar. Plan,* 2004 WL 287902, 32 Employee Benefits Cas. 1362 (S.D. Ill. Jan. 22, 2004) ($240 million settlement); *Malloy v. Ameritech,* 98-488-GPM (S.D. Ill. July 21, 2000) ($180 million settlement); *City of Greenville v. Syngenta Crop Prot., Inc.,* 3:10-CV-188-JPG-PMF, 2012 WL 1948153 (S.D. Ill. May 30, 2012) ($105 million settlement); *In Re: MCI Non-Subscriber Tel.*

*Rates Litig.*, MDL 1275 (S.D. Ill. Apr. 19, 2001) ($99 million settlement); and *Dunn v. BOC Group Pension Plan*, 01-CV-382-DRH (S.D. Ill. Mar. 12, 2004) ($70 million settlement).

## The Firm Attorneys Who Worked On the Case

### George A. Zelcs

George Zelcs focuses his practice in the areas of complex commercial litigation including securities, antitrust, consumer fraud, qui tam/whistleblower, and pharmaceutical litigation in state and federal courts. Mr. Zelcs completed his undergraduate degree at Indiana University (B.A. Political Science, Urban Planning, and Sociology) in 1976. He received his law degree at Chicago-Kent College of Law and was admitted to practice law in Illinois in 1979. He is admitted to practice before the U.S. Court of Appeals for the Second Circuit (2013), Fifth Circuit (1999), Seventh Circuit (1980), Eighth Circuit (1996), Tenth Circuit (1982), and Eleventh Circuit (1993), the U.S. Tax Court (1984), the U.S. Court of Federal Claims (2013), the Supreme Court of the United States (2005), and the U.S. District Courts for the Northern and Southern District of Illinois.

Mr. Zelcs has frequently served as lead counsel in numerous complex multi-party litigations. Most recently, he has represented the National Credit Union Administration in mortgage back securities litigation against certain global investment backs resulting in over $5 billion in recoveries for the NCUA. He has served in an instrumental role in developing and litigating the claims in *In re: Foreign Exchange Benchmark Rates Antitrust Litigation* No. 13-cv-07789-LGS (S.D.N.Y.) (Schofield, J.), resulting in $2.3 billion in recoveries to date. He served as co-lead counsel in *Axiom Investment Advisors, LLC v. Barclays Bank PLC*, No. 15-cv-9323-LGS (S.D.N.Y.) (Schofield, J.), a class action regarding "last look" practices in foreign exchange trading, resulting in a $50 million settlement of breach of contract and other claims.

Mr. Zelcs has conducted bench and jury trials in state and federal courts throughout the United States. In *Price, et al vs. Philip Morris USA, Inc.,* No. 001-0112 (Third Judicial Circuit, Illinois) (Byron, J.) he co-tried a class action asserting consumer fraud claims and achieved a $10.1 billion dollar judgment.

He serves on the Chicago-Kent Board of Overseers and as a Trustee for the Chicago-Kent Institute on the Supreme Court of the United States. He has testified, at the invitation of the New York State Assembly, regarding financial guaranty insurance and representations and warranties made by mortgage originators in mortgage-backed securities.

### Randall P. Ewing, Jr.

Randall Ewing is a partner at Korein Tillery's Chicago office. Mr. Ewing attended the University of Louisville Law School, where he earned the highest grade in nearly half of the classes that he took. Upon graduating *summa cum laude* in 2007, he clerked for Judge Gordon J. Quist of the U.S. District Court for the Western District of Michigan and then for Judge Kermit E. Bye of the U.S. Court of Appeals for the Eighth Circuit. While clerking, Mr. Ewing published the article: *Same-Sex Marriage: A Threat to Tiered Equal Protection Doctrine?* 82

St. John's L. Rev. 1409 (2008). Mr. Ewing is licensed to practice law in Illinois, Florida, the United States Court of Appeals for the Sixth and Eighth Circuits, and four federal district courts, including the Northern District of Illinois.

Before joining Korein Tillery, Mr. Ewing was an associate at Boies Schiller & Flexner. While there, Mr. Ewing was part of the team that a brought a first-of-its-kind federal challenge to a state constitutional amendment banning same-sex marriage (California's Proposition 8), which was tried and found to be unconstitutional and was responsible for briefing dispositive issues in a False Claims Act trial that resulted in one of the largest relator-only jury verdicts in history. He was also extensively involved in an 8-month trial and multiple appeals defending Barclays from $15 billion in claims arising from its acquisition of Lehman Brothers during the financial crisis, which resulted in a complete victory for Barclays.

