UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

IN RE GSE BONDS ANTITRUST
LITIGATION

---

19-cv-1704 (JSR)

MEMORANDUM AND ORDER

JED S. RAKOFF, U.S.D.J.

Between October 2019 and February 2020, the Court preliminarily approved five separate settlements between plaintiffs and defendants in the above-captioned action. The settlements were between plaintiffs and 1) Deutsche Bank Securities, Inc. ("DB Settlement"); 2) First Tennessee Bank, N.A. and FTN Financial Securities Corp. ("FTN Settlement"); 3) Goldman Sachs ("GS Settlement"); 4) Barclays Capital, Inc. ("Barclays Settlement"); and 5) all remaining defendants ("Global Settlement"). The parties now seek final approval of the same settlements. Furthermore, Co-Lead Counsel, Scott+Scott Attorneys at Law LLP ("Scott+Scott") and Lowey Dannenberg, P.C. ("Lowey"), move for an award of attorneys' fees and payments of litigation expenses in connection with their representation of the settlement class.[1] Finally, named plaintiffs City of

---

[1] Included in the fees Co-Lead Counsel seek are fees and expenses incurred by Berman Tabacco ("Berman") and Korein Tillery LLC ("Korein"). Berman and Korein contributed work on behalf of the settlement class prior to Co-Lead Counsel's appointment, and Berman continued its representation of class representative

Birmingham Retirement and Relief System ("Birmingham"), Electrical Workers Pension System Local 103, I.B.E.W. and Local 103, I.B.E.W. Health Benefit Plan (together, "I.B.E.W."), and Joseph Torsella, in his official capacity as Treasurer of the Commonwealth of Pennsylvania ("Pennsylvania Treasury"), move for awards for their service as class representatives in this Action. For the reasons set forth below, the Court grants each motion.

I.   Motions for Approval of Settlements

In order to grant final approval of a proposed settlement under Federal Rule of Civil Procedure 23(e)(2), the Court must find "that it is fair, reasonable, and adequate." The Court considers a number of factors laid out in Rule 23(e)(2), as well as in City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974), to determine whether this standard has been met. The Court in its opinion and orders providing the basis for its preliminary approval of the five settlements has already explained in detail why the Rule 23 and Grinnell factors support approval of each of the settlements. See ECF Nos. 298, 339, 364, 367 (collectively "preliminary approval orders"). The Court re-adopts that analysis here, and limits its focus to those few

---

Electrical Workers Pension Fund Local 103, I.B.E.W. and Local 103, I.B.E.W. Health Benefit Plan (collectively, "I.B.E.W.") throughout the Action.

developments since the time of the preliminary approvals that impact that analysis. Because these subsequent developments only further support the fairness, reasonableness, and adequacy of the settlements, the Court gives its final approval to all five settlements.

a. The Terms of Any Proposed Award of Attorneys' Fees

Rule 23(e)(2)(C)(iii) requires courts to examine "the terms of any proposed award of attorneys' fees, including timing of payment" as part of its adequacy assessment. At the preliminary approval stage, Co-Lead Counsel represented that they would apply for attorneys' fees not to exceed 26% of the settlement fund for the DB and FTN Settlements and 22% for the remaining three settlements. Co-Lead Counsel now seek a fee of 20% for all settlements. While none of the prior estimates were in any way binding on the Court, they were facially reasonable. Therefore, the lower requested attorneys' fees is a development that favors approval.

b. Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and Attendant Risks of Litigation

The Court's most substantial concern with any of the settlements at the preliminary approval stage was whether the FTN Settlement provided an adequate recovery for plaintiffs. See Opinion and Order at 16-19, ECF No. 298 ("FTN and DB Order").