Since joining Korein Tillery, Mr. Ewing has been responsible for case investigation, preparing pleadings, taking and defending fact and expert depositions, working alongside experts, managing discovery, briefing dispositive and other legal issues, preparing witnesses for trial, conducting cross-examinations in a federal jury trial, and appeals. Mr. Ewing played a significant role in establishing materiality and rebutting defendant's loss causation defense in *NCUA v. RBS Sec., Inc. et al.*, 11-cv-2340- JWL-JPO (D. Kan.) & 2:11-cv-05887 GW-JEM (C.D. Cal.), described below, which resulted in recoveries exceeding $5 billion for the National Credit Union Administration in litigation against 18 national and international financial institutions for allegedly misrepresented mortgage-backed securities.

Mr. Ewing worked with Scott+Scott and Hausfeld to litigate antitrust claims against 16 national and international financial institutions in *In re: Foreign Exchange Benchmark Rates Antitrust Litigation* No. 13-cv-07789-LGS (S.D.N.Y.) (Schofield, J.), resulting in $2.3 billion in recoveries to date, as well as *Axiom Investment Advisors, LLC v. Barclays Bank PLC*, No. 15-cv-9323-LGS (S.D.N.Y.) (Schofield, J.), a class action regarding "last look" practices in foreign exchange trading, resulting in a $50 million settlement of breach of contract claims.

### Robert E. Litan

Robert Litan is a partner at Korein Tillery. Dr. Litan is a nationally-renowned attorney and economist with nearly four decades of experience litigating cases, conducting economic research, crafting economic policy, and heading up both public and private organizations. He is a prolific writer and speaker on the subjects of economics, antitrust law, and financial regulation, as well as having testified as an expert witness in a number of high-profile lawsuits. Dr. Litan serves as Korein Tillery's senior adviser in economic and antitrust matters.

After graduating from Yale Law School, Dr. Litan litigated antitrust, administrative, and international-trade cases in Washington D.C., first with Arnold & Porter and then with Powell, Goldstein, Frazer & Murphy. In 1993, he was appointed Principal Deputy Assistant Attorney General in the Antitrust Division of the Justice Department, where he oversaw civil, non-merger antitrust litigation. In that role, Dr. Litan settled the Department's lawsuit

against the Ivy League and MIT for conspiring to fix financial aid awards; oversaw the Department's first investigation into Microsoft's anti-competitive practices; oversaw the early stages of the Department's investigation of NASDAQ for fixing dealer spreads; and was the Department's liaison to the Clinton administration's working group on telecommunications policy, which was directed by the Vice President.

In 1995, Dr. Litan was appointed Associate Director of the Office of Management and Budget, where he oversaw the budgets of five cabinet-level agencies. He was later a consultant to the Department of Treasury on financial modernization and the effectiveness of the Community Reinvestment Act, co-authoring several reports on those subjects. In the early 1990s, Dr. Litan served as a Member of the Presidential-Congressional Commission on the Causes of the Savings and Loan Crisis. He has chaired two panels of two studies for the National Academy of Sciences, and has served on one other NAS Committee.

Dr. Litan has testified as an expert witness in numerous complex cases, not only in antitrust matters, but also in matters involving the regulation of financial institutions. He has held major executive positions at three organizations overseeing economic and public-policy research: Vice President and Director of Research in the Economic Studies Program at the Brookings Institution; the same position at the Kauffman Foundation; and Director of Research at Bloomberg Government, the subsidiary of Bloomberg LLP that provides analysis and data on the impact of government policies on business. He is currently on the research advisory boards of the Smith Richardson Foundation and the Committee for Economic Development, as well as the advisory board of the American Antitrust Institute. He previously served on the international advisory board of the Principal Financial Group.

Dr. Litan is the author or co-author of 27 books and the editor of 14 others. He also has written over 200 articles in journals and national newspapers. His latest books include Better Capitalism, co-authored with Carl Schramm (2012); and Good Capitalism, Bad Capitalism, co-authored with William Baumol and Carl Schramm (2007), which is used widely in college courses and has been translated into 10 languages. His latest book, published by Wiley Press in the fall of 2014, is The Trillion Dollar Economists.

### Steven M. Berezney

Steven Berezney is a partner at Korein Tillery's St. Louis office. Mr. Berezney received his J.D. from the University of Illinois Urbana-Champaign College of Law in 2003 (*magna cum laude*), where he served as Editor-in-Chief of the Law Review. He is licensed in New York, Illinois, Missouri, and the District of Columbia, as well as the Supreme Court of the United States, the U.S. Court of Appeals for the Second, Sixth, Seventh, and Eighth Circuits, and six federal district courts.