Based on automatic trebled damages, the Court found that the
$14.5 million settlement amount represented 6% to 12% of the
best possible recovery. Id. at 18-19. The Court found that this
small settlement percentage meant that Grinnell factor 8, "the
range of reasonableness of the settlement in light of the best
possible recovery," and Grinnell factor 9, "the range of
reasonableness of the settlement fund to a possible recovery in
light of all the attendant risks of litigation," weighed against
preliminary approval (though it was overcome by other factors).
In making that assessment, however, the Court expressly did not
credit the value of FTN's cooperation with the plaintiffs,
because this cooperation was contingent on preliminary approval
and thus had not yet come to fruition. Since preliminary
approval, FTN has followed through on its promise of
cooperation, adding value to the settlement. See Memorandum of
Law in Support of Mot. for Final Approval of Class Action
Settlements with DB, FTN, and GS ("Mem. DB, FTN, and GS") at 17-
18, ECF No. 348. This material cooperation supports the adequacy
of the FTN settlement, favoring final approval.

    c. Reaction of the Settlement Class

While the Court addressed most of the Grinnell factors in
its various preliminary approval orders, final approval of the
settlements requires the Court to assess for the first time
Grinnell factor 2, "the reaction of the class to the

4

settlement." Grinnell, 495 F.2d at 463. "A favorable reception by the class constitutes 'strong evidence' that a proposed settlement is fair." In re Citigroup Inc. Sec. Litig., 965 F. Supp. 2d 369, 382 (S.D.N.Y. 2013). Thus,"[i]f only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 118 (2d Cir. 2005). All of the settlements in this case have been well-received, counseling in favor of approval.

Notice in this case was sent out in two waves: first in the FTN, DB, and GS Settlements, and second in the Barclays and Global Settlements. In the first wave, 25 class members requested exclusion: 11 from the DB and FTN Settlements only, one from the GS Settlement only, and 13 from all three Settlements. Reply in Support of Mot. for Final Approval of Class Action Settlements with DB, FTN, and GS ("Reply Mem. DB, FTN, and GS") at 4, ECF No. 376. These requests constitute only 0.38% of the total eligible volume transacted by the settlement class. Id. In the second wave, 16 class members requested exclusion. Reply in Support of Mot. for Final Approval of Class Action Settlements with Barclays and Global Defts. at 3, ECF No. 407. This accounts for only 0.1% of the total eligible volume transacted by the settlement class. Id. These de minimis exclusion requests counsel in favor of approval. See, e.g., In

re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig., 909 F.
Supp. 2d 259, 267 (S.D.N.Y. 2012) (finding that a rate of
exclusion of 5.1% weighed strongly in favor of approval).

Moreover, there was no formal objection to any of the
proposed settlements, which also favors approval. See City of
Pontiac Gen. Employees' Ret. Sys. v. Lockheed Martin Corp., 954
F. Supp. 2d 276, 279 (S.D.N.Y. 2013). While one class member,
David W. Lippitt, initially objected, he withdrew the objection
after speaking with co-lead counsel. Further, concerns expressed
by five individuals -- Patrick McGraw, Joel Margolis, Eric
Jurist, Donald R. Kunz, and Michael DeBell -- in informal
letters to the Court do not counsel against approval of the
settlements. Most of the letters voiced concerns that the Notice
or Claim form were not user-friendly. However, the Notice
repeatedly invited class members to contact the claims
administrator or Co-Lead Counsel for free help, mitigating this
concern. Moreover, the high volume of participation by class
members -- class members filed claims for 32% of the total
eligible volume transacted by the settlement class -- indicates
that the forms were useable. Reply Mem. DB, FTN, and GS at 4.
Other letters expressed concern about the timing of the mailing
of the Notice Packet. The Court, however, extended the initial
deadline for claim filing to address this concern. See Order,
ECF No. 363. Moreover, as the Court noted in an order dated

January 29, 2020, Co-Lead Counsel provided a satisfactory response to the concerns raised in all of the letters. Id.