After law school, Mr. Berezney served as a judicial law clerk for Judge Laura Denvir Stith of the Supreme Court of Missouri. Upon completing his clerkship, Mr. Berezney joined Husch Blackwell in 2004 and became a Partner in 2012. While at Husch Blackwell, Mr. Berezney represented clients in the agriculture, retail, tax, financial, and consumer goods industries,

including Fortune 500 companies, in complex litigation involving contract disputes and business torts in both trial and appellate courts. Mr. Berezney was part of the team that won a $1 billion judgment that, at the time, was the fourth largest patent infringement jury verdict in U.S. history, according to Bloomberg. *Monsanto Co. v. E.I. DuPont de Nemours & Co.,* 4:09-cv-00686-ERW (E.D. Mo. Aug. 1, 2012). He also served as either lead or co-lead on bench and jury trials on behalf of both plaintiffs and defendants. *E.g., TVI, Inc. v. InfoSoft Technologies, Inc.,* 4:06-cv-697-JCH, 2008 WL 239784 (E.D. Mo. 2008) (obtained a plaintiff's verdict in a bench-tried breach of contract case involving undelivered hardware equipment and a terminated software license); *Intertel, Inc. v. Sedgwick Claims Mgmt. Servs., Inc.,* 02CC-000772 (Mo. Cir. Ct., Apr. 29, 2008) (obtained a favorable defense jury verdict on behalf of a claims management company in which plaintiff sought more than $50 million in damages based on an alleged failure under a contract to refer claims for investigation).

Since joining Korein Tillery, Mr. Berezney has managed and litigated all aspects of multi-billion dollar cases in federal trial and appellate courts against Wall Street investment banks arising from misrepresentations made about residential mortgage-backed securities ("RMBS") in violation of the federal 1933 Securities Act and state law. Mr. Berezney played a significant role in obtaining over $5 billion in recoveries for NCUA and CUNA Mutual, including running or co-running several of the cases.

Mr. Berezney has also been part of the team developing and litigating Sherman Act price fixing conspiracy claims raised against 16 investment bank defendants in *In re: Foreign Exchange Benchmark Rates Antitrust Litigation*, No. 13-cv-07789-LGS (S.D.N.Y.) (Schofield, J.), resulting in $2.3 billion in recoveries to date.

### Carol O'Keefe

Carol O'Keefe is an attorney at Korein Tillery's St. Louis office. Ms. O'Keefe received her B.A. from Yale College *summa cum laude* in 1983 after only three years of study, and she received her J.D. from Harvard Law School *cum laude* in 1986. She is licensed in New York and Missouri and focuses her practice on antitrust and commercial litigation.

After law school, Ms. O'Keefe served as a judicial law clerk for Judge Michael A. Telesca of the U.S. District Court for the Western District of New York. Thereafter, and until 2008, Ms. O'Keefe was an associate at Harter Secrest & Emery LLP, where she focused on complex litigation, including antitrust, securities, employment discrimination, civil rights, and commercial litigation. After taking time off from the practice of law to focus on raising her four teenage children, Ms. O'Keefe worked as an Adjunct Lecturer at the State University of New York at Brockport from 2012-2015, where she designed and taught courses in modern constitutional law and education law.

Ms. O'Keefe was hired by Korein Tillery in 2016, and the story of her return to the legal profession is recounted in the national bestseller, "That's What She Said: What Men and Women Need to Know About Working Together," by Joanne Lipman. Ms. O'Keefe joined Korein Tillery as a practicing attorney in 2017, and she is currently representing investors in

cases involving benchmark and market manipulation as well as consumers harmed in the digital economy.

### Chad E. Bell

Chad Bell is an attorney at Korein Tillery's Chicago office. Mr. Bell received his B.A. in Economics and Political Science from Northwestern University, and received his J.D. from the University of Virginia School of Law, where he served on the editorial board of the Virginia Law Review and as a teaching assistant for first-year Legal Research and Writing as a Dillard Fellow. Mr. Bell is licensed to practice law in Illinois, and has been admitted to practice before the Seventh Circuit Court of Appeals, and several federal district courts, including the Northern District of Illinois. Mr. Bell's practice is focused on complex civil litigation in the areas of securities, antitrust, consumer class actions, and commercial/contract disputes, and is experienced in matters of e-discovery, co-authoring articles on e-discovery issues for the Uniform Commercial Code Law Journal.

Since joining Korein Tillery, Mr. Bell has been involved in case investigation, interviews of witnesses, drafting complaints and other dispositive pleadings, taking and defending fact and expert depositions, working with experts, managing discovery, and preparing witnesses and evidence for trial. Mr. Bell played a significant role in working with and taking and defending depositions of statistical sampling experts in the *NCUA* and *CUNA Mutual* litigation and continues to focus his practice on behalf of investors.