Accordingly, the Court finds that the reaction of the class favors approval.

    d. Notice

At the preliminary approval stage, the Court found that the proposed notice plan for all of the settlements was the "best notice . . . practicable under the circumstances," Fed. R. Civ. P. 23(c)(2)(B), and satisfied due process requirements. Since then, the claims administrator carried out the notice plan as approved with two minor alterations. First, as indicated above, in the first wave of notice some class members did not receive notice packets until after the original January 16, 2020 opt-out and objection deadline. The Court remedied this issue by extending the exclusion and objection deadline for these class members to February 14, 2020 and the extension of the claims deadline for all class members to February 28, 2020. See Order, ECF No. 363. Second, Co-Lead Counsel more rigorously filtered those to whom the notice was sent in the second round of notices to avoid casting too broad a net, and did not send notices to nominees of institutions that did not comply with the filtering (although the nominees had received notice during the first round). Although Co-Lead Counsel should have informed the Court of these alterations before making them, the representations

made by plaintiffs' counsel at the hearing on final approval,
see transcript, 6/9/20, satisfy the Court that these alterations
do not alter the Court's ultimate conclusion that the notice was
the best practicable under the circumstances and satisfied due
process.

     e. Certification of the Class

     At preliminary approval, the Court concluded that
certification of the settlement class for settlement purposes
was proper because it would likely be able to certify the class
at final approval. The Court supported its conclusion with
specific and detailed findings that each of the Rule 23(a)
requirements were met, and made similarly detailed findings that
the requirements for certification of a Rule 23(b)(3) damages
class were met. See Preliminary Approval Orders. That reasoning
continues to support certification for purposes of judgment.

     f. Conclusion

     For the foregoing reasons, the Court finds that all five
settlements meet the requirements of Rule 23(e)(2), that the
notice was the best practicable under the circumstances, and
that certification of the class for purposes of judgment is
warranted. The Court thus grants final approval to the five
proposed settlements.

II.  Motion for Attorneys' Fees and Reimbursement of Litigation
     Expenses

a. <u>Fees</u>

Co-Lead Counsel request attorneys' fees of 20% of the
$386.5 million total common fund, or $77.3 million. The Court
may determine whether this proposed fee is reasonable via either
a percentage or lodestar method. <u>Goldberger v. Integrated Res.,
Inc.</u>, 209 F.3d 43, 47 (2d Cir. 2000). Under the percentage
method, the Court examines the fee as a percentage of the
recovery. <u>Id.</u> Under the lodestar method, the Court "multiplies
hours reasonably expended against a reasonably hourly rate" and
may then in its discretion "increase the lodestar by applying a
multiplier based on" subjective factors. <u>Wal-Mart Stores</u>, 396 F.
3d at 121. A Court employing the percentage method may "cross-
check" to this lodestar method to ensure reasonableness.
<u>Goldberger</u>, 209 F.3d at 50. Regardless of the method the Court
uses, its reasonableness determination is guided by six factors
(the "<u>Goldberger</u> factors"): "(1) the time and labor expended by
counsel; (2) the magnitude and complexities of the litigation;
(3) the risk of the litigation[]; (4) the quality of
representation; (5) the requested fee in relation to the
settlement; and (6) public policy considerations." <u>Id.</u> (citation
omitted). Because most of these factors weigh in favor of
approval, and the percentage method aided by a cross-check to
the lodestar indicates that the fees are reasonable, the Court
approves the requested fees.

i.  The Time and Labor Expended by Counsel

Goldberger factor one, "the time and labor expended by counsel" weighs slightly against the reasonableness of the fees. Co-Lead Counsel spent over 27,500 hours on this case, and supporting counsel Berman Tabacco and Korein Tillery spent almost 2,700 hours on it. Mem. of Law in Support of Co-Lead Counsel's Amended Motion for an Award of Att'ys Fees and Payment of Litig. Expenses ("Fee Mem.") at 2, 4, ECF No. 392. The combined total of over 30,200 hours included the initial investigative and pre-filing work, the filing of complaints and overcoming two motions to dismiss, ongoing litigation that proceeded in parallel with settlement negotiations, discovery, and developing the plan of distribution and class certification. While this number of hours is not particularly high in light of the dollar amount of the requested fees, see, e.g., Meredith Corp. v. SESAC, LLC, 87 F. Supp. 3d 650, 669 (S.D.N.Y. 2015) (awarding attorneys' fees of $11.8 million, representing 20.2% of a settlement fund, on a case where lawyers spent approximately 30,000 hours), the fast pace of this litigation suggests these hours were efficiently spent. This factor thus weighs only slightly against approval.

ii.  The Magnitude and Complexities of the Litigation

Goldberger factor two, "the magnitude and complexities of the litigation," weighs in favor of the fees' reasonableness.