### Ryan Z. Cortazar

Ryan Cortazar is an attorney at Korein Tillery's Chicago office. He received his A.B. *cum laude* with high honors in his field from Harvard College and his J.D. *cum laude* from Harvard Law School. While in law school Mr. Cortazar was an articles editor and book reviews editor of the Harvard Law Review. He is licensed in Illinois.

After law school, Mr. Cortazar served as a law clerk for Judge David F. Hamilton of the U.S. Court of Appeals for the Seventh Circuit. He also received the Redstone Fellowship from Harvard Law School for his placement at the Chicago Lawyers' Committee for Civil Rights where he advocated for voting rights and police accountability. At Korein Tillery, Mr. Cortazar has investigated antitrust violations in the digital economy and represented investors harmed by the manipulation of various financial instruments as well as educators advocating for the literacy rights of public schoolchildren.

**The Firm's Recent Work:**

## LITIGATION AGAINST FINANCIAL INSTITUTIONS
### National Credit Union Administration Mortgage-Backed Securities Litigation.

The National Credit Union Administration ("NCUA") is the independent federal agency created by the U.S. Congress to regulate, charter, and supervise federal credit unions. On behalf of the NCUA, Korein Tillery and co-counsel Kellogg, Hansen, Todd, Figel & Frederick filed approximately 20 federal lawsuits throughout 2011-2013 alleging that Wall

Street investment banks misled credit unions about the quality of certain residential mortgage-backed securities ("RMBS"), causing billions of dollars of losses that the NCUA insured. More specifically, NCUA alleged that these banks violated the Federal Securities Act by representing in federally-regulated offering documents that all loans backing the RMBS complied with originator underwriting guidelines or had sufficient compensating factors to allow exceptions to the guidelines when in fact the majority of the loans did not.

Throughout several years of contentious litigation, involving several successful appeals, Korein Tillery and Kellogg Hansen obtained more than $5.1 billion in legal settlements on NCUA's behalf, including but not limited to:

- *NCUA v. JP Morgan Chase Bank*, 2:13-cv-02012-JWL (D. Kan.) (obtained $1.4 billion settlement in Dec. 2013);
- *NCUA v. RBS Sec., Inc.*, 1:13-cv-06726-DLC (S.D.N.Y.) (accepted offer of judgment for $129.6 million plus fees in Sept. 2015);
- *NCUA v. Barclays Capital, Inc.*, 1:13-cv-06727-DLC (S.D.N.Y.) & 2:12-cv-02631-JWL (D. Kan.) (obtained $325 million combined settlement in Oct. 2015);
- *NCUA v. Wachovia Capital Markets LLC*, 1:13-cv-06719-DLC (S.D.N.Y.) & 2:11-cv-02649-JWL (D. Kan.) (obtained $53 million combined settlement in Oct. 2015);
- *NCUA v. Morgan Stanley & Co., Inc.*, 1:13-cv-06705-DLC (S.D.N.Y.) & 2:13-cv-02418-JWL (D. Kan.) (obtained $225 million combined settlement in Dec. 2015);
- *NCUA v. Goldman Sachs and Co.*, 1:13-cv-06721-DLC (S.D.N.Y.) & 2:11-cv-06521-GW-JEM (C.D. Cal.) (obtained $575 million combined settlement in Apr. 2016);
- *NCUA v. RBS Sec., Inc. et al.*, 11-cv-2340- JWL-JPO (D. Kan.) & 2:11-cv-05887 GW-JEM (C.D. Cal.) (obtained $1.1 billion combined settlement in Sept. 2016);
- *NCUA v. UBS Securities, LLC*, 2:12-cv-02591-JWL (D. Kan.) (obtained $445 million settlement in Mar. 2017); and
- *NCUA v. Credit Suisse Sec. (USA) LLC*, 2:12-cv-02648-JWL (D. Kan.) (obtained $400 million settlement in Mar. 2017).

NCUA was the first federal regulatory agency for depository institutions to recover losses from investments in these securities on behalf of failed financial institutions. NCUA uses the net proceeds to reduce Temporary Corporate Credit Union Stabilization Fund (Stabilization Fund) assessments charged to federally insured credit unions to pay for the losses caused by the failure of five corporate credit unions.

Korein Tillery and Kellogg Hansen continue to prosecute several lawsuits on behalf of the NCUA against certain RMBS trustees regarding their alleged failure to perform their duties.

### *CUNA Mutual Mortgage-Backed Securities Litigation.*
CMFG Life Insurance Company, CUMIS Insurance Society, Inc., and MEMBERS Life Insurance Company (collectively referred to as "CUNA Mutual") are financial services and insurance firms that offer insurance, investment, and retirement products and services to

credit unions and their members. Korein Tillery and Kellogg Hansen filed a series of individual lawsuits in 2011 and 2013 on behalf of CUNA Mutual against eight Wall Street investment banks seeking to recover losses on $300 million of RMBS purchases using the novel common-law theory of contract rescission.