Antitrust class actions "are notoriously complex, protracted,
and bitterly fought." Meredith Corp., 87 F. Supp. 3d at 669
(internal quotations and citation omitted). Such complexity was
present here, given that the plaintiffs claimed that the
defendants colluded in the GSE Bond market over more than seven
years, involving thousands of bond issuances, and implicating
sixteen defendants. In re Citigroup Inc. Bond Litig., 988 F.
Supp. 2d 371, 379 (S.D.N.Y. 2013) (finding that a "class period
[being] relatively lengthy and encompass[ing] a significant
number of securities issuances" indicated complexity). This
factor thus weighs in favor of the fees' reasonableness.

     iii.  The Risk of the Litigation

Goldberger factor three, "the risk of the litigation,"
weighs in favor of the fees' reasonableness. Courts have held
that this factor is often "the most important Goldberger
factor." In re Payment Card Interchange Fee & Merch. Disc.
Antitrust Litig., 991 F. Supp. 2d 437, 440 (E.D.N.Y. 2014); see
also Goldberger, 209 F.3d at 54 ("We have historically labeled
the risk of success as 'perhaps the foremost' factor to be
considered in determining whether to award an enhancement."
(citation omitted)). As the Court noted in its preliminary
approval orders, this case involved substantial risk for
plaintiffs. See, e.g., FTN and DB Order at 6-9. At all times
during the litigation, plaintiffs faced uncertainty in their

ability to establish liability, obtain class certification, and prove damages. This is particularly true in light of the fact that defendants have vast combined resources and are represented by top counsel from many of the nation's most prominent law firms. Moreover, co-lead counsel assumed most of this risk because they were working on a contingent-fee basis. See City of Providence v. Aeropostale, Inc., No. 11-cv-7132, 2014 WL 1883494, at *14 (S.D.N.Y. May 9, 2014). This factor thus weighs in favor of the fees' reasonableness.

    iv.  The Quality of Representation

Goldberger factor four, "the quality of representation," also weighs in favor of approval. One means of assessing the quality of the representation is looking to "the recovery obtained." In re Merrill Lynch Tyco Research Sec. Litig., 249 F.R.D. 124, 141 (S.D.N.Y. 2008). Here the settlement fund of $386.5 million is quite large, and is also accompanied by compliance measures protecting the interests of the class. Moreover, a lack of objections from the class members, particularly from sophisticated institutional investors, to the proposed fees indicates that the quality of representation was high. Tiro v. Pub. House Investments, LLC, No. 11 CIV. 7679 CM, 2013 WL 4830949, at *14 (S.D.N.Y. Sept. 10, 2013) (crediting the lack of objections to the attorneys' fee award as a factor demonstrating the quality of representation). Finally, the Court

itself had occasion to notice the high quality of plaintiffs'
counsels' work, both in briefs and oral argument. Moreover,
counsels' achievement in "obtaining valuable recompense and
forward-looking protections for its clients is particularly
noteworthy given the caliber and vigor of its adversaries."
Meredith Corp., 87 F. Supp. 3d at 670. This factor thus weighs
in favor of the fees' reasonableness.

       v.  The Requested Fee in Relation to the Settlement

    Goldberger factor five, "the requested fee in relation to
the settlement," weighs slightly in favor of approval based on
the percentage method with a cross-check to the lodestar. The
Court begins with an application of the percentage method. In
megafund settlements of more than $100 million, fee awards will
frequently "follow a sliding-scale" as the settlement size
increases, and consequently, fee percentages generally "bear an
inverse relationship to the amount of the settlement." Dial
Corp. v. News Corp., 317 F.R.D. 426, 435 (S.D.N.Y. 2016). This
avoids windfalls for attorneys in large settlements. Id.