As in NCUA, CUNA Mutual alleged that the banks misrepresented in offering documents that all loans backing the RMBS complied with originator underwriting guidelines or had sufficient compensating factors to allow exceptions to the guidelines. CUNA Mutual also alleged that the banks misrepresented that it conducted due diligence to verify the accuracy of its offering document representations. In mid-2015, an appellate court issued a favorable opinion in CUNA Mutual's bellwether case approving of CUNA Mutual's primary litigation arguments. *CMFG Life Ins. Co. v. RBS Sec., Inc.*, 799 F.3d 729 (7th Cir. 2015). On remand, the case settled in December 2015 for a confidential amount. CUNA Mutual eventually settled its remaining RMBS cases over the next two years for confidential amounts. *See, e.g.*, *CMFG Life Ins. Co. v. Credit Suisse Sec. (USA) LLC*, 3:14-cv-00249-wmc (W.D. Wis.) (settled in Oct. 2017); *CMFG Life Ins. Co. v. Morgan Stanley & Co., LLC*, 3:13-cv-00577-jdp (W.D. Wis.) (settled in Sept. 2017); *CMFG Life Ins. Co. v. J.P. Morgan Sec, LLC*, 3:13-cv-00580-wmc (W.D. Wis.) (settled in Mar. 2016).

### *In re: Foreign Exchange Benchmark Rates Antitrust Litigation*, No. 13-cv-07789-LGS (S.D.N.Y.) (Schofield, J.)

The global foreign exchange ("FX") market for currency is a $1-trillion-per-day market, with the dominant dealers representing over 90 percent of the global FX market. Beginning as early as 2003 and continuing through 2013, these dealers used communications in multiple secret chat rooms to conspire to fix spot prices in dozens of currency pairs, manipulate FX benchmark rates, and exchange key confidential customer information in an attempt to trigger client stop loss orders and limit orders. These dealers constituted some of the largest financial institutions in the world, including Bank of America, Barclays, BNP Paribas, Citigroup, Credit Suisse, Deutsche Bank, Goldman Sachs, HSBC, JPMorgan Chase & Co., Morgan Stanley, Royal Bank of Scotland, and UBS.

Korein Tillery, working with co-counsel Scott+Scott Attorneys at Law, LLP and Hausfeld LLP, developed and filed a class action on behalf of individuals who entered into FX transactions in over-the-counter exchanges and/or on exchanges with these dealers, alleging violations of Sections 1 and 3 of the Sherman Antitrust Act and violations of the Commodity Exchange Act. As a result of nearly 6 years of work by Korein Tillery and its co-counsel costing the firms nearly $30 million in case-related expenses, $2.3 billion in court-approved settlements have been reached with 15 of the 16 defendants, constituting one of the largest antitrust class action recoveries in history. Mediator Kenneth Feinberg concluded that this settlement would "represent[ ] some of the finest lawyering toward a negotiated resolution that I have witnessed in my career" and described Korein Tillery and its co-counsel as "superlative, sophisticated, and determined plaintiffs' lawyers."

***Axiom Investment Advisors, LLC v. Barclays Bank PLC***, No. 15-cv-9323-LGS (S.D.N.Y.) (Schofield, J.).

From 2008 to 2015, Barclays Bank PLC acted as both a buyer and seller of various foreign and domestic currencies through various trading platforms. Instead of executing foreign exchange orders placed by Barclays' customers on these platforms, Barclays instituted a secret "last look" policy that delayed execution of matched trades for several hundred milliseconds or even several seconds which allowed Barclays to determine through its algorithms whether the trade would be unfavorable to its position. If the matched trade would be unfavorable, Barclays reneged on the agreed price and rejected the trade or placed the order at a worse price. Barclays used last look to reject millions of trades that would otherwise have been executed.

Korein Tillery, along with its co-counsel Scott+Scott, Attorneys at Law, LLP and Hausfeld LLP, filed a class action against Barclays Bank PLC regarding its use of "last look," raising breach of contract and other claims. The court appointed Korein Tillery and Scott+Scott as class counsel. Counsel was successful in securing a $50 million settlement from Barclays on behalf of the class, which the court ultimately approved.

## CLASS ACTION AND COMPLEX LITIGATION

***Senne v. The Office of the Comm'r of Baseball***, No. 14-CV-00608-JCS (N.D. Cal.).

Plaintiffs in this action are former Minor League Baseball players who allege that MLB and MLB's member franchises failed to pay the players minimum wage, required overtime pay, or sometimes any wages at all. Plaintiffs assert two claims under the federal Fair Labor Standards Act ("FLSA") and an additional thirty-one under the wage-and-hour laws of eight states: California, Florida, Arizona, North Carolina, New York, Pennsylvania, Maryland, and Oregon.