    A number of sources indicate that Co-Lead Counsel's fee
request falls properly within that sliding scale. First, Co-Lead
Counsel provides its own research of similarly sized megafund
antitrust settlements in this District and elsewhere. See ECF
No. 389-2. This research shows that in cases where the award was
between $100 million and $500 million, the average attorneys'

fees were 26.89%, and in cases awarding between $300 million and $500 million, the average fees were 23.26%. Id. Further, an independent study from 2017 shows that between 2009 and 2013, the mean settlement recovery in antitrust settlements nationwide was $501 million, and the mean fee award was 27%.[2] Finally, a 2010 study of class action settlements found that the average fee award for settlements between $250 million and $500 million was 17.8%, with a median award of 19.5% and a standard deviation of 7.9%.[3] These studies indicate that the 20% fee is reasonable for the size of the settlement based on the percentage method.

While a cross-check to the lodestar method indicates that the fees are slightly high, the fees nonetheless fall within the range of reasonableness. Co-Lead Counsel have spent more than 30,200 hours on the case -- 30,281.14 hours to be precise -- with billing rates ranging from $350 to $1,150 per hour. Based on these numbers, Co-Lead Counsel calculates the lodestar amount to be $18,880,537.75. A fee award of 20% of the settlement fund, or $77.3 million, thus represents a multiplier of 4.09 of this lodestar. Although on the high end, a 4.09 multiplier is within

---

[2] See Theodore Eisenberg, Geoffrey Miller & Roy Germano, Attorneys' Fees in Class Actions: 2009-2013, 92 N.Y.U. LAW J. 937, 952 tbl. 4 (2017).

[3] Brian T. Fitzpatrick, An Empirical Study of Class Action Settlements and Their Fee Awards, 7 J. EMPIRICAL LEGAL STUD. 811, 839, tbl. 11 (2010)

the range of what has considered reasonable by courts. See Wal-Mart Stores, 396 F.3d at 123 (upholding a cross-check multiplier of 3.5 and citing an SDNY case that held that "multipliers of between 3 and 4.5 have become common" (quoting In re NASDAQ Mkt.-Makers Antitrust Litig., 187 F.R.D. 465, 489 (S.D.N.Y. 1998)). Furthermore, the requested attorneys' fees are lower than those agreed to in the fee schedule with plaintiffs. Accordingly, the Court finds that "the requested fee in relation to the settlement" weighs, if only slightly, in favor of approval.

  vi. Public Policy Considerations

Goldberger factor six, "public policy considerations," favors the reasonableness of the fees. Generally, public policy is served by ensuring a fee is large enough to incentivize lawyers to bring meritorious class actions in the future. See In re Colgate-Palmolive Co. ERISA Litig., 36 F. Supp. 3d 344, 352 (S.D.N.Y. 2014). More specific to this case, ever since the enactment of the Sherman Act in 1890, Congress has encouraged enforcement of the antitrust laws through private civil suits to deter infringing conduct in the future. See Pillsbury Co. v. Conboy, 459 U.S. 248, 262-63 (1983) ("This Court has emphasized the importance of the private action as a means of furthering the policy goals of certain federal regulatory statutes, including the federal antitrust laws."). Public policy

considerations thus favor the reasonableness of the fees in this antitrust case.

### vii.  Fees Conclusion

As explained above, five of the six Goldberger factors in this case weigh in favor of the proposed fees' reasonableness, and one weighs only slightly against it. Accordingly, the Court finds the proposed attorneys' fees of 20%, or $77.3 million, is reasonable and merits approval.

### b. Litigation Expenses

In addition to fees, Co-Lead Counsel seek reimbursement of their litigation expenses in the amount of $1,718,773.04, plus interest on the fee and expense award at the same rate that is earned by the settlement fund. "Counsel who obtain a common settlement fund for a class are entitled to reimbursement of [reasonable] expenses that they advance to a class." Meredith Corp., 87 F. Supp. 3d at 671. The majority of Co-Lead Counsel's expenses were devoted to expert work, which was essential to the resolution of this complex case. Moreover, Co-Lead Counsel kept discovery costs low by using its in-house technology to manage document production. The remaining expenses for travel and meal costs, copying costs, and online research, filing and service fees, and telephone charges were reasonable. The Court thus awards Co-Lead Counsel the requested reimbursement of expenses.