Defendants filed motions to dismiss for lack of personal jurisdiction and to transfer the action to Florida. On May 20, 2015, the Court denied defendants' request to transfer the action to Florida and granted in part and denied in part the motions to dismiss for lack of personal jurisdiction, dismissing eight of the thirty franchises from the action without prejudice. *Senne v. The Office of the Comm'r of Baseball*, No. 14-CV-00608-JCS, 2015 WL 2412245 (N.D. Cal. May 20, 2015).

On May 18, 2015, just before the Court issued its order addressing personal jurisdiction and venue, the franchises filed a motion to dismiss challenging plaintiffs' standing to assert claims under certain state laws. The Court denied the motion in its entirety. *Senne*, 2015 WL 4240716 (N.D. Cal. July 13, 2015).

On October 20, 2015, the Court granted plaintiffs conditional certification pursuant to the Fair Labor Standards Act. *Senne*, 2015 WL 6152476 (N.D. Cal. Oct. 20, 2015). In July 2016, the Court decertified the FLSA collective, but it reconsidered that decision in March 2017: it re-certified an FLSA collective and certified a Rule 23 class of minor leaguers who played in

California. *Senne v. Kansas City Royals Baseball Corp.*, No. 14-CV-00608-JCS, 2017 WL 897338 (N.D. Cal. Mar. 7, 2017). That decision is currently on appeal in the Ninth Circuit.

**United States ex rel. Garbe v. Kmart Corp., 3:12-cv-00881-NJR-PMF (S.D. Ill.).**
Since 2004, Kmart pharmacies have charged low, flat-rate prices for certain generic drug prescriptions when those drugs are purchased by customers who paid entirely out of their own pockets with no insurance coverage. Since the beginning of the Medicare Part D drug program on January 1, 2006, however, Kmart has charged higher prices—often significantly higher prices—to customers with Medicare Part D coverage than it charges self-paying customers for the same prescription. For example, Kmart charged cash customers $10 for a 60-day supply of 500 mg Naproxen (available in non-prescription strength as Aleve®), but charged the Government $58.79 for the same prescription.

Korein Tillery and co-counsel Phillips & Cohen filed a False Claims Act case against Kmart after the Government declined to intervene. In the litigation, Kmart never disputed that it charges cash-paying customers lower prices than it charges to the Government. Instead, Kmart contended that it was never required to charge the Government the lower prices because those are not the prices Kmart charges to "the general public." Rather, Kmart claimed its cash-customers are not the "general public" but rather members of an exclusive "club" through which they are offered the discount prices, even though as a practical matter the discount prices are the prices Kmart charges to all its cash customers. Kmart also has no record of denying any cash-paying customer "membership" in Kmart's "club." The U.S. District Court for the Southern District of Illinois rejected Kmart's arguments and denied its motions for summary judgment. Kmart appealed, but the Seventh Circuit affirmed the district court in large part. *United States ex rel. Garbe v. Kmart Corp.*, 824 F.3d 632 (7th Cir. 2016). After remand, the case settled in late 2017 with Kmart agreeing to pay approximately $59 million.

**Lightfoot v. Arkema, Inc. Ret. Benefits Plan, CIV. 12-773 JBS/JS (D.N.J.).**
After the court certified a class of present and former retirement benefits plan participants, plaintiffs filed a motion for partial summary judgment on the issue of whether the COLAs the Plan promised to participants who elected annuities were part of participants' "accrued benefit" under ERISA. The Plan countered with a motion for summary judgment arguing the statute of limitations had run on all class members' claims owing to statements in a 1994 Summary Plan Description (SPD) and other plan documents. Although the same judge had previously ruled that the statements in the SPD and Plan were "clear repudiations" in a companion case, Korein Tillery convinced the court to deny the Plan's motion for summary judgment and to grant plaintiffs' motion for partial summary judgment, finding that the COLAs promised annuitants were accrued benefits. 2013 WL 3283951 (D.N.J. June 27, 2013). The case settled in 2014 with the average class member receiving $11,000 in cash that could be rolled into a retirement account.

**City of Greenville v. Syngenta Crop Prot., Inc., 3:10-CV-188-JPG-PMF (S.D. Ill.).**

On October 23, 2012, the U.S. District Court for the Southern District of Illinois entered an order approving a $105 million class-action settlement designed to compensate Community Water Systems throughout the United States for the cost of removing the pesticide atrazine from public drinking water. The litigation between class members and Syngenta dated back to July 2, 2004, when Holiday Shores Sanitary District filed six separate lawsuits against manufacturers and distributors of atrazine and atrazine-containing products in the Illinois Circuit Court in Madison County.