### III. Motion for Service Awards

Plaintiffs Birmingham, I.B.E.W., and Pennsylvania Treasury, have moved for awards totaling $400,000 for their service as class representatives in this Action. Pennsylvania Treasury seeks an award of $300,000 and Birmingham and I.B.E.W. each seek $50,000. The district court, in its discretion, may grant class representatives an incentive or "service" award in addition to their allocable share of the ultimate recovery. Dial Corp. v. News Corp., 317 F.R.D. 426, 439 (S.D.N.Y. 2016). In deciding whether to grant awards to class representatives, the Court looks to "the existence of special circumstances" such as "risk . . . incurred by the plaintiff-applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff . . ., any other burdens sustained by that plaintiff . . . and, of course, the ultimate recovery." Id. (quoting Roberts v. Texaco, 979 F. Supp. 185, 200 (S.D.N.Y. 1997)).

Here, a number of factors suggest that an award is in order. First, as active participants in the GSE Bond market, the named plaintiffs took a risk in deciding to serve as class representatives and sue defendants. GSE Bonds are among plaintiffs' core investment vehicles, and defendants were (and some still are) the largest dealers of GSE Bonds in the secondary market. Plaintiffs had no guarantee that defendants would choose to continue to do business with them if they became involved in the suit. Second, the named plaintiffs spent many

hours reviewing and commenting on pleadings and motions, identifying and collecting materials for discovery, discussing litigation strategy and participating in settlement negotiations. This added significant value to the prosecution of the case. Third, the requested award is only a small fraction -- approximately 0.103% -- of the large settlement fund in this case. See, e.g., Dial Corp., 317 F.R.D. at 438-39 (awarding 0.12% of a settlement fund to six class representatives).

Furthermore, while the Court was initially concerned that the $300,000 award to Pennsylvania Treasury was too large, the Court is now satisfied that the award is merited. Much of the $300,000 award requested by Pennsylvania Treasury is designed to cover $178,000 in fees it payed to the firm Hangley Aronchick Segal Pudlin & Schiller ("Hangley"), which provided independent advice to Pennsylvania Treasury in its role as class representative. The Court has examined Hangley's timesheets and determined that the work was not duplicative of Co-Lead Counsel's work, that the fees are reasonable, and that reimbursement is thus warranted. Moreover, the Court finds that Pennsylvania Treasury did an excellent job in its role as class representative such that it merits a substantial award beyond its out-of-pocket costs. As the Court had urged it to be, Pennsylvania Treasury was involved at every step of the litigation, ensuring that the litigation was client-driven and

protected the interests of the class. Furthermore, over the next two years, Pennsylvania Treasury will continue to be involved in supervising compliance measures that it helped to develop to ensure the continued integrity of the GSE bonds markets. The Court thus finds that the plaintiffs' requested service awards are warranted.

IV.  Conclusion

At the preliminary approval stage the Court found that it was likely to approve the proposed settlements under Rule 23(e)(2) and certify the class for purposes of judgment. Circumstances since preliminary approval have only confirmed that final approval and certification are warranted. Furthermore, Co-Lead Counsel's requested attorneys' fees and expenses are reasonable under the Goldberger factors, and based on both the percentage method and a cross-check to the lodestar. Finally, class representatives' excellent performance in monitoring and contributing to the successful conclusion of this litigation warrants substantial service awards. Accordingly, the Court finds that the motions for final approval, attorneys' fees and expenses, and service awards should be granted. The Court will shortly docket a number of judgments and orders in this matter effectuating this conclusion.

SO ORDERED.

Dated:      New York, NY

            June 16, 2020                          _____
                                                   United States District Judge