Atrazine is used to control broadleaf and grassy weeds in a variety of crops, but is applied primarily to corn fields. Atrazine has been one of the most heavily used pesticides in the U.S. Two of atrazine's key chemical characteristics—that it does not readily bind to soil and that it persists in the environment—dramatically increase atrazine's effectiveness as an herbicide. However, because atrazine does not bind to soil, it easily runs off of fields with rainfall and contaminates surface waters such as rivers, lakes, and reservoirs that act as drinking-water supplies for public water providers.

Plaintiffs alleged that atrazine had continuously entered their water supplies, and, as a result of this contamination, they had to filter atrazine from their water sources. After eight years of litigation, Korein Tillery secured a $105 million settlement fund to be distributed to several hundred community water systems for costs of filtration of atrazine from their drinking-water supplies. *City of Greenville v. Syngenta Crop Prot., Inc.,* No. 3:10-CV-188-JPG-PMF, 2012 WL 1948153 (S.D. Ill. May 30, 2012); *see also* 904 F. Supp. 2d 902 (S.D. Ill. 2012) (granting final approval of settlement and attorneys' fees). The settlement amounted to approximately 76 percent of the $139 million estimated to be the Class's maximum potential recovery.

To facilitate the settlement claims process, Korein Tillery lawyers collected 20 years of atrazine testing data into a database that was made available to each class member through a settlement website. From there, Claimants were able to view the test data already collected for their system and provide additional evidence of atrazine contamination to claim their share of the settlement fund. Although many class actions experience claims rates of less than 15 percent, in this case virtually all settlement funds were distributed to class members.

Public Justice honored the Korein Tillery lawyers representing the plaintiffs in this case as finalists for its Trial Lawyer of the Year award.

### *Missouri Utility Tax Litigation*
Since 2007, Korein Tillery has represented Missouri municipalities in class action litigation that sought to recover unpaid license taxes. In suits against wireless and wireline carriers, Korein Tillery attorneys recovered hundreds of millions of dollars of license tax revenues—both retrospectively and prospectively—for more than 350 cities throughout Missouri. Korein Tillery has recovered more than $1 billion for Missouri municipalities. As a result of their work in these cases, the Missouri Lawyers Weekly recognized Korein Tillery partners

John W. Hoffman and Douglas R. Sprong with awards in the "largest plaintiff wins" category in 2007, 2009, 2010, 2015, and 2017.

In 2012, Korein Tillery was successful in persuading the Supreme Court of Missouri to issue an extraordinary writ (mandamus) declaring unconstitutional a state statute that sought to sweep away this litigation by barring cities and towns from serving as class representatives. *State ex rel. Collector of Winchester v. Jamison*, 357 S.W.3d 589 (Mo. 2012).

### *Mansfield v. ALPA*, 06-c-6869 (N.D. Ill.).

Beginning in 2001, United Airlines encountered financial difficulties that ultimately culminated in its filing for bankruptcy protection. During the course of United's reorganization in bankruptcy, United sought to terminate its pilots' defined benefit pension plan. In exchange for ALPA's agreement not to oppose the termination of the pension plan, United agreed to provide ALPA with $550 million in convertible notes. ALPA, through its United Airlines Master Executive Council ("MEC"), was tasked with allocating the proceeds from the sale of the convertible notes among the pilots. The MEC selected an allocation method that divided the note proceeds based upon each pilot's lost accrued benefits and lost projected benefits.

Korein Tillery filed this case in 2006 contending that ALPA breached its duty of fair representation in discriminating between its members in allocating the proceeds from the sale of $550 million in convertible notes. Korein Tillery prevailed on a number of complex and novel issues in the trial court. For example, ALPA moved to exclude retirees from the class, arguing that a union owes no duties to retired pilots under the Railway Labor Act. The court denied ALPA's motion, agreeing with plaintiffs that because ALPA represented the retirees when it negotiated the convertible notes, it owed them a duty even though the retirees were no longer a part of the bargaining unit. *Mansfield v. ALPA*, 2007 WL 2903074 (N.D. Ill. Oct. 1, 2007). After Korein Tillery also successfully opposed motions for summary judgment, 2009 WL 2386281 (N.D. Ill. Jul. 29, 2009), and to decertify the class, 2009 WL 2601296 (N.D. Ill. Aug. 20, 2009), the parties reached a settlement two weeks before trial. Per the settlement, ALPA funded an aggregate settlement fund of $44 million to be paid directly to class members. *Mansfield v. ALPA*, No. 06C6869 (N.D. Ill. Dec. 14, 2009). The settlement is believed to be one of the largest ever in a duty of fair representation case, in which unions are sued over their responsibility to fairly represent their members.

### *Williams v. Rohm & Haas Pension Plan*, 4:04-cv-0078-SEB-WGH (S.D. Ind.).

Korein Tillery filed this class action in 2002 alleging that the Rohm & Haas Pension Plan violated ERISA by failing to include the value of future cost-of-living adjustments (COLA) in calculating lump-sum distributions from the Plan. After eight years of litigation, Korein Tillery obtained one of the largest settlements in the history of ERISA—$180 million. In 2006, the case was certified and Korein Tillery won summary judgment convincing the district court that the terms of the Plan violated ERISA because a COLA is an "accrued benefit" requiring that it be included in lump-sum distributions. The district court's decision was affirmed on interlocutory appeal. *Williams v. Rohm & Haas Pension Plan*, 497 F.3d 710,

714 (7th Cir. 2007) ("If a defined benefit pension plan entitles an annuitant to a COLA, it must also provide the COLA's actuarial equivalent to a participant who chooses instead to receive his pension in the form of a one-time lump sum distribution."), *cert. denied*, 128 S. Ct. 1657 (2008). Settlement approval and the fee award were later affirmed. 658 F.3d 629 (7th Cir. 2011).

***Parker v. Sears, Roebuck & Co.***, **Case No.: 04-L-716 (Ill. Cir. Ct. Sept. 18, 2007).** Korein Tillery brought this action against Sears in 2004 to remedy Sears's failure to install anti-tip safety devices, which prevent ranges from tipping over and severely burning or injuring unsuspecting consumers, on ranges that it sold, delivered, and set-up in customers' homes. In the 1960s and 1970s, kitchen range manufacturers started reducing the weight of metal in an effort to competitively lower the price of kitchen ranges. Over the course of several years, advances in materials allowed manufacturers to produce ranges which were durable and light weight. However, because the oven doors on the front of the ranges serve as a lever and fulcrum, the light weight of the new ranges created an extremely dangerous tipping hazard. For example, if a person were to place a turkey roaster on an open and horizontal oven door, the added weight would cause these newly designed ranges to tip forward, spilling the hot contents onto anyone standing in the vicinity. Children who opened the range and used the door as a step could unwittingly tip boiling liquids onto themselves. Dozens of people had been killed and hundreds had been maimed as a result of this problem.

Recognizing the need for a solution to this dangerous hazard, manufacturers and regulators began requiring installation of an anti-tip bracket that could be attached to the wall or floor at the back end of the range, preventing any forward tipping and maintaining complete stability. The installation is simple and the lightweight bracket costs pennies. The rule making bodies of most codes (BOCA Code, National Electrical Code; numerous other industry codes) thereafter required the installation of anti-tip brackets in all range installations in the United States. Even Sears acknowledged that a properly installed anti-tip bracket completely eliminates the hazards of tipping stoves.

Sears, Roebuck & Company at the time was the largest retail seller of kitchen ranges in the United States—averaging more than 800,000 ranges sold every year. When selling a gas or electric range, Sears generally includes delivery, installation, and hookup in customers' homes; thus, Sears became the largest installer of kitchen ranges in the United States. To increase its profits, Sears adopted a policy of refusing to install anti-tip brackets during normal installation unless the customer agreed to incur a substantial cost. At the same time, Sears failed to disclose the hazards associated with forgoing anti-tip bracket installation.

In January 2008, the Court granted final approval of a settlement which provided complete relief to the class by requiring Sears to install anti-tip brackets for the affected members of the class as well as requiring the installation of such brackets in the future. The settlement is valued at more than $544.5 million.

This settlement was touted by the public interest organization Public Citizen as an example of how consumer class actions benefit society. Public Citizen nominated Stephen Tillery as Trial Lawyers for Public Justice's Trial Lawyer of the Year based upon his role in this case.

***Hoormann v. SmithKline Beecham Corp.*, 04-L-715 (Ill. Cir. Ct. May 17, 2007).**
In July 2004, Korein Tillery filed suit on behalf of a nationwide class of purchasers alleging that SmithKline Beecham promoted Paxil® and Paxil CR™ for prescription to children and adolescents despite having actual knowledge that these drugs exposed children and adolescents to dangerous side effects while failing to treat their symptoms. Following three years of litigation, Korein Tillery obtained a settlement that established a $63.8 million dollar fund to reimburse class members 100 percent of their out-of-pocket expenses. This case was featured in The American Lawyer, Aruna Viswanatha, *King & Spalding Lawyer Stirs State Judge's Ire*, [29] 1 Am.Law., Jan. 2007, at 50, and mentioned in the National Law Journal. *The Plaintiffs' Hot List*, 30 Nat'l L.J. S8 (Nov. 22, 2007).